# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> SUNO, INC. and JOHN DOES 1-10, <br><br> Defendant. | Civil Action No. 1:24-cv-11611-FDS |

## DEFENDANT SUNO, INC.'S FIRST SET OF
## REQUESTS FOR PRODUCTION TO PLAINTIFFS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules of the United States District Court for the District of Massachusetts ("Local Civil Rules"), Defendant Suno, Inc. ("Suno") serves its First Set of Requests for Production of Documents ("Requests") to UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Atlantic Recording Corporation, Atlantic Records Group LLC, Rhino Entertainment LLC, The All Blacks U.S.A., Inc., Warner Music International Services Limited, and Warner Records Inc. (collectively, "Plaintiffs"). Defendant requests that Plaintiffs respond in writing to these Requests, in accordance with the definitions and instructions contained herein, and produce all documents in Plaintiffs' possession, custody, or control within thirty (30) days after service of these Requests. Defendant requests that Plaintiffs make any production of documents and things at the office of Latham &

Watkins, LLP, c/o Brittany N. Lovejoy, Esq., 505 Montgomery Street, Suite 2000, San Francisco, CA 94111-6538, or at such other time and place as the parties may agree upon.

## **DEFINITIONS**

1.     The definitions, instructions, and requirements of Federal Rules 26 and 34 and the Local Civil Rules are adopted and incorporated by reference, whether or not those terms appear as capitalized in the text below.  Notwithstanding any definition below, each word, term, or phrase used in these Requests for Production is intended to have the broadest meaning permitted under the Federal Rules and Local Civil Rules.  For the purpose of the following Requests, the following words and phrases shall have the following meanings:

2.     "Plaintiffs," "You," and/or "Your" means any one or more of UMG Recordings, Inc. ("UMG"), Capitol Records, LLC ("Capitol," and collectively with UMG, "Universal"), Sony Music Entertainment ("SME"), Atlantic Recording Corporation, Atlantic Records Group LLC (collectively with Atlantic Recording Corporation, "Atlantic"), Rhino Entertainment LLC ("Rhino"), The All Blacks U.S.A., Inc., Warner Music International Services Limited ("WMISL"), and Warner Records Inc. (collectively with Atlantic, Rhino, The All Blacks U.S.A., Inc., WMISL, and Warner Records Inc., "Warner") and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors-in-interest, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

3.     "Defendant" or "Suno" refers to Suno, Inc., and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

4.     "Action" means the present lawsuit, *UMG Recordings, Inc. et al. v. Suno, Inc. et al.*, No. 1:24-cv-11611-FDS, pending in the United States District Court for the District of Massachusetts.

5.     "AI" means artificial intelligence.

6.     "Artist" means any individual involved in performing music on, singing on, mixing, mastering, or producing one of Your Sound Recordings and includes those individuals' agent(s), lawyer(s), and representative(s).

7.     "Asserted Works" means any copyrighted work referenced in the operative complaint to which Plaintiffs assert or intend to assert a claim for copyright infringement in this Action, including those works listed in Exhibit A to the Complaint (as defined below).

8.     "Communication" or "communicate" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances.

9.     "Complaint" means the complaint filed by Plaintiffs in this Action.

10.     "Concern," "concerning," "relating to," and "regarding" mean relating to, referring to, describing, evidencing, or constituting.

11.     "Defendant's Product" means the Defendant's Generative AI model that produces music from text prompts and that You allege forms the basis of Your claims in this Action.

12.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a).  The term "Document" includes drafts and a draft or non-identical copy is a separate document within the meaning of this term.

13.     "Draft" means any version of any agreement, license, writing, or text other than the final version of said agreement, license, writing, or text and includes all such agreements or license whether or not a final version was ever executed.

14.     "Electronically Stored Information" ("ESI") includes, but is not limited to, e-mails and attachments, voice mail, instant messages, text messages, cell phone data and other electronic communications, word processing documents, text files, hard drives, Excel spreadsheets and

underlying formulae, graphics, audio and video files, databases, calendars, telephone logs, transaction logs, Internet usage files, offline storage or information stored on removable media (such as external hard drives, hard disks, floppy disks, memory sticks, flash drives, and backup tapes), information contained on laptops or other portable devices, and network access information and backup materials, TIF files, PDF files, Native Files and the corresponding metadata which is ordinarily maintained, pursuant to Federal Rule 34. The definition used herein may be superseded by subsequent agreement by the parties in any entered ESI order.

