UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC.,<br><br>          Plaintiffs,<br><br>   v.<br><br>SUNO, INC., and JOHN DOES 1-10,<br><br>          Defendant. | Case No. 1:24-cv-11611-FDS |

**JOINT STIPULATION AND ORDER REGARDING**
**TRAINING DATA INSPECTION PROTOCOL**

Upon the stipulation of the Parties, the following protocol ("Training Data Protocol") will apply to the inspection, review, and/or disclosure of Training Data produced by Defendant Suno, Inc. ("Suno"):

1.  For the purposes of this protocol, "Training Data" shall be defined as any data, including sound recording and music data, used to train Suno AI models that either the Parties have agreed or the Court has ordered are within the scope of discovery, as well as any post-training data sets used to refine the outputs of the models. This definition is not intended to limit the scope of discovery, and Plaintiffs reserve all rights to make requests for additional information or data, and Suno reserves all rights to object to any such requests.

2.  The "Inspecting Party" shall be defined as all Plaintiffs collectively in the above-captioned action, including their attorneys of record, agents, retained consultants, experts, and

1

any other persons or organizations over which they have direct control. This definition excludes in-house counsel for all Plaintiffs in the above-captioned action.

3. Training Data will be made available for inspection in a secured room at one of the following locations: the office of Suno's outside counsel, the office of Suno's vendor, or a neutral location mutually agreed upon by the Parties. The Parties agree to cooperate in good faith to determine a mutually acceptable location for the inspection of the Training Data. Training Data will be made available for inspection on at least two (2) computers designated for Training Data ("Training Data Computers"). The Inspecting Party may request up to an additional (2) Training Data Computers (for a total of (4) such computers) to inspect Training Data.

4. The Inspecting Party shall limit their inspection to a reasonable number of days appropriate for review and make reasonable efforts to limit review to normal business hours, which for the purposes of this paragraph shall be 8:30 a.m. through 6:00 p.m., Monday through Friday, local time where the Training Data Computers are physically located, excluding any local holidays. However, the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times. The Parties agree to cooperate in good faith such that maintaining Suno's Training Data shall not unreasonably hinder Plaintiffs' ability to efficiently and effectively conduct the prosecution of this Action.

5. The Inspecting Party shall provide Defendant with notice of their intent to inspect the Training Data Computers at least seven (7) calendar days prior to the first inspection and three (3) calendar days for any non-contiguous subsequent inspection.

6. Training Data shall be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order entered in this case on December

11, 2024. The Inspecting Party may disclose only to outside counsel, retained consultants, experts, and any other persons or organizations over which they have direct control authorized to view "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information under paragraph 13 of the Protective Order, except that designated in-house counsel may not review Training Data in the secured inspection room or on the Training Data Computers on behalf of an Inspecting Party. Plaintiffs reserve the right to challenge the confidentiality designation of any portion of the Training Data. Any challenge to the confidentiality designation of any portion of the Training Data shall be written, shall be served on outside counsel for Suno, shall particularly identify the documents or information that the Inspecting Party contends should be differently designated, and shall state the grounds for the objection. The Parties shall meet and confer in a good faith effort to resolve the dispute. Notwithstanding any challenge to a designation, the Training Data in question shall continue to be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" until one of the following occurs: (1) Suno withdraws such designation in writing; or (2) the Court rules that the Training Data in question are not entitled to the designation.

7.  Notwithstanding the above, Plaintiffs' outside counsel, experts properly disclosed pursuant to the Protective Order, or a limited number of necessary consultants or employees of Plaintiffs disclosed at least three (3) business days in advance may use the Audible Magic tool to analyze the audio files identified in Suno's Training Data for the initial purpose of ascertaining the audio files in the Training Data and facilitating the identification of works that may belong to Plaintiffs. All such consultants, employees, and Audible Magic shall execute the Non-Disclosure Agreement annexed to the Protective Order (Dkt. No. 54 - "Undertaking to Be Bound By the Protective Order"). Any such information shared pursuant to this provision and

the results of Plaintiffs' Audible Magic analysis shall be treated as "CONFIDENTIAL."[1]

8. The Parties agree to negotiate in good faith regarding the technical details of how Plaintiffs will use Audible Magic to analyze the audio files in Suno's Training Data. The Plaintiffs shall not utilize Audible Magic to analyze Training Data until such details have been resolved. The Parties reserve all rights to seek relief from the Court regarding any disputes regarding this process.

9. Nothing in this Training Data Inspection Protocol shall alter or change in any way the requirements of the Protective Order. In the event of any conflict, however, this Training Data Inspection Protocol shall control for any Training Data made available for inspection.

