RAJAN S. TREHAN

rtrehan@hueston.com
D: 213 788 4381
T: 213 788 4340
F: 888 866 4825

523 West 6th Street
Suite 400
Los Angeles, CA 90014

# HUESTON HENNIGAN LLP

April 15, 2025

**VIA ECF**

Hon. Paul G. Levenson
Room 25, 7th Floor
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Re:   *UMG Recordings, Inc. et al. v. Suno, Inc.*, No. 24-cv-11611-FDS (D. Mass.)

Dear Judge Levenson:

Plaintiffs submit this response to Defendant Suno, Inc.'s ("Defendant" or "Suno") notice of supplemental authority regarding the recent order in *UMG Recordings, Inc. v. Uncharted Labs, Inc.*, No. 24-cv-4777 (AKH) (S.D.N.Y.), which granted Uncharted Labs, Inc.'s ("Udio") motion to compel Plaintiffs to produce deposit copies. Dkt. 89. Specifically, Plaintiffs write to apprise the Court of recent developments that materially distinguish the present circumstances and render that order inapposite.[1]

Unlike the record before the district court in *Uncharted Labs*, Plaintiffs here have offered to produce digital versions of all the asserted works listed in Exhibit A of the Complaint. *See* Ex. A (S. Givertz Apr. 14, 2025 Email). Further enclosed herewith are sworn declarations from knowledgeable employees of the Plaintiffs attesting that Plaintiffs will source these digital recordings from their centralized repositories for digital music assets. *See* Ex. B (Duchardt Suppl. Decl.) at ¶ 3; Ex. C (O'Connell Decl.) at ¶ 3; Ex. D (Beauchamp Suppl. Decl.) ¶ 3. Plaintiffs' declarants further attest that these digital recordings are the same recordings that each Plaintiff distributed commercially, submitted to Audible Magic, and, critically, deposited with the Copyright Office for registration—regardless of whether the deposit was digital or physical. *See* Duchardt Suppl. Decl. ¶ 5 & n.1; O'Connell Decl. ¶ 5; Beauchamp Suppl. Decl. ¶ 5 & n.1.

Plaintiffs expect to identify the digital recordings they intend to produce by matching identifying information from the copyright registrations—such as artist name, title, year of release, UPC, and/or catalog number—with corresponding metadata in their centralized repositories. *See* Duchardt Suppl. Decl. ¶ 4; O'Connell Decl. ¶ 4; Beauchamp Suppl. Decl. ¶ 4. Importantly, Plaintiffs are entitled to a presumption that the information reflected on the copyright registrations is correct and intend to rely on that information to guide their production. *See* 17 U.S.C. § 410(c) (providing that producing a valid

---

[1] Suno notes in its notice of supplemental authority that there is overlap between the Plaintiffs in this case and *Uncharted Labs*, and that the undersigned counsel represents Plaintiffs in both cases. Dkt. 89 at 1 n.1. Despite this overlap, the asserted works in *Uncharted Labs* are not the same as the works asserted in this case. Accordingly, any search for the works at issue in this case would entail distinct, additional efforts from those involved in *Uncharted Labs*. Plaintiffs further note that the defendant in *Uncharted Labs* is also represented by the same law firm as Suno here.

Hon. Paul G. Levenson
April 15, 2025
Page 2

# HUESTON HENNIGAN LLP

registration certificate "made before or within five years after first publication of the work shall constitute prima facie evidence of . . . the facts stated in the certificate"). By way of example, Plaintiffs will produce a digital version of Michael Jackson's "Don't Stop 'Til You Get Enough," first published in July 1979, with the catalog number 9-50742, as reflected on the registration certificate bearing the Copyright Registration Number SR 11-105. See Ex. E (SONY_SUNO_00000001). Plaintiffs will follow this same process for every other registered work included in Exhibit A. This substantial offer distinguishes this case from *Uncharted Labs*, in which the court considered only Plaintiffs' proposal to rely on "audio fingerprinting technology [to] identify that publicly published versions of the sound recordings are identical to the recordings submitted to the U.S. Copyright Office." Dkt. 89-1 at 1.

In essence, Plaintiffs have already offered to produce exactly what Suno is asking for: copies of the recordings that correspond to the works reflected in the copyright registrations. Indeed, for any works that Plaintiffs deposited with the Copyright Office in digital form, Plaintiffs will produce those recordings in the same digital format in which they were deposited. *See, e.g.*, Ex. F (UMG_SUNO_00000042) (Copyright Reg. No. SR0000866566, DaBaby, "KIRK," eRelease). And for those works that were deposited in physical form, Plaintiffs will produce the best currently available version of what they gave to the Copyright Office, given that Plaintiffs relinquished possession of the literal deposit copy when they deposited the work with the Copyright Office. *See, e.g.*, *Dallas Buyers Club, LLC v. Huszar*, 2019 WL 5856460, at *6 (D. Or. Sept. 3, 2019) ("[Plaintiff] does not have possession or custody of the depository copy of the Movie, which was necessarily submitted to the United States Copyright Office . . . with the copyright registration.")

In light of what Plaintiffs have already agreed to produce, any further requirement that Plaintiffs locate and produce physical copies of works originally deposited in physical form is disproportionate to the needs of the case. To start, we know based on Plaintiffs' current practices that any recordings released in physical form are the same recordings that Plaintiffs have already agreed to produce from their centralized repositories. *See, e.g.* O'Connell Decl. ¶ 7 (explaining that Sony receives a digital master from the mastering studio, which is then ingested into its feed); Duchardt Suppl. Decl. ¶ 6 (similar for Warner); Beauchamp Suppl. Decl. ¶ 6 (explaining that UMG receives a digital master file, which it provides directly to the manufacturing facility for physical releases). The instant dispute therefore boils down to the medium, rather than the substance of Plaintiffs' anticipated production of deposit copies.

