# EXHIBIT G

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SUNO, INC., and JOHN DOES 1-10, <br><br> Defendant. | Case No. 1:24-cv-11611 (FDS) |

## <u>DECLARATION OF MICHAEL WILSON IN OPPOSITION TO SUNO'S MOTION TO COMPEL</u>

I, Michael Wilson, declare as follows:

1.      I am the Director of Archives at Warner Music Group ("Warner"). I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to such facts under oath.

2.      In my capacity as Warner's Director of Archives, I am familiar with the process by which Warner maintains physical copies of its archives.

3.       I understand that Suno has requested that Warner produce deposit copies of all the sound recordings asserted in the case, including the physical copy that Warner retained of any underlying work that was deposited with the United States Copyright Office in physical form. Based on my experience and understanding of Warner's archival practices, obtaining physical deposit copies would involve a time-consuming and manual retrieval process. In particular, for older sound recordings asserted in this case (e.g., those from the 1970s and 1980s), this task is

likely to prove a futile scavenger hunt, as Warner may not even have the deposit copy of these recordings.

4. Throughout my tenure with Warner, when a Warner record label releases a sound recording in physical form, Warner's current practice is to receive copies of the physical product directly from the manufacturing facility. I understand that these copies are the exact same as the copies that Warner commercially releases and sends to the Copyright Office as deposit copies. Warner indexes these physical copies in its Master Library System ("MLS"), and then places them in boxes that generally hold approximately 50 LPs or 100 CDs each. Warner labels these boxes and sends them to one of Warner's archival storage facilities. As a general matter, Warner sends physical copies of sound recordings manufactured in the United States to an Iron Mountain facility in North Hollywood, California. Warner typically stores international sound recordings in facilities located in their respective territories.

5. If Warner were to attempt to locate and retrieve any deposit copies of physical product that may be stored within its archives, Warner would need to examine the copyright registration certificate for each recording to gather identifying information. Warner would then have to cross-reference that identifying information derived from the copyright registration certificates in MLS to attempt to identify the physical product that corresponds to the copyrighted work, and locate the specific facility where the physical product corresponding to the copyrighted work is stored, along with the general location of the box containing the product within that facility.

6. Additionally, many of Warner's older archival records may not be identifiable in MLS, as I am unaware whether Warner has maintained consistent practices for entering information into that system, including with respect to decades-old sound recordings and sound recordings Warner acquired from other record labels. It would thus be impossible to determine whether Warner even possesses certain archival deposit copies without manually searching through each of its storage facilities.

7. I am also doubtful that Warner's archives contain physical copies of all sound recordings in Warner's repertoire. For instance, when Warner acquires a catalog of sound

recordings from another record label, it does not routinely request or obtain physical product copies of those recordings. Consequently, there is no guarantee that Warner's archives include physical copies of sound recordings originally released by labels that Warner has subsequently acquired.

8.      Finally, relinquishing possession of actual physical products directly from Warner's archives poses a risk of compromising valuable archival materials, especially when Warner may only have a single archival copy of a given physical product. Additionally, the physical recordings stored in Warner's archives typically remain sealed in their original packaging. If producing archival copies of physical sound recordings requires unsealing the products, it would further jeopardize the integrity of Warner's archives and, in some instances—such as with older vinyl records—the sound recordings themselves.

9.      If tasked with obtaining a sound recording corresponding to a particular copyright registration, rather than searching Warner's own records, I would instead examine the copyright registration and use all available identifying information (e.g., artist, title, year of release) to acquire the corresponding product through commercially available sources. I understand that Warner has already agreed to produce digital, commercially available versions of the sound recordings that Warner has alleged Suno infringed in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of April, 2025, at Los Angeles, California.

DocuSigned by:

*Mike Wilson*

1819F086DC4647B...

Michael Wilson