# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br> Plaintiffs, <br> vs. <br><br> SUNO, INC., and JOHN DOES 1-10, <br><br> Defendant. | Case No. 1:24-cv-11611 (FDS) |

### DECLARATION OF THOMAS TIERNEY IN OPPOSITION TO SUNO'S MOTION TO COMPEL

I, Thomas Tierney, declare as follows:

1. I was the Director of Archives for Sony Music Entertainment ("Sony") from 2005 to March 2025, and am currently a consultant for Sony. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, I could and would testify competently to such facts under oath.

2. In my previous capacity as Sony's Director of Archives and through my ongoing consulting work, I am familiar with the process by which Sony maintains its physical archives.

3. I understand that Suno has requested that Sony produce deposit copies of all the sound recordings asserted in the case, including any physical copy that Sony retained of any work that was deposited with the United States Copyright Office in physical form. Based on my experience and understanding of Sony's archival practices, obtaining physical copies of deposit copies would involve a time-consuming and manual retrieval process. In particular, for older

sound recordings asserted in this case (e.g., those from the 1970s and 1980s), this task is likely to be difficult and potentially futile, as Sony may not even have copies of the deposit copy of certain recordings, especially in cases in which the recording at issue was initially released by third parties but later acquired.

4. Throughout my tenure with Sony, when a Sony record label released a sound recording in physical form, Sony received two copies of the physical product on the day of the commercial release of that recording directly from Sony's internal distribution team. I understand that these copies were identical to the copies that Sony commercially released, and to those sent to the Copyright Office as deposit copies. Sony indexed these physical products by product number and stored one copy at Sony's headquarters in New York and delivered the other copy to Sony's off-site storage facility in Boyers, Pennsylvania. My understanding is that this remains Sony's current practice with respect to archival copies.

5. In order to attempt to locate and retrieve any copies of physical product stored within its archives, Sony would need to examine the copyright registration certificate for each recording to gather identifying information. Sony would then have to cross-reference that identifying information derived from the copyright registration certificates in its archival database to attempt to identify the physical product that corresponds to the copyrighted work.

6. Sony may not be able to easily match identifying information from copyright registration certificates with many of its older archival records, as I do not know whether Sony has maintained consistent practices for entering information into that system, including with respect to decades-old sound recordings and sound recordings Sony acquired from other record labels. To the extent Sony would be able to match the product in the copyright registration to its archival index, Sony then would only be able to determine whether it possesses certain copies by manually searching through its entire on-site library and off-site storage facility.

7. I also doubt that Sony's archives contain physical copies of all sound recordings in Sony's repertoire. For instance, as mentioned above, when Sony acquires a catalog of sound

- 3 -

recordings from another record label, it does not routinely request or obtain physical copies of those recordings, and therefore no physical copy may exist in its archives.

8.     Finally, relinquishing possession of physical products directly from Sony's archives poses a risk of compromising valuable archival materials, especially when Sony may have only one or two archival copies of a given physical product. Additionally, the physical recordings stored in Sony's archives typically remain sealed in their original packaging. If producing archival copies of physical sound recordings requires unsealing the products and delivering them to a third party, it would further jeopardize the integrity of Sony's archives and, in some instances—such as with older vinyl records—the sound recordings themselves.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of April, 2025, at New York, New York.

_____
Thomas Tierney