# EXHIBIT I

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br>    Plaintiffs, <br><br>vs. <br><br>SUNO, INC., and JOHN DOES 1-10, <br><br>    Defendant. | Case No. 1:24-cv-11611 (FDS) |

## DECLARATION OF TEGAN KOSSOWICZ IN OPPOSITION TO SUNO'S MOTION TO COMPEL

I, Tegan Kossowicz, declare as follows:

1. I am a Vice President, Business & Legal Affairs, Royalties & Copyright (North America) at Universal Music Group ("UMG"). I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to such facts under oath. I understand that this Declaration is intended as a supplement to my previous Declaration, dated March 11, 2025.

2. In my capacity as Vice President, Business & Legal Affairs, Royalties & Copyright (North America), I am familiar with the process by which UMG maintains archival copies of sound recordings released in physical form.

3. I understand that Suno has requested that UMG produce deposit copies of all the sound recordings asserted in the case, including the archival physical copies that UMG retained of any underlying work that was deposited with the United States Copyright Office in physical form.

Based on my experience and understanding of UMG's archival practices, obtaining physical deposit copies from UMG's archives would require a time-consuming and manual retrieval process. In particular, for older sound recordings asserted in this case (*e.g.*, those from the 1970s and 1980s), this task is likely to prove a futile scavenger hunt, as UMG may not even have the deposit copy of these recordings.

4. I helped implement UMG's current system for inventorying and archiving the physical products used as deposit copies shortly after I began working at UMG in 2006. Under this current system, when a UMG record label releases a new sound recording in physical form, UMG's practice is to request three (3) copies of each physical product produced for commercial release directly from the manufacturing facility. UMG generally submits two (2) of these physical copies (received directly from the manufacturing facility) to the United States Copyright Office as the deposit copies (typically in a compact disc form), and then retains the third physical copy for its archives. UMG collects all of these third archival deposit copies and places them into boxes, organized roughly by release date, along with an inventory sheet listing each unit of physical product contained in the box. UMG does not include copyright registration materials, such as the copyright registration application or certificate, in these boxes, nor does it store physical copies alongside corresponding copyright registration materials. UMG then sends these boxes to one of three storage facilities, approximately every two weeks. UMG maintains storage facilities at Iron Mountain locations in Los Angeles, California; Boyers, Pennsylvania; and Moonachie, New Jersey.

5. Locating and retrieving an archival physical deposit copy of a sound recording registered with the Copyright Office and archived under this current system (since 2006) would take in the order of about a week. For clarification, the physical copy that UMG retained as the archival deposit copy is the exact copy that UMG receives from a manufacturing facility which is intended for commercial release.

6. I am not aware of how, if at all, UMG inventoried physical products received prior to my joining UMG in 2006. Therefore, it is doubtful that UMG would be able to track down archival physical deposit copies of these older recordings using the current system.

7. If UMG were to attempt to locate and retrieve any deposit copies of physical product registered before the current practice that may be stored within its storage facilities, UMG would first need to examine the copyright registration certificate for each recording to gather identifying information. UMG would then have to cross-reference the identifying information derived from the copyright registration certificates in UMG's Archives Inventory System ("AIS") to attempt to identify the specific facility where the physical product corresponding to the copyrighted work is stored. But even if AIS reflects the existence of an archival copy of the work in UMG's archives and indicates the facility where the work is stored, locating and retrieving the physical product within the storage facility would be a significant challenge. Given UMG's inconsistent inventorying practices, searching for a particular recording would likely involve recalling dozens of boxes whose contents are not readily identifiable, and requiring multiple individuals to manually search through each box to determine if it contains the corresponding physical product.

8. Additionally, many of UMG's older archival records are likely not identifiable in AIS, as UMG has not maintained consistent practices for entering information into the system. It would thus be impossible to determine whether UMG even possesses certain archival deposit copies, and if so, where they are stored, without manually searching through every box in UMG's possession across all of its storage facilities.

9. I am also doubtful that UMG's archives contain physical copies of all sound recordings in UMG's repertoire. For instance, when UMG acquires a catalog of sound recordings from another label, it does not routinely request or obtain physical copies of those recordings. Consequently, there is no guarantee that UMG's archives include physical copies of sound recordings that were originally released by labels subsequently acquired by UMG.

10. Finally, relinquishing possession of physical products directly from UMG's archives poses a risk of compromising valuable archival materials, especially when UMG may have only one archival copy of a given physical product. Additionally, the physical recordings stored in UMG's archives typically remain sealed in their original packaging. If producing archival copies of physical sound recordings requires unsealing the products, it would further jeopardize the integrity of UMG's archives and, in some instances—such as with older vinyl records—the sound recordings themselves.

11. When tasked with examining or obtaining a sound recording corresponding to a particular copyright registration, rather than searching UMG's own records, I would instead simply examine the copyright registration and use all of its available identifying information (*e.g.*, artist, title, year of release) to find or acquire the corresponding product through commercially available sources. I understand that UMG has already agreed to produce digital, commercially available versions of the sound recordings that UMG has alleged Suno infringed in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of April, 2025, at La Quinta, California.



Tegan Kossowicz

- 4 -