# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SUNO, INC. and JOHN DOES 1-10, <br><br> Defendant. | Civil Action No. 1:24-cv-11611 (FDS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

- i -

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

    A. Plaintiffs File Complaint Targeted to Infringement of Their Recordings ............2

    B. Plaintiffs Learn That Suno Scraped Sound Recordings from YouTube...............3

    C. Plaintiffs Promptly Take Action to Amend ...........................................................5

III. LEGAL STANDARD...............................................................................................................5

IV. ARGUMENT............................................................................................................................6

    A. Plaintiffs' Proposed Amendment Is Not Futile......................................................6

    B. Good Cause Exists ...................................................................................................8

        1. Plaintiffs Have Demonstrated Diligence in Uncovering the Facts of Suno's Scraping.............................................................................8

        2. Suno Stymied Plaintiffs' Plan to File a Single, Consolidated Amendment ......................................................................................10

        3. Suno Is Not Unfairly Prejudiced by Plaintiffs' Request ..........................10

    C. Judicial Economy...................................................................................................11

V. CONCLUSION.......................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC,*
  2020 WL 10500362 (D. Mass. June 24, 2020) ........................................................................ 13

*Ariana v. Molta,*
  2025 WL 2159200 (D. Mass. Mar. 20, 2025) .......................................................................... 12

*Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc.,*
  2019 WL 9096049 (D. Mass. Aug. 21, 2019) ......................................................................... 16

*CoxCom, Inc. v. Chaffee,*
  536 F.3d 101 (1st Cir. 2008) .................................................................................................... 10

*D&Z Auction Resellers, LLC v. Chinea,*
  2021 WL 1232870 (D.P.R. Aug. 2, 2021) ................................................................................. 9

*Guest-Tek Interactive Ent. Inc. v. Pullen,*
  731 F. Supp. 2d 80, 93 (D. Mass. 2010) ................................................................................ 6, 9

*Hatch v. Dep't for Child., Youth & Their,*
  *Fams.*, 274 F.3d 12 (1st Cir. 2001) ........................................................................................... 7

*Maquet Cardiovascular LLC v. Abiomed, Inc.,*
  627 F. Supp. 3d 54 (D. Mass. 2022) ........................................................................................ 14

*O'Leary v. New Hampshire Boring, Inc.,*
  323 F.R.D. 122 (D. Mass. 2018) .............................................................................................. 13

*O'Connell v. Hyatt Hotels of P.R.,*
  357 F.3d 152 (1st Cir. 2004) ............................................................................................... 6, 16

*Parkhurst v. Superior Drywall, Inc.,*
  2022 WL 36475 (D. Mass. Jan. 4, 2022) ................................................................................. 16

*Penobscot Nation v. Mills,*
  2014 WL 442429 (D. Me. Feb. 4, 2014) ................................................................................. 14

*Power v. Connectweb Tech., Inc.,*
  740 F.Supp.3d 39 (D. Mass. 2024) ............................................................................................ 8

*Rodriguez-Reyes v. Molina-Rodriguez,*
  711 F.3d 49 (1st Cir. 2013) ................................................................................................... 7, 8

*Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.,*

714 F.3d 62 (1st Cir. 2013) .............................................................................................. 6

*Tiernan v. Blyth, Eastman, Dillon & Co.*,
719 F.2d 1 (1st Cir. 1983) ............................................................................................. 12

*Transwitch Corp. v. Galazar Networks, Inc.*,
377 F. Supp. 2d 284 (D. Mass. 2005) ............................................................................ 6

*UMG Recordings, Inc. v. Kurbanov*,
2021 WL 6492907 (E.D. Va. Dec. 16, 2021) .............................................................. 11

*Wahad v. F.B.I.*,
132 F.R.D. 17 (S.D.N.Y. 1990) ................................................................................... 15

*Wandering Dago Inc. v. N.Y. State Off. of Gen. Servs.*,
2014 WL 12797920 (N.D.N.Y. July 28, 2014) ........................................................... 15

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
633 F. Supp. 3d 650 (D. Conn. 2022) ............................................................ 8, 9, 10, 11

