# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL-BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br> Plaintiffs, <br> vs. <br><br> SUNO, INC. and JOHN DOES 1-10, <br><br> Defendant. | Civil Action No. 1:24-cv-11611 (FDS) |

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION
# FOR LEAVE TO AMEND THE COMPLAINT

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ................................................................................................................1

II. PLAINTIFFS' PROPOSED AMENDED COMPLAINT IS NOT FUTILE....................3

    A. Plaintiffs Have Adequately Alleged that YouTube's Rolling Cipher "Controls Access" Under § 1201(a) ................................................................................................3

    B. The Purpose for Which a Defendant Circumvents an Access Control Is Not Material Under § 1201(a)(1) ..........................................................................................7

    C. Plaintiffs' Reading of § 1201(a)(1) Does Not Eliminate Fair Use ......................10

    D. Any Dispute Concerning How YouTube TPMs "Controls Access" Is a Question of Fact to Be Resolved on Summary Judgement .................................................12

V. CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ................................................................................ 4

*Biogen Idec MA, Inc. v. Japanese Found. for Cancer Rsch.*,
  38 F. Supp. 3d 162 (D. Mass. 2014) .................................................................................... 9

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ........................................................................................ Passim

*Green v. U.S. Dep't of Just.*,
  111 F.4th 81 (D.C. Cir. 2024) .............................................................................................. 5

*Hattler v. Ashton*,
  2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ................................................................... 9

*Hilsinger Co. v. Kleen Concepts, LLC*,
  164 F. Supp. 3d 195 (D. Mass. 2016) ................................................................................ 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ............................................................................................... 9

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2010) ....................................................................................... 2, 5, 9

*Mirpuri v. ACT Mfg., Inc.*,
  212 F.3d 624 (1st Cir. 2000) ................................................................................................ 6

*Murphy v. Millennium Radio Grp.*,
  650 F.3d 295 (3d Cir. 2011) ............................................................................................. 5, 8

*Piper v. Chris-Craft Indus., Inc.*,
  430 U.S. 1 (1977) ................................................................................................................. 9

*Town of Portsmouth v. Lewis*,
  813 F.3d 54 (1st Cir. 2016) .................................................................................................. 6

*UMG Recordings, Inc. v. Kurbanov*,
  2021 WL 6492907 (E.D. Va. Dec. 16, 2021) .................................................................. 2, 6

*Universal City Studios, Inc. v. Corley*,
  273 F.3d 429 (2d Cir. 2001) .................................................................................. 1, 2, 4, 12

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
   633 F. Supp. 3d 650 (D. Conn. 2022) .................................................................................. 1, 6

**Statutes**

17 U.S.C. § 101 ............................................................................................................................... 7

17 U.S.C. § 103 ............................................................................................................................... 7

17 U.S.C. § 1201 ..................................................................................................................... Passim

**Other Authorities**

A Report of the Register of Copyrights, 17 U.S.C.O. § 1201 (2017) ............................................. 4

H.R. Rep. No. 105-551(I) (1998) .................................................................................................... 3

S. Rep. No. 105-190 (1998) ...................................................................................................... 3, 10

**I.      INTRODUCTION**

Suno's Opposition raises only a narrow futility objection to Plaintiffs' proposed DMCA anticircumvention claim. Suno does not contest that YouTube's rolling cipher qualifies as a "technological measure," or (for purposes of this motion) that it is "effective." The sole question is whether Plaintiffs have plausibly alleged that the rolling cipher "controls access to a [copyrighted] work" under 17 U.S.C. § 1201(a)(1)(A). They have. Suno's legal arguments are incorrect, and any remaining factual disputes can be addressed at summary judgment.

Suno's wrongly treats "control[ling] access" under § 1201(a)(1) as an all-or-nothing proposition, arguing that once a copyright owner makes a work accessible to the public to any degree, no "access control" can exist. But § 1201(a)(1)(A) prohibits circumventing a technological protection measure ("TPM") that "*controls* access" to a copyrighted work, including measures that that do not block access to a work *ab initio*. In effect, Suno's reading substitutes "controls access" with "prevents access." That is not what the statute says, and for good reason: the DMCA sought to *expand*—not restrict—online distribution of copyrighted works. A TPM that limits *how* or *under what conditions* a user may access content clearly *controls* access. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864-65 (9th Cir. 2017); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001).