15. "Generative AI" means models, algorithms, or other systems that are trained using data to generate new content (including music or other media), including such models such as Suno or Udio.

16. "Person" or "Company" means any natural person or any legal entity, including, without limit, any business or governmental entity or association.

17. "Third Party" or "Third Parties" mean and include any Person or Persons other than You or Suno.

18. "Training Corpus" means the collection of materials generative AI models train on to create new material.

19. "Your Sound Recordings" shall mean any subset of sound recordings in Your catalog and any other sound recordings whose copyrights You own, control, or hold a license to use.

20. The following rules of construction shall apply to all Requests as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside of its scope: (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses; (b) the use of a word in its singular form shall be deemed to include within its use the plural form as well and vice versa; (c) the connectives "and" and "or" shall be construed either disjunctively or conjunctively for the broadest possible meaning; (d) the terms "all," "any," and

"each" shall be construed as "all, any, every, and each"; and (e) the term "including" means "including but not limited to" and "including without limitation."

21.    The use of terms, phrases, and definitions is for convenience, and no term, phrase, or definition shall be construed as an admission by Suno.

22.    Any word that is not defined has its usual and customary meaning.

## **<u>INSTRUCTIONS</u>**

1.    The following shall apply to all Requests:

    a.    The singular of each word shall be construed to include its plural, and vice versa;

    b.    The conjunctions "and" as well as "or" shall be construed either conjunctively or disjunctively, whichever is more inclusive in context;

    c.    "Each" and "every" shall be construed to include "all" and "any," and vice versa; and

    d.    The use of a verb in any tense must be construed as the use of that verb in all other tenses.

2.    If, in responding to these Requests, You encounter any ambiguities when construing a question, instruction, or definition, You are requested to contact the undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.  If the Request remains unclear, Your answer shall set forth the matter deemed ambiguous, and the construction used in answering.

3.    If, in responding to these Requests, Plaintiffs have different responses, Your responses should make clear where Plaintiffs have differing responses.  In such circumstances, individual responses should be provided.

4.      In producing the requested Documents, furnish all Documents in Your actual or constructive possession, custody, or control, including documents which may be in the physical possession of another person or entity such as Your advisors, attorneys, investigators, employees, agents, associates, affiliates, or representatives.  In producing these requested Documents, You shall indicate from which Plaintiff such documents are produced, including employing identifying Bates prefixes for each Plaintiff.

5.      Pursuant to Federal Rule 34, You are instructed to produce Documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in this set of Requests.  Documents shall be produced in their original form, including where applicable with folders, binders, covers, or containers, or photocopies thereof.  Any copies that differ in any way from the original (because, by way of example, handwritten or printed notations have been added) should be produced separately.  All Documents that cannot be copied legibly shall be produced in their original form.

6.      If there are responsive Documents which constitute "electronically stored information" under Federal Rule 34, such as emails that are kept in electronic form in the ordinary course of Your business (*e.g.*, in a Microsoft Exchange Server or Outlook database, on hard drives, servers, network backup tapes, or on an individual user's workstation, personal computer, laptop, or notebook, CDs, DVDs, USB drives, cell phones, or any other electronic medium), then those Documents shall be produced according to the terms of a forthcoming ESI Stipulation.

7.      If any requested Document cannot be produced or cannot be produced in full, You are instructed to produce it to the extent possible, indicating what portion or portions are being withheld and the reason it is being withheld.

8.      If a Document otherwise responsive to a Request was, but no longer is, in Your actual or constructive possession, custody, or control, You must state whether the document (i) is lost or

destroyed; (ii) has been transferred to another Person or entity either voluntarily or involuntarily; or (iii) has been otherwise disposed of, and, in each instance; (iv) explain the circumstance surrounding the disposition, including the date or approximate date of the disposition.

9.     In the event that any Document called for by the Requests below has been destroyed, lost, or otherwise becomes unavailable, identify that Document as follows: (i) type of document or thing; (ii) author, addressor, addressee, recipients of indicated or "blind" copies; (iii) date; (iv) subject matter; (v) number of pages; (vi) attachments or appendices; (vii) all Persons believed at any time to have had a copy of the Document; (viii) date of destruction or loss; (ix) place and manner of destruction or loss; (x) Persons authorizing destruction; (xi) and Persons destroying or responsible for its unavailability.