10. Training Data shall be produced for inspection and review subject to the following provisions:

a. Training Data shall be produced as maintained by Suno in the ordinary course of business and made available by Suno in a secure room on Training Data Computers without external Internet access (except as necessary to access the Training Data and utilize Audible Magic) or network access to other unauthorized computers or devices. Suno will provide a brief description of the layout, format, and searching of the Training Data, which will be produced to the Inspecting Party in advance of any inspection.

b. The Training Data Computers will be equipped with tools that are sufficient for viewing, searching, comparing, and copying the Training Data made available for inspection.

---

[1] The Parties are continuing to negotiate the extent to which Plaintiffs may disclose the identity of sound recordings found in the Training Data that Audible Magic identifies as owned by Plaintiffs to individuals other than those listed in paragraph 7 above for the purpose of clearing those sound recordings for inclusion in an amended complaint. Nothing in this protocol shall be read to reflect any final determination with respect to this issue. Pending resolution of this matter, all Training Data shall remain designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" except as provided for in the body of paragraphs 7 and 11.

      c.      Defendant will reasonably cooperate with Plaintiffs to make the Training Data available for inspection in a manner consistent with Federal Rule of Civil Procedure 34(b)(2)(E).  Suno will also reasonably cooperate with Plaintiffs to address any technical concerns or objections it may have regarding the form of production of the Training Data and the hardware and software that is provided to conduct the Training Data review so that Plaintiffs may conduct the Training Data review in accord with the applicable Federal Rules of Civil Procedure.  The Parties shall meet and confer in a good faith effort to resolve any disputes in that regard, and if no resolution can be reached, the Inspecting Party may seek any additional relief from the Court. Plaintiffs reserve all rights to seek any additional relief from the Court, including to require that the Training Data be made available for inspection in a different form or to otherwise enable a more efficient and/or effective review of the Training Data.

      d.      Suno shall provide the Inspecting Party with information explaining how to start, log on to, and operate the Training Data Computer.  Suno's outside counsel will be available to make reasonable efforts to attempt to resolve issues that may arise during the course of inspection.

      e.      The Inspecting Party's counsel and/or experts may request that licensed software tools and/or files (including tools with the capabilities to write data processing programs or scripts) be installed on the Training Data Computers, provided, however, that (a) Suno approves such software tools and/or files, such approval not to be unreasonably withheld; and (b) such other software tools and/or files are reasonably necessary for the Inspecting Party to perform its review of the Training Data consistent with all of the protections herein.  The Inspecting Party must provide Suno with the licensed software tool(s) and/or files, at the Inspecting Party's expense, at least five (5) days in advance of the date upon which the Inspecting Party wishes to have the

additional software tools and/or files available for use on the secured computer. Suno will install and confirm installation of said software on the Training Data Computers prior to the inspection. If necessary, the Inspecting Party shall meet and confer in good faith with Suno regarding whether Suno will agree to install such software tools on the Training Data Computer prior to or during the inspection.

        f.      The Inspecting Party's counsel and/or experts are prohibited from bringing outside electronic devices, including but not limited to phones, computers, drives, cameras, other devices capable of recording, or any other hardware into the room with the Training Data Computer. The hosting facility shall provide a secure location separate from but in close proximity to the room housing the Training Data Computer to store personal electronic devices, which location shall have telephone and internet access. The Inspecting Party shall be permitted to access the internet and use a personal cell phone in that room.

11. Plaintiffs shall be entitled to take notes (electronic or non-electronic) relating to the Training Data, but any such notes shall not include copies or reproductions of portions of the Training Data. Nothing in this protocol shall prevent the Inspecting Party from recording in their notes particular items, files, or categories of items or files contained in the Training Data, as well as identifying information regarding the sound recordings. To the extent the Inspecting Party desires to take notes electronically, Suno shall provide up to two (2) note-taking computers (*e.g.*, computers, which are distinct from the Training Data Computers, that are not linked to any network, including a LAN, an intranet, or the Internet, with a current, widely used word processing program in the Training Data review room for the Inspecting Party's use in taking such notes ("Note-Taking Computers")). Such notes shall be downloaded to or uploaded from a removable disk or drive for Plaintiffs (but not Defendants). The Note-Taking Computers shall

have no features that would hinder the complete clearing of the Inspecting Party's notes after such notes have been downloaded. Defendant shall not review the notes at any time. No other written or electronic record of the Training Data is permitted except as otherwise provided herein. Any notes shall be stamped and treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," except that, consistent with Paragraphs 7 and 8, Plaintiffs may treat any constituent element of the Training Data that they have a good faith basis to believe may identify a sound recording owned by a Plaintiff as "CONFIDENTIAL."

12.  Suno's outside counsel may visually monitor the activities of the Inspecting Party during any inspection from outside such room (*e.g.*, through a glass wall or window), only to ensure that there is no unauthorized recording, copying, or transmission of the Training Data and only so long as Defendant's outside counsel cannot hear the Inspecting Party and cannot see the contents of the Inspecting Party's notes or the display of the Training Data Computers.