Plaintiffs have also submitted supplemental declarations from employees familiar with their archival practices, further detailing the burden and unique challenges associated with locating physical deposit copies—particularly for older recordings. For example, many of the asserted works in this case predate Plaintiffs' current, standardized archival practices, making it nearly impossible to confirm whether a physical copy of a given work is stored without manually reviewing materials across expansive storage facilities. *See, e.g.*, Ex. G (Wilson Decl.) ¶ 6; Ex. H (Tierney Decl.) ¶ 6; Ex. I (Kossowicz Suppl. Decl.) ¶ 8. Moreover, many of the works in suit were originally created by labels that Plaintiffs subsequently acquired; yet Plaintiffs do not routinely request or receive physical product when they acquire catalogs from other labels. *See* Wilson Decl. ¶ 7; Tierney Decl. ¶ 7; Kossowicz Suppl. Decl. ¶ 9. Finally, turning over physical product located in Plaintiffs archives would require unsealing records that are stored in their original packaging, and that have never been unsealed, which would risk compromising unique and valuable archival materials. *See* Tierney Decl. ¶ 8; Wilson Decl. ¶ 8; Kossowicz Suppl. Decl. ¶ 10.

Hon. Paul G. Levenson
April 15, 2025
Page 3

# HUESTON HENNIGAN LLP

The *Uncharted Labs* order appears to rest on the incorrect premise that Plaintiffs maintain and have ready access to physical "deposit copies" in their files. But, as Plaintiffs' declarants explain, Plaintiffs likely do not have contemporaneous copies of the works they submitted to the Copyright Office in physical form, particularly for works dating back decades. Nor are contemporaneous deposit copies—physical or digital—"the best evidence of ownership of the specific copyrighted sound recordings or the contours of what was registered," as the *Uncharted Labs* order seems to suggest. Dkt. 89-1 at 2. Courts have rejected attempts by copyright defendants (like Suno) to manufacture disputes about ownership based on mere speculation that the copyrighted work produced may not be what was deposited with the Copyright Office. *See, e.g.*, *Chicoineau v. Bonnier Corp.*, 2018 WL 6039387, at *2 (S.D.N.Y. Oct. 16, 2018) ("Given [plaintiff's] sworn declaration that he included the photograph in question in the group he registered, [defendant's] speculation is insufficient to create a triable issue of fact as to whether [plaintiff's] registration covers the photograph at issue."); *Masi v. Moguldom Media Grp. LLC*, 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019) ("Given Plaintiff's sworn declaration . . . Defendant's speculative statements regarding the scope of the copyright do not create a triable issue of fact as to whether the Registration covers the photographs at issue."); *see also Mercer Publ'g Inc v. Smart Cookie Ink, LLC,* 2012 WL 12863933, at *1 (W.D. Wash. Nov. 27, 2012) ("[A] deposit copy is not necessarily required to prove ownership of a valid copyright . . . [and] a certificate of registration combined with a published copy of the work named in that certificate may suffice.").[2] Notably, these cases accepted precisely the type of evidence that Plaintiffs have offered here as resolving ownership—that is, exact copies of the asserted copyrighted work, paired with sworn testimony establishing that this work was deposited with the registration application. This Court need not grapple with the particular issue presented in *Uncharted Labs*, which was whether copyright registration certificates and Plaintiffs' audio fingerprinting evidence alone renders deposit copies unnecessary, because Plaintiffs have already agreed to produce the same recordings in digital form.

The digital recordings Plaintiffs have agreed to produce with identifying information that matches the associated copyright certificate is more than enough to satisfy their *prima facie* burden to demonstrate ownership of a valid copyright. *See* 17 U.S.C. § 410(c). To the extent Suno wishes to "test" Plaintiffs' ownership of a valid copyright in the recordings they produce, it is entitled to do so, including by requesting certified deposit copies directly from the Copyright Office itself. *See, e.g., Goodman v. Universal Beauty Prods. Inc.*, 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018) (precluding defendants from challenging the validity or scope of plaintiff's copyright registrations because defendants "had the opportunity to request a certified deposit copy from the U.S. Copyright Office" but failed to submit any such evidence). Until then, Suno has identified no basis to dispute Plaintiffs representations, nor cited any authority requiring Plaintiffs to undertake an incredibly burdensome search for physical archival records given their offer to produce identical digital recordings.

For the foregoing reasons, as well as those discussed in Plaintiffs' opposition to Suno's motion, the Court should decline to follow the *Uncharted Labs* order and deny Suno's motion to compel deposit copies.

---

[2] Neither party cited these cases in their briefing to the court in *Uncharted Labs*, and the court did not address them in its order.

# HUESTON HENNIGAN LLP

Respectfully submitted,

Dated: April 15, 2025

<div style="column-count: 2;">

/s/ Rajan S. Trehan
Rajan S. Trehan (*pro hac vice*)
Robert N. Klieger (*pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

Moez M. Kaba (*pro hac vice)*
Mariah N. Rivera (*pro hac vice*)
Alexander R. Perry (*pro hac vice*)
Samuel Givertz (*pro hac vice*)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

Daniel J. Cloherty
Alexandra Arnold
**CLOHERTY & STEINBERG LLP**
One Financial Center, Suite 1120
Boston, Massachusetts 02110
Telephone: (617) 481-0160
Facsimile: (617) 848-0830
dcloherty@clohertysteinberg.com
aarnold@clohertysteinberg.com

</div>

*Counsel for Plaintiffs*