**Statutes**

17 U.S.C. § 1201(a) ............................................................................................................ 6, 7

17 U.S.C. § 1201(a)(1)(A) ............................................................................................ 1, 5, 7

17 U.S.C. § 1201(a)(3)(A) ..................................................................................................... 8

Plaintiffs respectfully submit this Memorandum of Law in Support of their Motion for Leave to File an Amended Complaint pursuant to Rule 15(a)(2) and Rule 16(b)(4) (the "Motion").[1]

## I. INTRODUCTION

Plaintiffs are a group of record companies or recorded music businesses that collectively own or exclusively control copyrights in many of the most historically significant and commercially valuable sound recordings in the world. Dkt. No. 1 ("Complaint" or "Compl.") ¶ 6. Defendant Suno, Inc. ("Defendant" or "Suno") operates an AI-powered music generation service that permits users to generate audio files using, for example, text prompts that describe various aspects of the desired musical output in plain English. *Id*. ¶ 7. To build its product, Suno copied millions of Plaintiffs' copyrighted sound recordings without authorization, using those works to train AI models designed to generate an endless number of audio files that directly compete with the very recordings Suno unlawfully appropriated. *See* Dkt. No. 28 ("Answer") at 8 ("It is no secret that the tens of millions of recordings that Suno's model was trained on presumably included recordings whose rights are owned by the Plaintiffs in this case.").

Throughout discovery, Plaintiffs have sought to determine, among other things, how Suno obtained copies of their copyrighted sound recordings. Discovery has revealed that Suno not only engaged in widespread copyright infringement but also *obtained* Plaintiffs' sound recordings in an independently unlawful manner by circumventing technological protection measures and scraping copyrighted content from YouTube. As a result, Plaintiffs now seek leave to assert a claim under the Digital Millennium Copyright Act's anti-circumvention provision, 17 U.S.C. § 1201(a)(1)(A).

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

- 1 -

## II. BACKGROUND

### A. Plaintiffs File Complaint Targeted to Infringement of Their Recordings

Plaintiffs initiated this action on June 24, 2024, alleging Suno engaged in copyright infringement by using Plaintiffs' copyrighted sound recordings without authorization to train its generative artificial intelligence ("AI") models. Compl. ¶¶ 83-100. As detailed in the Complaint, Suno's and its investors' public statements, and Suno's ready generation of outputs that mimicked many musical aspects of Plaintiffs' well-known copyrighted sound recordings, betrayed that Suno used Plaintiffs' works to train its unlawful AI model. *Id.* ¶¶ 8, 51. Nonetheless, prior to the filing of this lawsuit, Suno refused to provide Plaintiffs with any information regarding the source of its training data. *Id.* ¶¶ 8, 10.

While Plaintiffs had ample reason to believe that Suno engaged in infringement on a massive scale, it was impossible to identify each of the specific recordings included within Suno's training data, much less how Suno gained access to those recordings and whether it used unlawful means to do so. Moreover, Plaintiffs have been very clear since the commencement of this action that they intended to amend the Complaint at an appropriate time when they had a clearer picture of how Suno trained its model, including which of their works had been copied. *Id.* ¶ 27.

After Suno filed its Answer to the Complaint—explicitly acknowledging, for the first time, that it had copied millions of sound recordings into its training data (Answer at 8)—the Court issued a Scheduling Order stating, "[e]xcept for good cause shown, no motions seeking leave to add new parties or to amend the pleadings to assert new claims or defenses may be filed after November 29, 2024." Dkt. No. 42. The parties then commenced discovery, and Plaintiffs ultimately learned key facts about how Suno obtained and used their sound recordings. Those facts necessitate the instant Motion to Amend.