Plaintiffs allege that YouTube's rolling cipher controls how users may access copyrighted works: allowing authorized streaming of music videos on the platform while blocking other forms of access, including offline playback for non-Premium users, mobile playback, ad-free viewing, evasion of territorial and age restrictions, and extraction of copyrighted audio. Courts have uniformly held that allegations of circumventing YouTube's TPMs state a viable § 1201(a)(1)(A) claim. *See Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 664-65 (D.

Conn. 2022); *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, at *6-7 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022). This is precisely what Plaintiffs allege. *See* Proposed Am. Compl. ¶¶ 7, 43, 53-58.

Suno also argues that because it circumvented the rolling cipher to copy the sound recordings, the TPM must be a "copy control," not an "access control." But a defendant's reasons for circumvention is irrelevant under § 1201(a)(1), and nothing in the statute bars a TMP from controlling both access and copying. Analogous precedent confirms that circumventing DVD encryption technology violates § 1201(a)(1)(A), regardless of whether the defendant sought to view or copy the content. Those TPMs, like YouTube's rolling cipher, restrict both access and copying, and thus qualify as *both* access controls and copy controls. *See VidAngel*, 869 F.3d at 864 ("[T]he DMCA . . . does not provide that a TPM cannot serve as both an access control and a use control."); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 946 (9th Cir. 2010).

Suno's further suggestion that recognizing YouTube's rolling cipher as an access control would subvert fair use is equally meritless. "Fair use has never been held to be a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique or in the format of the original." *Corley*, 273 F.3d at 459. Suno could have lawfully acquired copies of the sound recordings at issue (for instance, by purchasing them) and then argued that its subsequent copying for AI training was fair use. It chose instead to circumvent YouTube's TPMs.

At this stage, Plaintiffs need only plausibly allege that YouTube employs access controls and that Suno circumvented them. How those controls function, and how Suno circumvent them, are factual questions for discovery. If Suno believes YouTube's TPMs do not satisfy this legal standard, it can move for summary judgment. Because the Proposed Amended Complaint states a clear-cut claim under § 1201(a)(1), the Court should grant Plaintiffs' leave to amend.

## II. PLAINTIFFS' PROPOSED AMENDED COMPLAINT IS NOT FUTILE

### A. Plaintiffs' Have Adequately Alleged that YouTube's Rolling Cipher "Controls Access" Under § 1201(a).

Suno contends that Plaintiffs have not alleged a "technological measure" that "controls access" under § 1201(a)(1)(A) because YouTube's content is already available to the public for streaming. *See* Opp. at 8, 13, 16. That argument misunderstands what it means to "control access."

Access is not all or nothing. A measure can "control[] access" if it regulates the *manner* and *conditions* under which access occurs, as opposed to barring access altogether. Section 1201(a)'s text confirms this: Congress chose the word *control*, not *prevent*. "Control" means "to exercise restraining or directing influence over." *Control*, Merriam-Webster, https://www.merriam-webster.com/dictionary/control. Thus, a measure that *restrains*, *directs*, or *influences* access qualifies as an access control.

This flexibility with *how* copyright owners could control access was intentional. Congress enacted the DMCA to "create[ ] the legal platform for launching the global digital on-line marketplace for copyrighted works" and "facilitate making available quickly and conveniently via the Internet the movies, music, software, and literary works that are the fruit of the American creative genius." S. Rep. No. 105-190, at 8 (1998). Congress crafted the DMCA to be adaptable to new (even unforeseen) technologies and means of online distribution. *See, e.g.*, *id.* at 15 (envisioning "the rapid and dynamic development of better technologies"); *see also* H.R. Rep. No. 105-551(I), at 9 (1998) (noting the DMCA was "intended to ensure a thriving electronic marketplace for copyrighted works on the Internet"). YouTube's model for distributing copyrighted works and remunerating rightsholders is a paradigmatic example of this Congressional intent: rightsholders, like Plaintiffs, can upload copyrighted content to YouTube and earn a share

of advertising revenue associated with the consumption of those works.[1]  This is precisely the sort of innovation in digital distribution models the DMCA was enacted to promote (and that would be thwarted on Suno's reading of the DMCA).[2]