10.     If any Document covered by this set of Requests is withheld by reason of a claim of privilege (including work product immunity), You shall serve on Defendant's counsel a list identifying for each withheld Document: (i) the nature of the privilege (including work product) that is being claimed; (ii) the type of Document withheld; (iii) the general subject matter of the Document; (iv) the date of the Document; and (v) such other information as is sufficient to identify any withheld material, including, where applicable, the author(s) or source(s) of any Document, the addressee(s) and recipient(s) of any document, and where not apparent, the relationship of the author(s) or source(s) and addressee(s) or recipient(s) to each other.

11.     If there are no Documents responsive to a particular Request, You shall so state in writing.

12.     In the event You contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore, and respond to the remainder of the Request to the extent that You are not objecting to it. Your objections should make clear where Plaintiffs have differing objections.  In such circumstances, individual objections should be provided.

13.     If production of any requested Document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

14.     If You object to any Request on the grounds of overbreadth, specifically state the manner in which You contend the Request is overly broad and respond to the Request as narrowed to conform to such objection.

15.     If You do not agree with any Definition of the terms provided herein, You are instructed to provide a reasonable alternative Definition for that term, consistent with industry custom and usage.

16.     These Requests are continuing in nature.  If You receive or otherwise become aware of information responsive to any Request after You have served Your responses to these Requests, You must promptly supplement Your responses to these Requests to provide such information, as required by Federal Rule 26(e).

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All U.S. copyright registrations for each of Your Asserted Works.

**REQUEST NO. 2:**

Deposit copies for each of Your Asserted Works.

**REQUEST NO. 3:**

Documents and Communications sufficient to show the entire chain-of-title for each of Your Asserted Works.

**REQUEST NO. 4:**

All Documents and Communications concerning Your ownership of the Asserted Works, including any agreements by You to acquire the copyright in each Asserted Work, agreements related to the authorship of Your Asserted Works, and any work-for-hire agreements.

**<u>REQUEST NO. 5:</u>**

All U.S. copyright indexes pursuant to 17 U.S.C. § 1401 for Your Asserted Works.

**<u>REQUEST NO. 6:</u>**

Documents sufficient to show the date of first publication of each of Your Asserted Works.

**<u>REQUEST NO. 7:</u>**

All Communications with the United States Copyright Office concerning Your Asserted Works.

**<u>REQUEST NO. 8</u>**:

All Documents and Communications relating to any disputes as to the ownership of Your Asserted Works.

**<u>REQUEST NO. 9:</u>**

All Documents and Communications relating to any allegations that any of Your Asserted Works infringe any third-party rights.

**<u>REQUEST NO. 10:</u>**

All Documents and Communications relating to any efforts undertaken by You to enforce Your copyrights for any of Your Asserted Works against anyone, or to monitor for or investigate infringement of Your Asserted Works.

**<u>REQUEST NO. 11:</u>**

All Documents and Communications relating to Your knowledge of the alleged use of Your Sound Recordings to train Defendant's Product.

**<u>REQUEST NO. 12:</u>**

All Documents and Communications relating to Your knowledge of the alleged use of Your Sound Recordings to train any other Generative AI model.

**REQUEST NO. 13:**

All Documents and Communications concerning the Defendant, including Documents and Communications concerning Defendant's alleged use of Your Asserted Works and any consideration whether or not to license Your Sound Recordings to Defendant.

**REQUEST NO. 14:**

All Documents and Communications relating to Your investigation of the claims alleged in the Complaint.

**REQUEST NO. 15:**

All Documents and Communications concerning "testing" by any person at Your direction or request of Defendant's Product, as described in Paragraphs 11, 51, and 52 of the Complaint.

**REQUEST NO. 16:**

All Documents and Communications concerning any attempt by any Person at Your direction or request, including failed attempts, to reproduce any of Your Sound Recordings through Defendant's Product.

**REQUEST NO. 17:**

Documents sufficient to identify all Persons that interacted with the Defendant's Product at Your direction or request.

**REQUEST NO. 18:**

Documents sufficient to identify any Suno accounts that any Person created or used at Your direction or request, including Documents sufficient to show the full name associated with the account(s), the username(s) for the account(s), email address(es) associated with the account(s), the organization ID and name associated with the account(s), and date of registration or activation for the account(s).

**REQUEST NO. 19:**

All Documents and Communications concerning any prompts entered into Defendant's Product by any Person that interacted with the Product at Your direction or request, including Documents and Communications concerning all unsuccessful attempts to generate outputs similar to Your Asserted Works.