13.  No copies of all or any portion of the Training Data, or other written or electronic record of the Training Data, may leave the secured room in which the Training Data is inspected except as provided herein. The Inspecting Party may obtain print outs of reasonable and limited portions of the Training Data to prepare court filings or pleadings or other papers (including a testifying expert's expert report) by following the procedures provided herein. For purposes of this protocol, references to "print," "printing," or "printouts" are understood to refer to a Bates-stamped electronic production (as described in this Paragraph). The Inspecting Party's counsel shall maintain a log of all printouts that includes the names of the reviewers and/or recipients of print outs and locations where the printouts are stored. To make a request, the Inspecting Party shall create a directory entitled "Print Request" and save the desired limited portions of the Training Data in that directory. The beginning of each portion of Training Data the Inspecting

Party wishes to print must include the filename, file path, and line numbers where the material was found in the Training Data or other information that allows for specific identification of the material. The Inspecting Party shall alert Suno when it has saved the desired limited portions of the Training Data in the "Print Request" directory that it requests to be printed. Upon receiving a request, Suno shall Bates number, and label 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" all requested pages. Within three (3) business days from the date of request, Suno shall either (i) produce electronic versions of the printouts to the Inspecting Party's counsel, or (ii) inform the Inspecting Party that Suno objects that the requested portions are excessive, not for a permitted purpose, and/or not justified (*see, e.g.*, Fed. R. Civ. Pro. 26(b)). In the event that Suno objects, the Parties shall meet and confer within three (3) business days of Suno's notice of its objection. If, after meeting and conferring, Suno and the Inspecting Party cannot resolve the objection, the Inspecting Party shall be entitled to seek a Court resolution of whether the requested Training Data should be produced.

14. All persons who will inspect Suno's Training Data in the secured inspection room on behalf of an Inspecting Party, including the Inspecting Party's counsel, must qualify under paragraph 13 of the Protective Order as an individual to whom "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY" information may be disclosed or be authorized to analyze Suno's Training Data with Audible Magic pursuant to paragraph 7 herein, and must sign the Non-Disclosure Agreement attached as an exhibit to the Protective Order, except that designated in-house counsel may not inspect Training Data in the secured inspection room on behalf of an Inspecting Party. All persons who inspect Suno's Training Data in the secured inspection room on behalf of an Inspecting Party shall also be identified in writing to Suno at least two (2) days in advance of the first time that such person reviews such Training

Data.  All authorized persons inspecting Training Data in the secured inspection room shall, on the day they view Training Data, sign a log that will include the names of persons who enter the locked room to view the Training Data and when they enter and depart.  Proper identification of all authorized persons shall be provided prior to any access to the secure inspection room.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship.  Access to the secure inspection room may be denied, at the discretion of Suno, to any individual who fails to provide proper identification.

15.     Unless otherwise agreed in advance by the Parties in writing, following an inspection under this protocol, the Inspecting Party's counsel and/or experts shall remove all notes, documents, and all other materials from the secure inspection room.  Suno shall not be responsible for any items left in the room following the inspection session.

16.     Other than as provided above, the Inspecting Party will not copy, remove, or otherwise transfer any Training Data from the Training Data Computers including, without limitation, copying, removing, or transferring the Training Data onto any recordable media or recordable device.  The Inspecting Party will not transmit any Training Data in any way from the Training Data inspection host facilities.

17.     Notwithstanding any provisions of this Training Data Protocol or the Protective Order entered on December 11, 2024, the Parties reserve the right to amend this protocol either by written agreement or Order of the Court upon showing of good cause.

SO STIPULATED AND AGREED.

Dated: March 28, 2025

<div style="display: flex;">

<div>

*s/ Rajan S. Trehan*
Moez M. Kaba (*pro hac vice*)
Mariah N. Rivera  (*pro hac vice*)
Alexander R. Perry (*pro hac vice*)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com

Robert N. Klieger (*pro hac vice*)
Rajan S. Trehan (*pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

Daniel J. Cloherty
Alexandra Arnold
**CLOHERTY & STEINBERG LLP**
One Financial Center, Suite 1120
Boston, Massachusetts 02110
Telephone: (617) 481-0160
Facsimile: (617) 848-0830
dcloherty@clohertysteinberg.com
aarnold@clohertysteinberg.com

*Counsel for Plaintiffs*

</div>

<div>

*s/ Brittany N. Lovejoy*
Steven N. Feldman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Sarang V. Damle
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

*Counsel for Defendant Suno, Inc.*

</div>

</div>

SO ORDERED this 28th day of March, 2025

/s/ *Paul G. Levenson*
The HONORABLE PAUL G. LEVENSON
United States Magistrate Judge