### B. Plaintiffs Learn That Suno Scraped Sound Recordings from YouTube

Plaintiffs have diligently sought information about Suno's training process since the inception of this case. In their First Set of Interrogatories to Suno dated August 19, 2024, Plaintiffs asked Suno to "DESCRIBE how YOU DEVELOPED YOUR TRAINING DATA, including the manner in which YOU identified and used SOUND RECORDINGS to DEVELOP YOUR TRAINING DATA, how YOU acquired the TRAINING DATA, and the individuals involved." Declaration of Rajan S. Trehan ("Trehan Decl.") at Ex. C. Suno initially responded by stating that it "d[id] not intend to respond to this Interrogatory at this time," and agreed to meet and confer. *Id*. at Ex. D. After the parties met and conferred, Suno agreed to amend its response, which added additional information regarding Suno's development of its training data, but failed to describe *how* Suno acquired it, particularly the sources of the audio files. *Id*. at Ex. E. After meeting and conferring for a second time, Suno agreed to provide this missing information. It was not until May 20, 2025, that Suno finally admitted that it obtained the copyrighted sound recordings used in its training data from YouTube, a popular online streaming service that makes audiovisual content available for users to stream in real-time. *Id*. at Ex. F.

On April 24, 2025, Plaintiffs served their Second Set of Interrogatories on Suno. Interrogatory No. 9 asks Suno to "DESCRIBE YOUR use of audio and/or video downloaders in DEVELOPING YOUR TRAINING DATA and/or DEVELOPING YOUR AI MODEL, including the precise downloader(s) or program(s) YOU used to select and obtain the SOUND RECORDINGS included in YOUR TRAINING DATA." *Id*. at Ex. G. On May 27, 2025, Suno provided its Response, which specifies that it used open-source, command-line programs titled YT-DL and YT-DLP to download files from YouTube. *Id*. at Ex. H. These programs facilitate "stream ripping," a notorious form of music piracy. Stream ripping entails converting content from a streaming service, such as YouTube, to permanently stored audio files that can then be

- 3 -

further distributed and downloaded. Proposed Am. Compl. ¶ 54. As set forth below, while YouTube permits users to stream content, its service was never intended to and prohibits users from downloading permanent copies of audio or audiovisual files.

Specifically, YouTube's Terms of Service generally prohibit the unauthorized use of recordings available on its platform.[2] While YouTube facilitates streaming music and offers a substantially restricted download feature for paying subscribers, it does not permit downloading and making permanent, unrestricted copies of the content on the platform. Proposed Am. Compl. ¶ 53. In fact, YouTube employs enhanced technological measures to protect against unauthorized downloading and copying of licensed content, such as Plaintiffs' sound recordings. *Id.* Specifically, YouTube employs a "rolling cipher" encryption measure to control access to such content, preventing external sites or services from directly downloading protected media files. *Id.* YouTube maintains two different URLs for any given video: the page URL, visible to the user, is for the webpage where the video playback occurs, and the file URL, not visible to the user, is for the video file itself that is played within the page. *Id.* The file URL is encrypted using a complex and periodically changing algorithm—the "rolling cipher"—that is designed to impeded external access to the underlying YouTube video files, thereby preventing or inhibiting any downloading, copying, or distribution of the videos. *Id.* In simple terms, the rolling cipher effectively controls a user's access to copies of copyrighted works uploaded to the platform and prevents an ordinary user from creating a permanent, unrestricted download of a sound recording made available on YouTube only for streaming and restricted downloading. *Id.* This technology reflects the basic arrangement between YouTube and content owners like Plaintiffs, who permit their content to be streamed from the platform but prohibit any permanent copying of that content. *Id.*

---

[2] YouTube, "Terms of Service," "https://www.youtube.com/static?template=terms".

In using YT-DL and YT-DLP to obtain audio files from YouTube, Suno violated YouTube's terms of service and circumvented technological measures employed by YouTube—including the rolling cipher—to prevent unauthorized downloading and copying of licensed content, such as Plaintiffs' sound recordings. *Id.* ¶ 55.

### C. Plaintiffs Promptly Take Action to Amend

On August 27, 2025, Plaintiffs informed Suno that they intended to file a motion for leave to amend the Complaint to add a cause of action for violation of Section 1201(a)(1)(A). Trehan Decl. Ex. I; Ex. J. This is Plaintiffs first request for leave to amend the Complaint. Shortly after, the Parties met and conferred, and discussed requesting an extension to the case schedule to permit discovery into Plaintiffs' new claim. *Id*. On September 11, 2025, Plaintiffs shared a draft of the Proposed Amended Complaint with Suno, and provided a proposal for an extension of the discovery deadline. *Id*. After additional conferral, the Parties submitted a joint motion requesting that the Court extend the case schedule. Dkt. No. 124. The Joint Motion to Amend the Amended Scheduling Order specifies that Suno will not oppose Plaintiffs' motion for leave to amend on the basis of undue delay or impact to the case schedule. *Id*.