It is therefore not surprising that courts construing § 1201(a) have long recognized that *partial* restrictions on access fall squarely within this provision.  In a line of cases involving DVD encryption, courts held that circumvention of the encryption technology violated § 1201(a) even though purchasers could lawfully view the content using licensed players.  *See, e.g.*, *VidAngel*, 869 F.3d at 863-65; *Corley*, 273 F.3d at 429; *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004).  These courts explained that the DVD Content Scramble System ("CSS") was an access control because it permitted access to content solely for viewing on an authorized player.  *See, e.g.*, *VidAngel*, 869 F.3d at 864-65 (finding CSS an access control where "only authorized [DVD] players get those keys" to access the DVD's contents).

YouTube's TPMs similarly provide *restricted* access to the music videos on its platform.  While users can access a "page URL" to stream music videos on an ad-supported basis within YouTube, they cannot reach "the video file itself that is played within the page," which resides at a distinct, encrypted "file URL."  Proposed Am. Compl. ¶ 54.  That file URL is protected by a dynamic, periodically changing algorithm—the "rolling cipher"—"designed to impede external access to the underlying YouTube video files."  *Id.*  Through this system, YouTube controls *how* users may interact with (or access) copyrighted works, restricting other forms of access, such as

---

[1] *See, e.g.*, YouTube Partner Earnings Overview, YouTube Help, https://support.google.com/youtube/answer/72902?hl=en#zippy=%2Chow-do-i-earn-revenue%2Cwhats-my-revenue-share (last visited Oct. 13, 2025) (describing a model for how creators can monetize content on YouTube).

[2] U.S. Copyright Office, Section 1201 of Title 17: A Report of the Register of Copyrights, at ii (June 2017) ("[T]he statute has worked just as Congress intended, laying the legal foundation for the explosion in legitimate digital dissemination models over the past two decades.").

offline playback (for non-Premium users), mobile playback, ad-free viewing, evasion of territorial and age restrictions, and direct downloads. In Suno's own words, the rolling cipher operates as a "digital lock that must be opened" before a user can fully access a work. *See* Opp. at 12; *see also Green v. U.S. Dep't of Just.*, 111 F.4th 81, 99 (D.C. Cir. 2024) (describing § 1201(a) as a "protection against circumvention of digital locks").

Suno deliberately picked this lock. Using tools such as YT-DL and YT-DLP, Suno "circumvent[ed] YouTube's encryption" to rip copyrighted audio files from the music videos. Am Compl. ¶ 55. By bypassing YouTube's TPMs, Suno obtained unrestricted versions of Plaintiffs' sound recordings—separate from the music videos and free of advertisements; playable offline, on a mobile device, without age or territorial restrictions; and fully downloadable (and available for subsequent illicit copying, including for use as training data). That conduct is the "electronic equivalent of breaking into a locked room" to retrieve the work inside. *See MDY Indus.*, 629 F.3d at 947 (citation omitted).[3] Because YouTube does not authorize the kind of unfettered access Suno obtained—and Plaintiffs did not grant Suno permission to bypass YouTube's TPMs—Suno plainly violated § 1201(a)(1)(A). *See* 17 U.S.C. § 1201(a)(3)(A) (defining "circumvent" as bypassing a TPM "without the authority of the copyright owner"); *VidAngel*, 869 F.3d at 863 (same).