**REQUEST NO. 20:**

Documents sufficient to show any of the prompts entered into Defendant's Product by any Person that interacted with the Product at Your direction or request, including Documents sufficient to show any system prompts used, the parameters used in connection with each prompt, the prompt strength used in connection with each prompt, the generation quality selected for each prompt, the clarity selected for each prompt, the context length used in connection with each prompt, the seed used in connection with each prompt, any lyrics generated by each prompt, any audio files uploaded in connection with each prompt, the version of the Defendant's Product used in connection with each prompt (Basic, Pro, or Premier), any tags assigned to any outputs, the history associated with each output, the date and time on which that prompt was entered, the user account used in connection with each prompt, and each resulting output.

**REQUEST NO. 21:**

All Documents and Communications concerning any outputs generated through Defendant's Product by any Person that interacted with the Product at Your direction or request, including Documents and Communications concerning all unsuccessful attempts to generate outputs similar to Your Asserted Works.

**REQUEST NO. 22:**

Documents sufficient to show the process for obtaining each output cited or referred to in the Complaint, including any system prompts used, the parameters used in connection with each prompt,

the prompt strength used in connection with each prompt, the generation quality selected for each prompt, the clarity selected for each prompt, the context length used in connection with each prompt, the seed used in connection with each prompt, any lyrics generated by each prompt, any audio files uploaded in connection with each prompt, the version of the Defendant's Product used in connection with each prompt (Basic, Pro, or Premier), any tags assigned to any outputs, the history associated with each output, each and every output generated by Defendant's Product as a result of each prompt and parameter combination, the time and date of those queries, and the user account.

**REQUEST NO. 23:**

All Documents and Communications concerning the creation of Exhibits B and C of the Complaint, including Documents and Communications with any third party.

**REQUEST NO. 24:**

All Documents and Communications concerning this Action, including any exchanged with another Plaintiff, the Recording Industry of America, any Artist, or any Person or Company, either directly or through a third party.

**REQUEST NO. 25:**

All Documents and Communications related to the letters sent by Jacob Tracer and Moez Kaba to Suno and Uncharted Labs on April 25, 2024 and May 10, 2024, respectively, on behalf of the Recording Industry Association of America and its member companies UMG Recordings, Inc., Sony Music Entertainment, and Warner Music Group Corp., including their affiliates, subsidiaries, and record labels.

**REQUEST NO. 26:**

All Documents and Communications related to any subpoena You issue in this action, including all documents You receive in response to the subpoena(s).

**REQUEST NO. 27:**

All Documents, including studies, surveys, analyses, or reports, and Communications concerning whether or not to license Your Sound Recordings to train any Generative AI model, for use in the outputs of any Generative AI model, or for any other purpose relating to Generative AI.

**REQUEST NO. 28:**

All Documents and Communications concerning the letter sent by Sony described herein: https://www.theverge.com/2024/5/17/24158887/sony-music-ai-training-letter, including copies of each letter sent.

**REQUEST NO. 29:**

All Documents and Communications concerning any executed or potential license or agreement, including Drafts, related to the use of Your Sound Recordings to train any Generative AI model, for use in the outputs of any Generative AI model, or for any other purpose relating to Generative AI, regardless of whether a license or agreement was ultimately executed.

**REQUEST NO. 30:**

All Documents concerning any discussion or negotiation between You and any Company concerning any potential agreement or license, including Drafts, related to the use of Your Sound Recordings to train any Generative AI model, for use in the outputs of any Generative AI model, or for any other purpose relating to Generative AI, regardless of whether a license or agreement was ultimately executed.

**REQUEST NO. 31:**

All Documents and Communications, concerning any executed agreement or potential agreement, including Drafts, in which You prohibit, restrict, limit, or otherwise control Your licensor or potential licensor's ability to use or offer Generative AI, including in connection with or through a third party.

**REQUEST NO. 32:**

All Documents concerning any discussion or negotiation between You and any Company concerning any executed agreement or potential agreement, including Drafts, in which You prohibit, restrict, limit, or otherwise control Your licensor or potential licensor's ability to use or offer Generative AI, including in connection with or through a third party.

**REQUEST NO. 33:**

All Documents and Communications between You, any other Plaintiff, or the Recording Industry Association of America, either directly or through any third party, concerning whether or not to license Your Sound Recordings to Defendant or any Company for any purpose relating to Generative AI.

**REQUEST NO. 34:**

All Documents and Communications between You and any Artist concerning whether or not to license Your Sound Recordings to Defendant or any third party for any purpose relating to Generative AI.