## III. LEGAL STANDARD

The Federal Rules provide that when a litigant seeks to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 15, leave to amend "'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." *Transwitch Corp. v. Galazar Networks, Inc.*, 377 F. Supp. 2d 284, 290 (D. Mass. 2005). Where a party seeks leave to amend after the expiration of a deadline set in the Court's scheduling order, Rule 16(b)'s "good cause" standard applies. *See Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013). Under this standard, a motion for leave may be granted where "the deadline cannot

reasonably be met despite the diligence of the party seeking extension." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004).

## IV.   ARGUMENT

Rule 16(b)'s good cause standard is met here because (i) Plaintiffs' proposed amendment is not futile and asserts a viable circumvention claim; (ii) Plaintiffs were diligent in investigating and uncovering Suno's circumvention; (iii) Suno will not be prejudiced by the Proposed Amended Complaint; and (iv) judicial economy and efficiency support Plaintiffs' request.

### A.   Plaintiffs' Proposed Amendment Is Not Futile

Because Plaintiffs plausibly allege a viable circumvention claim, their proposed amendment is not futile. "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted)*; see also Guest-Tek*, 731 F. Supp. 2d at 80, 94 (D. Mass. 2010) ("An allegation is futile if the proposed amendment fails to state a claim to which relief can be granted."). Thus, the amended complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . and contain[] no other fatal defects." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (internal quotations and citations omitted). The Court must afford all reasonable inferences in the plaintiff's favor. *Id*.

"A violation of Section 1201(a)(1) has been described by Congress as the electronic equivalent of breaking into a locked room in order to obtain a copy of a book." *Power v. Connectweb Tech., Inc.*, 740 F.Supp.3d 39, 59 (D. Mass. 2024). To state a claim for circumvention in violation of 17 U.S.C. § 1201(a), Plaintiffs must plausibly allege that (1) their copyrighted sound recordings are protected by a "technological measure" that "effectively controls access" to the

works and (2) that Suno circumvented such a technological measure to access them. 17 U.S.C. § 1201(a)(1)(A); *see also Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 661-62 (D. Conn. 2022) ("Congress enacted the anti-circumvention provision set forth in subsection 1201(a)(1), which provides that '[n]o person shall circumvent a technological measure that effectively controls access to' a copyrighted work"). Plaintiffs' circumvention claim satisfies these elements. *See* Proposed Am. Compl. ¶¶ 110-117.

*First*, Plaintiffs allege that YouTube employs specific technological measures—namely a "rolling cipher"—to protect against unauthorized downloading and copying of licensed content available for streaming on its service, such as Plaintiffs' copyrighted sound recordings. *Id.* ¶¶ 53-54, 57. In short, YouTube converts a portion of the URL to a scrambled string of characters that must be decrypted by authorized media players to play the file, preventing an ordinary user from creating a permanent download of a sound recording made available for streaming on YouTube. *Id.* ¶ 53. At least one court has already concluded that YouTube's rolling cipher protections constitute a "technological measure" that "effectively controls access" to protected works within the meaning of 17 U.S.C. § 1201(a). *Yout, LLC*, 633 F. Supp. 3d at 666-72; *see also D&Z Auction Resellers, LLC v. Chinea*, 2021 WL 1232870, at *4 (D.P.R. Aug. 2, 2021) ("[P]asswords, encryption programs, and other security devices that regulate access to a protected work have been found to constitute technological measures.").