The court in *Yout, LLC v. Recording Industry Association of America, Inc.* applied this same analysis to YouTube's TPMs and reached the same conclusion. The court explained that "the plain meaning of a measure that 'controls access' to a protected work appears to be broader than a measure that 'prevents' access." 633 F. Supp. 3d at 664. It expressly held that the phrase

---

[3] *See also Murphy v. Millennium Radio Grp.*, 650 F.3d 295, 300 (3d Cir. 2011) ("[I]f a movie studio encrypts a DVD so that it cannot be copied without special software or hardware, and an individual uses his own software to "crack" the encryption and make copies without permission, the studio may pursue the copier . . . for his circumvention of the encryption, which is a 'technological measure' designed to 'control access to' the DVD, under the DMCA." (internal ellipsis omitted)).

"controls access" encompasses technical measures that "restrain a YouTube user's freedom or ability to access the location where downloadable files are stored and download them." *Id.* Suno's attempt to cabin *Yout* by claiming that the court "did not meaningfully engage with the question of whether a rolling cipher is an access control or a copy control," Opp. at 17-18, mischaracterizes the opinion and ignores that Yout squarely presented this issue. *See* Response to Motion to Dismiss, *Yout, LLC*, No. 20-cv-01602 (SRU), Dkt. 55 at 4 (arguing that Yout "cannot 'circumvent' the rolling cipher, 'TPM,' or any other protection measure, per that term's definition in 17 U.S.C. § 1201, because YouTube already offers the means of accessing these video streams to anyone who requests them"). The *Yout* court conducted a careful textual analysis, reviewing the dictionary definitions of "control" and "access" to derive the plain meaning of the phrase "controls access," before concluding that YouTube's rolling cipher falls squarely within § 1201(a). *Yout, LLC*, 633 F. Supp. 3d at 664-65; *see also Kurbanov*, 2021 WL 6492907, at *6-7 (finding § 1201(a)(1) violation for bypassing YouTube's rolling cipher, noting that the cipher "does not allow users to download the videos or audio files streamed on the watch pages").[4]

---

[4] Suno appeared to suggest at the parties' October 15 status conference that this Court should defer ruling on Plaintiffs' motion pending the Second Circuit's decision in *Yout*. The Court should not do so. Rule 15 mandates that leave to amend be "freely given when justice so requires," and the First Circuit permits denial only for recognized grounds such as futility, bad faith, undue delay, or dilatory motive. *See, e.g.*, *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 627-28 (1st Cir. 2000). None is present here. The possibility that another court, in another circuit, may opine on a related issue in a different case is not a cognizable basis to withhold amendment. Futility, which is evaluated under the Rule 12(b)(6) standard, must be assessed based on existing law, not conjecture about future developments. *See Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) ("[W]e generally consider the law as it exists at the time of our review, not as it might speculatively exist in the future." (internal citation omitted)). If either party believes the Second Circuit's future decision in *Yout* is persuasive authority for this Court, that party can raise that argument at summary judgment, not as a threshold bar to amendment. Indeed, Suno's own filing in *Yout*—an amicus brief "***in support of neither party***"—undermines any claim that this Court should wait and see what happens in the Second Circuit.

Plaintiffs therefore plausibly allege that YouTube's rolling cipher "controls access" to their copyrighted works.[5]

### B.  The Purpose for Which a Defendant Circumvents an Access Control Is Not Material Under § 1201(a)(1).

Suno argues that YouTube's rolling cipher is a "copy control" rather than an "access control" because its *purpose* for circumventing the TPM was to download (and thus copy) Plaintiffs' copyrighted sound recordings for use in training its AI. *See* Opp. at 12-13. In other words, because *Suno* bypassed the rolling cipher to copy Plaintiffs' works, the rolling cipher cannot be an access control. This argument is meritless. Section 1201(a) prohibits the act of circumvention itself, regardless of what the user intends to do after gaining access. The text of § 1201(a)(1)(A) contains no purpose-based limitation; it targets unauthorized evasion of a TPM that "controls access" to a copyrighted work. The violation lies in the circumvention, not the reason for it.