**REQUEST NO. 35:**

All Documents and Communications regarding Your efforts to monitor the field of Generative AI.

**REQUEST NO. 36:**

Documents sufficient to show how You have monitored AI companies—including Defendant—for potential infringement of Your Sound Recordings.

**REQUEST NO. 37:**

All Communications between You and any government entity (whether state or federal) concerning copyright and Generative AI and all Documents concerning those Communications.

**REQUEST NO 38:**

All Documents or Communications, including between You, any other Plaintiff, the Recording Industry Association of America, or any Artist, either directly or through any third party, concerning the possibility of bringing (or threatening to bring) a copyright infringement lawsuit against any Company concerning Generative AI.

**REQUEST NO. 39:**

All Documents and Communications related to Warner Music Group Corp.'s statement that "artificial intelligence (AI) technologies have creative potential for artists," *available here*: https://www.wmg.com/wp-content/uploads/2024/07/WMG-Statement-Regarding-AI-Technologies.pdf.

**REQUEST NO. 40:**

All Documents and Communications related to Sony Music Group's statement that "SMG has been embracing the potential for responsibly produced AI to be used as a creative tool, revolutionizing the ways . . . recording artists create music," *available here*: https://www.sonymusic.com/sonymusic/declaration-of-ai-training-opt-out/.

**REQUEST NO. 41:**

All Documents and Communications concerning the policies and procedures regarding the use of Generative AI by You or Your Artists.

**REQUEST NO. 42:**

Documents sufficient to show any of Your or Your Artists' past, present, or planned efforts to use Generative AI in the development of sound recordings.

**REQUEST NO. 43:**

All Documents and Communications concerning any Generative AI tools and product features, or prototypes thereof, You are building, considering implementing, and/or have implemented for Your or Your Artists' use.

**REQUEST NO. 44:**

All Documents and Communications concerning Your actual or potential efforts to train Generative AI models using Your Sound Recordings.

**REQUEST NO. 45:**

All Documents and Communications relating to any injury or harm You claim to have suffered as a result of the conduct alleged in the Complaint.

**REQUEST NO. 46:**

All Documents and Communications related to your contention that "Suno's use of the Copyrighted Recordings poses a significant threat to the market for and value of the Copyrighted Recordings" as alleged in Paragraph 77 of the Complaint.

**REQUEST NO. 47:**

All Documents that support Your contention that Suno's "musical outputs could saturate the market with machine-generated content that will directly compete with, cheapen, and ultimately drown out . . . genuine sound recordings" as alleged in Paragraph 4 of the Complaint.

**REQUEST NO. 48:**

All Documents and Communications related to your contention that "Suno feeds the Copyrighted Recordings into its AI model not merely to deconstruct their expressive content, but with the explicit aim of imitating these expressive features in digital music files that could serve as substitutes for and compete with the original recordings" as alleged in Paragraph 73 of the Complaint.

**REQUEST NO. 49:**

All Documents and Communications related to your contention that users have "publish[ed] Suno-generated outputs on music streaming services, where they will compete for plays against real, copyrighted sound recordings" as alleged in Paragraph 78 of the Complaint.

**REQUEST NO. 50:**

All Documents and Communications related to Your contention that Suno will "upend[] whole segments of the legitimate music industry," as alleged in Paragraph 14 of the Complaint.

**REQUEST NO. 51:**

All Documents and Communications concerning any study, survey, or other research regarding the impact of Generative AI on the market for sound recordings, regardless of whether conducted by You or some other entity.

**REQUEST NO. 52:**

All Documents and Communications between You, any other Plaintiff, the Recording Industry Association of America, or Artist, either directly or through any third party, regarding the impact of Generative AI on the market for sound recordings.

**REQUEST NO. 53:**

All Documents that You or any expert will rely on in this Action to support your claim for actual damages, as claimed in Paragraphs 91 and 100 and the Prayer for Relief in the Complaint.

**REQUEST NO. 54:**

All Documents and Communications concerning any purported impact of Defendant's Product on Your ability to license Your Asserted Works and Your licensing fees and/or licensing revenue, profitability, size, growth, strategic direction, objectives or business strategy, that relate to the amounts that You expect to be paid in the future.

**REQUEST NO. 55:**

All Documents and Communications related to Your contention that "Suno's unauthorized use of the Copyrighted Recordings threatens to eliminate the existing market for licensing sound recordings, as well as the future market for licensing sound recordings to generative AI companies" as alleged in Paragraph 77 of the Complaint.