*Second*, Plaintiffs allege that Suno obtained copyrighted sound recordings by unlawfully circumventing YouTube's rolling cipher by "stream ripping" audio files from YouTube, a form of music piracy prohibited by YouTube's terms of service. Proposed Am. Compl. ¶¶ 51-58. "To 'circumvent a technological measure,' within the meaning of Section 1201(a)(1)(A), is 'to descramble a scrambled work[;] to decrypt an encrypted work[;] or otherwise to avoid, bypass,

remove, deactivate, or impair a technological measure, without the authority of the copyright owner.'" *Yout, LLC*, 633 F. Supp. 3d at 672-73 (quoting 17 U.S.C. § 1201(a)(3)(A)); *see also CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 110 (1st Cir. 2008) (having "little trouble concluding" that the trial court correctly held the defendant circumvented a technological measure where digital cable filter allowed subscribers to bypass pay-per-view billing system that scrambled programming unless purchased). Suno's activities as alleged in the Proposed Amended Complaint fall squarely within this definition. *See Yout, LLC*, 633 F. Supp. 3d at 673 (concluding that party's "technology clearly 'bypasses' YouTube's technological measures because it affirmatively acts to 'modify[]' the Request URL (*a.k.a.* signature value), causing an end user to access content that is otherwise unavailable."); *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, at *7–8 (E.D. Va. Dec. 16, 2021) (finding defendant used youtube-dl software to circumvent the technological measures on YouTube).

### B. Good Cause Exists

#### 1. *Plaintiffs Have Demonstrated Diligence in Uncovering the Facts of Suno's Scraping*

Plaintiffs have acted with undeterred diligence, both in advancing this litigation and in seeking definitive information about the manner and extent of Suno's acquisition and unauthorized copying of their sound recordings to train Suno's AI models. As detailed above and in the Proposed Amended Complaint, Suno refused to answer Plaintiffs' pre-suit inquiries regarding the compilation of its training data. Thus, Plaintiffs could obtain the requisite information only through discovery.

Courts consistently hold that good cause exists when the information underlying the proposed amendment comes to light only after the deadline to amend has lapsed. *See, e.g.*, *Ariana*

*v. Molta*, 2025 WL 2159200, at *4 (D. Mass. Mar. 20, 2025) ("delay is justified when discovery led to previously unknown facts which altered the shape of plaintiff's case") (citing *Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4 (1st Cir. 1983) (internal quotation marks and alterations omitted)); *Guest-Tek Interactive Ent. Inc.,* 731 F. Supp. 2d at 93 ("Where, as here, discovery led to previously unknown facts illuminating the extent of Solution Inc. and Lavigne's involvement in the alleged illegal activities, denial of the amendment is inappropriate."); *Abiomed, Inc. v. Maquet Cardiovascular LLC*, 2020 WL 10500362, at *4 (D. Mass. June 24, 2020) (including "new facts elicited in discovery" as a "valid reason for [a] delayed amendment") (citation omitted).

Here, Plaintiffs diligently served their first sets of discovery requests on August 19, 2024, specifically targeting the development of Suno's AI models and the compilation of its training data. However, Suno refused to produce any documents or provide substantive responses to interrogatories, instead raising blanket objections. Ultimately, Plaintiffs did not learn of the methods by which Suno had collected their copyrighted sound recordings until the end of May 2025. Plaintiffs then had to confer with their experts, investigate YouTube and its anti-circumvention methods, conduct legal research into potential new claims, and meet and confer with Suno. This is precisely the type of circumstance where "good cause" supports amendment. *See, e.g.*, *O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 125 (D. Mass. 2018) (granting leave to amend where plaintiffs investigated their proposed new claim for months before amending); *Maquet Cardiovascular LLC v. Abiomed, Inc.*, 627 F. Supp. 3d 54, 64 (D. Mass. 2022) (finding good cause where defendant moved to amend after having an opportunity to "collect sufficient evidence to allege" a new claim); *Penobscot Nation v. Mills*, 2014 WL 442429, at *3

(D. Me. Feb. 4, 2014) ("Defendant's request to amend does not reflect delay, rather it reflects the developing factual record related to this litigation.").