*VidAngel* is instructive. There, VidAngel purchased DVDs and Blu-ray discs and used decryption software to strip the encryption to copy the movies to its own servers. 869 F.3d at 853. VidAngel claimed the DVD encryption systems were "use controls" (what Suno refers to as "copy controls") not "access controls," because "the Studios object only to decryption to copy—a *use* of the copyrighted work—but permit those who buy discs to decrypt to view—a way of *accessing* the work." *Id.* at 863-64. (emphasis in original). In other words, VidAngel claimed that because it circumvented the encryption to copy rather than to view, it had only bypassed a "use control"

---

[5] Suno also argues that Plaintiffs have not alleged circumvention of an "access control" because the copyrighted "work" is the audiovisual content itself, not the underlying digital file. *See* Opp. at 15-17. Even accepting that premise, the argument fails. Though the music videos available to stream on YouTube are copyrighted works, the sound recordings Suno ripped from those music videos embody separate copyrights. *See* 17 U.S.C. §§ 101, 103. Suno accessed the sound recordings separate and apart from any music videos YouTube makes available on its platform.

and therefore could not have violated § 1201(a)(1). The Ninth Circuit emphatically disagreed, holding that "the statute does not provide that a TPM cannot serve as both an access control and a use control," and that a defendant may violate both § 1201(a)(1)(A) (by circumventing) and § 106 (by copying). *Id.* at 864. While "unlawful circumvention . . . ***do[es] not necessarily infringe***," a defendant who "decrypts the TPMs and then also reproduces that work [ ] is liable for both circumvention in violation of § 1201(a)(1)(A) and copyright infringement in violation of § 106(1)." *Id.* (emphasis added); *see also Murphy*, 650 F.3d at 300.

The same logic applies here. Like the DVD encryption in *VidAngel*, YouTube's rolling cipher and related TPMs restrict how users may access copyrighted content. Suno does not dispute that it bypassed those access controls. Though Suno's circumvention enabled it to download and copy Plaintiffs' copyrighted sound recordings for use as training data, liability under § 1201(a)(1) turns only on the act of bypassing a technological barrier without authorization. *See* 17 U.S.C. § 1201(a)(3)(A) (defining "circumvent" as "bypass[ing], remov[ing], deactiv[ing], or impair[ing] a technological measure, without the authority of the copyright owner"). Suno cites no case holding that a TPM controlling access loses that status when circumvention facilitates copying. To the contrary, courts recognize that a single TPM may control access and restrict copying. *See, e.g.*, *VidAngel*, 869 F.3d at 864 (observing that a TPM may "serve as both an access control and a use control"); *MDY Indus.*, 629 F.3d at 946 (acknowledging that a defendant "could be liable under both § 1201(a) and (b)").

The statute's structure confirms this overlap. Section 1201(a) targets circumventing measures that control access to works, and § 1201(b) targets trafficking in devices that circumvent measures that protect the rights of copyright owners. Their definitions are distinct but not mutually exclusive. *Compare* § 1201(a)(3)(B) (defining an access control as a measure that "requires the

application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work"), *with id.* § 1201(b)(2)(B) (defining a copy control as a measure that "prevents, restricts, or otherwise limits the exercise of a right of a copyright owner"). A measure that restricts how one gains access to a work (or the copy of it)—such as encryption or authorization keys—necessarily limits the ability to copy it as well.[6]

Unable to locate support in the text or relevant caselaw, Suno leans heavily on legislative history to manufacture a bright-line divide between access controls and copy controls. But legislative history "cannot override the plain language of a statute." *See Biogen Idec MA, Inc. v. Japanese Found. for Cancer Rsch.*, 38 F. Supp. 3d 162, 167 (D. Mass. 2014) (Saylor, J.) (citation omitted), *aff'd*, 785 F.3d 648 (Fed. Cir. 2015); *see also Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 26 (1977) ("Reliance on legislative history . . . [is] a step to be taken cautiously.").