**REQUEST NO. 56:**

All agreements you have entered into to license the Asserted Works for reproduction, preparation of derivative works, distribution, or performance by means of a digital audio transmission in effect as of January 1, 2019, including but not limited to any license "for use in emerging technologies such as streaming services, user-generated content platforms, and other innovative technologies" as alleged in Paragraph 77 of the Complaint.

**REQUEST NO. 57:**

Documents sufficient to show the total revenue or royalties You have earned from each Asserted Work, on a per-Work and monthly basis dating back to January 1, 2019, and on an annual basis per-Work dating back to January 1, 2015.

**REQUEST NO. 58:**

Documents sufficient to show all Your expenses on a monthly basis relating to the creation, advertising marketing, and promotion of Your Asserted Works including broken down by Work and by category of expense including pre-creation costs such as recording costs.

**REQUEST NO. 59:**

All agreements You have entered into with Your Artists concerning the Asserted Works, including any agreements concerning the royalties and/or compensation the Artist receives for the Asserted Works.

**REQUEST NO. 60:**

All Documents and Communications concerning the value of Your Asserted Works to any Company using the Asserted Works to train any Generative AI model, including any study, sample, survey, or other analysis concerning measurement of the use of Your Works in any Training Corpus of any Generative AI model.

**REQUEST NO. 61:**

All Documents and Communications concerning how You calculate the licensing fees You charge, or have attempted to charge, any Company for licenses to Your Sound Recordings for any purpose related to Generative AI, and the reasons for any changes to those rates.

**REQUEST NO. 62:**

All Documents and Communications concerning revenues and profit margins You have generated from any license or agreement concerning the use of Your Sound Recordings for any purpose related to Generative AI.

**REQUEST NO. 63:**

Documents sufficient to show Your assets, liabilities, and annual income, including IRS filings.

**REQUEST NO. 64:**

All of Your monthly, quarterly, and annual financial statements, including income statements, balance sheets, profit and loss statements, and any other financial disclosures that You are required to maintain and/or submit under state or federal law from January 1, 2015 to present.

**REQUEST NO. 65:**

Documents sufficient to show Your total revenue, broken down by source, for each month from January 1, 2015 to present.

**REQUEST NO. 66:**

All financial budgets, forecasts, assessments, estimates, predictions, or projections from January 1, 2015 to present.

**REQUEST NO. 67:**

All Documents referenced or cited in preparing Your responses to any of Defendant's Interrogatories and Requests for Admissions.

**REQUEST NO. 68:**

All Documents You intend to rely on in this Action.

**REQUEST NO. 69:**

All Documents You intend to provide to Your experts in this Action.

**REQUEST NO. 70:**

All Documents and Communications produced or provided to You by third parties in this Action.

Dated: September 13, 2024

Respectfully submitted,

Shlomo Fellig (BBO# 699643)
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
shlomo.fellig@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Latham & Watkins LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Steven N. Feldman (*pro hac vice*)
Nathan Taylor (*pro hac vice*)
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com
nathan.taylor@lw.com

Sarang V. Damle (*pro hac vice*)
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

*Counsel for Defendant Suno, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, a copy of the foregoing document was served by electronic mail upon the following:

| | |
|---|---|
| Moez M. Kaba (admitted *pro hac vice*)<br>Alexander R. Perry (admitted *pro hac vice*)<br>Mariah N. Rivera (admitted *pro hac vice*)<br>HUESTON HENNIGAN LLP<br>1 Little West 12th Street<br>New York, New York 10014<br>Telephone: (646) 930-4046<br>mkaba@hueston.com<br>aperry@hueston.com<br>mrivera@hueston.com<br>Robert N. Klieger (admitted *pro hac vice*)<br>Rajan Trehan (admitted *pro hac vice*)<br>HUESTON HENNIGAN LLP<br>523 West 6th Street, Suite 400<br>Los Angeles, CA 90014<br>Telephone: (213) 788-4381<br>rklieger@hueston.com<br>rtrehan@hueston.com | Alexandra Arnold (BBO #706208)<br>Daniel Cloherty (BBO #565772)<br>CLOHERTY & STEINBERG LLC<br>One Financial Center, Suite 1120<br>Boston, MA 02111<br>Telephone: 617-481-0160<br>aarnold@clohertysteinberg.com<br>dcloherty@clohertysteinberg.com |

_____
Juan M. Palacio Moreno