### 2. Suno Stymied Plaintiffs' Plan to File a Single, Consolidated Amendment

Since the filing of the initial Complaint, Plaintiffs have made clear their intention to amend the Complaint to identify additional copyrighted sound recordings once the full extent of Suno's infringement became clear. Plaintiffs proposed a process for efficiently identifying those additional works by using a tool called Audible Magic, negotiated the use of Audible Magic in the Training Data Inspection Protocol, and carried out significant planning to prepare for the implementation of that analysis. On June 19, 2025, with Plaintiffs on the cusp of putting Audible Magic into motion, Suno notified Plaintiffs that they were blocking Plaintiffs' Audible Magic plan. Plaintiffs promptly raised this dispute with Magistrate Judge Levenson, who has held an initial hearing on the matter.

Plaintiffs had intended to seek leave to amend only once, thereby avoiding multiple rounds of briefing and unnecessary delay. *See, e.g.*, *Wandering Dago Inc. v. N.Y. State Off. of Gen. Servs.*, 2014 WL 12797920, at *6 (N.D.N.Y. July 28, 2014) ("The preferable method, which the Plaintiff employed, is a single comprehensive Motion to Amend."); *Wahad v. F.B.I.*, 132 F.R.D. 17, 21 n.4 (S.D.N.Y. 1990) ("plaintiff's statement that rather than filing successive motions to amend, plaintiff, in the interests of judicial economy filed one motion containing all of the additional allegations and defendants revealed from the documents . . . resonates with this Court" (internal quotation marks omitted)). However, Suno's obstruction has thrown into doubt when Plaintiffs will obtain the information to identify additional infringed works, forcing Plaintiffs to move now to add their circumvention claim.

### 3. *Suno Is Not Unfairly Prejudiced by Plaintiffs' Request*

Finally, although prejudice to the opposing party "is not the dominant criterion," *O'Connell*, 357 F.3d at 155, (citation omitted), Suno will not be meaningfully prejudiced. Pursuant to Local Rule 7.1(a)(2), Plaintiffs met and conferred with Suno regarding the Proposed Amended Complaint. As a result of these conferrals, the Parties jointly moved to amend the scheduling order, requesting an extension of the fact discovery deadline to allow the Parties to serve discovery focused on Plaintiffs' new claim. Dkt. No. 124.

### C.  Judicial Economy

Lastly, the Court may consider judicial economy and efficiency in evaluating a motion for leave to amend. *Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc.,* 2019 WL 9096049, at *5 (D. Mass. Aug. 21, 2019). This clearly weighs in Plaintiffs' favor given that the proposed circumvention claim arises out of the same conduct underlying the existing copyright infringement claims. *See Parkhurst v. Superior Drywall, Inc.*, 2022 WL 36475, at *3 (D. Mass. Jan. 4, 2022) ("Where the claims against Kamco stem from the same incidents described in Mr. Parkhurst's original complaint and rely largely on the same facts, it is logical and efficient to allow these related claims to be litigated in one case, rather than to require Mr. Parkhurst to initiate a new, related action concerning these same incidents.").[3] Plaintiffs should be permitted to proceed with the Proposed Amended Complaint, as opposed to filing an entirely new action and re-litigating essentially the same set of facts.

---

[3] As noted above, Plaintiffs intend to seek further amendment once they obtain a complete list of their sound recordings in Suno's training data. If the Court prefers, Plaintiffs would be willing to withdraw this Motion and file one consolidated motion once the parties' dispute regarding Audible Magic is resolved and the additional works have been identified.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant them leave to file the Proposed Amended Complaint.

Dated: October 8, 2025          HUESTON HENNIGAN LLP

  New York, New York

By: _____
Moez M. Kaba (pro hac vice)
Mariah N. Rivera (pro hac vice)
Alexander R. Perry (pro hac vice)
Samuel Givertz (pro hac vice)
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

Robert N. Klieger (pro hac vice)
Rajan S. Trehan (pro hac vice)
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

Daniel J. Cloherty
Alexandra Arnold
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, Massachusetts 02110
Telephone: (617) 481-0160
Facsimile: (617) 848-0830
dcloherty@clohertysteinberg.com
aarnold@clohertysteinberg.com

Counsel for Plaintiffs

- 13 -

**CERTIFICATE OF SERVICE**

    I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on October 8, 2025.

_____<br>
Moez M. Kaba<br>
*Counsel for Plaintiffs*