Moreover, the history of the statute certainly does not establish that a TPM cannot simultaneously qualify as an access control and copy control. *See VidAngel*, 869 F.3d at 865 ("[N]either the language of section 1201 nor the legislative history addresses the possibility of access controls that also restrict use." (internal quotation omitted)). While the legislative discussions reflect an awareness that an overbroad circumvention prohibition would risk compromising the fair use doctrine, the legislative history also supports the alternative narrative

---

[6] Suno's reliance on *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), underscores the weakness of its position. *Lexmark* held that an "authentication sequence" for toner cartridges was not an access control because it did not restrict access to the copyrighted Printer Engine Program, which was freely readable by anyone who purchased the printer. *Id.* at 546-47. Here, by contrast, Plaintiffs' sound recordings are not freely accessible. The encrypted file URLs can only be accessed through authorized means—precisely the restriction *Lexmark* found lacking. *Hattler v. Ashton*, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), likewise offers no support. It involved only conclusory allegations and predates *VidAngel*. *See id.* at *3 (alleging only that "[t]he files for the Works were not available by lawful download at any online source; and Defendants circumvented the controls intended to limit access to the Works"); *see also id.* at *5 n.2 (observing that "Plaintiff has provided no evidence as to how Defendants acquired" the works). No court has since cited or relied on *Hattler*.

that Congress simply perceived a risk of duplicative liability if it created an independent cause of action for bypassing copy controls. As noted in the Senate Report, "[t]he prohibition in 1201(a)(1) is necessary because prior to this Act, the conduct of circumvention was never before made unlawful," whereas "copyright law has long forbidden copyright infringements, so no new prohibition [on circumventing copy controls] was necessary." S. Rep. No. 105-190, at 12. That same report makes clear that Congress intended to create broad and forward-looking protection. *See, e.g.*, S. Rep. No. 105-190, at 15 (recognizing § 1201 "depends in large part on the rapid and dynamic development of better technologies" and was designed to evolve alongside advances in encryption and access control measures).

In sum, the purpose behind a defendant's circumvention is immaterial. When Suno bypassed YouTube's rolling cipher and gained unfettered access to Plaintiffs' copyrighted works, it violated § 1201(a)(1). This act of circumvention is what the statute forbids.

C.  **Plaintiffs' Reading of § 1201(a)(1) Does Not Eliminate Fair Use.**

Suno warns that Plaintiffs' reading of § 1201(a)(1) would extend the statute beyond its intended scope and eviscerate the doctrine of fair use. Opp. at 1, 3. That prediction is unfounded. Suno conflates two distinct causes of action: copyright infringement and unlawful circumvention. Infringement under § 106 concerns unauthorized copying and distribution and is subject to a fair use defense. Section 1201(a)(1), by contrast, targets the act of circumventing a TPM that controls access to a copyrighted work. Nothing in Plaintiffs' theory collapses those inquiries or eliminates fair use for any subsequent copying.

Once again, *VidAngel* is illustrative. There, movie studios sued both under § 1201(a)(1) for circumvention of DVD encryption and under § 106 for copyright infringement. 869 F.3d at 855. The Ninth Circuit held that VidAngel violated § 1201(a)(1) by decrypting DVDs, *id.* at 864, but analyzed its fair use defense separately under § 106, *id.* at 860-62. The same approach is

- 10 -

appropriate here. While Suno may invoke fair use (though it will fail) to justify copying Plaintiffs' sound recordings to train its AI models, fair use cannot excuse its initial access obtained by circumventing YouTube's TPMs.

If Suno wanted fair use to shield it from liability entirely, it could have acquired its training data lawfully. Instead, it chose a cheaper and faster route: stream-ripping from YouTube. Section 1201(a)(1) exists to deter precisely that shortcut—ensuring that fair use protects lawful users, not those who pick digital locks. Suno has asserted fair use with respect to its subsequent copying, *see, e.g.*, Answer at 5 ("It is fair use . . . to make a copy . . . as part of a back-end technological process[.]"), but fair use cannot excuse its unlawful access to Plaintiffs' works in the first place.

Nor do Suno's professed concerns about fair use find any footing in the statute or its legislative history. Congress carefully calibrated § 1201 to preserve fair use. *See, e.g.*, 17 U.S.C. § 1201(a)(1)(B)-(D) (directing the Library of Congress to conduct triennial rulemaking to exempt classes of works whose users may be "adversely affected . . . in their ability to make noninfringing uses"); *id.* § 1201(d)-(j) (codifying various exemptions for certain uses); *id.* § 1201(c)(1) (expressly preserving the fair use defense to infringement). Congress thus struck the very balance that Suno claims to defend: preserving fair use for lawfully acquired works while prohibiting unauthorized circumvention of access controls.

If Suno truly believed that prohibiting stream-ripping under § 1201(a)(1) would chill fair use, its remedy lies with the Library of Congress, which can grant class-specific exemptions through the rulemaking process. But such an exemption would be inconsistent with § 1201(a)(1)'s core purpose: "back[ing] with legal sanctions the efforts of copyright owners to protect their works from piracy behind digital walls." *Corley*, 273 F.3d at 435. There is no need to distort the statute to account for fair use concerns—the law Congress enacted already strikes the appropriate balance.

### D. Any Dispute Concerning How YouTube TPMs "Control Access" Is a Question of Fact to Be Resolved on Summary Judgment.

Suno cannot dispute Plaintiffs' well-pleaded allegations to establish futility. *See Hilsinger Co. v. Kleen Concepts, LLC*, 164 F. Supp. 3d 195, 199 (D. Mass. 2016) ("In reviewing for futility, the district court . . . must assume the truth of all well-pleaded facts and give plaintiff the benefit of all reasonable inferences therefrom."). Plaintiffs have clearly alleged that YouTube's technological measures provide users limited access to "stream" copyrighted content, yet prohibit access to "permanent, unrestricted copies of the content on the platform." Proposed Am. Compl. ¶¶ 52-53. Suno circumvented these access controls, thereby accessing Plaintiffs' sound recordings, shorn of YouTube's myriad access restrictions. *See id.* at ¶¶ 52-54. Any further dispute that YouTube's TPMs function to limit access in this fashion is properly explored in discovery and addressed on summary judgment.

### III. CONCLUSION

Plaintiffs' Proposed Amended Complaint easily meets the liberal standard set forth in Federal Rule of Civil Procedure 15. Plaintiffs plausibly allege that YouTube's rolling cipher is a TPM that "effectively controls access" to copyrighted works within the meaning of § 1201(a)(1), and that Suno circumvented this measure. If Suno were correct that § 1201(a) does not apply whenever a work can be publicly viewed to any extent, the statute would fail to protect any work on the internet that is not password-protected or behind a paywall—a result that would flout the statutory text and Congressional intent. To the extent there are factual questions about precisely how YouTube's rolling cipher functions to control access, they will be answered through discovery.

For the foregoing reasons, and those set forth in Plaintiffs' opening papers, Plaintiffs respectfully request that the Court should grant Plaintiffs' motion for leave to amend.

Dated: October 20, 2025
New York, New York

By: /s/ Moez M. Kaba
Moez M. Kaba (*pro hac vice*)
Mariah N. Rivera (*pro hac vice*)
Alexander R. Perry (*pro hac vice*)
Samuel Givertz (*pro hac vice*)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

Christina Von der Ahe Rayburn (*pro hac vice*)
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, California 92660
Telephone: (949) 356-6412
Facsimile: (888) 775-0898
crayburn@hueston.com

Robert N. Klieger (*pro hac vice*)
Rajan S. Trehan (*pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

- 13 -

- 14 -

        Daniel J. Cloherty
        Alexandra Arnold
        **CLOHERTY & STEINBERG LLP**
        One Financial Center, Suite 1120
        Boston, Massachusetts 02110
        Telephone: (617) 481-0160
        Facsimile: (617) 848-0830
        dcloherty@clohertysteinberg.com
        aarnold@clohertysteinberg.com

        *Counsel for Plaintiffs*

- 15 -

## CERTIFICATE OF SERVICE

      I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on October 20, 2025.

_____<br>
Moez M. Kaba<br>
*Counsel for Plaintiffs*