# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, RHINO ENTERTAINMENT LLC, THE ALL BLACKS U.S.A., INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, and WARNER RECORDS INC., <br><br> Plaintiffs, <br><br> v. <br><br> SUNO, INC. and JOHN DOES 1-10, <br><br> Defendant. | Civil Action No. 1:24-cv-11611-FDS |

**DEFENDANT SUNO, INC.'S SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | Plaintiffs Ignore the Statutory Context | 2 |
| | B. | YouTube Is Not a DVD Player | 7 |
| | C. | Plaintiffs Attack a Strawman | 9 |
| III. | CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

*All. of Artists and Recording Cos., Inc. v. Gen. Motors Co.*,
   162 F. Supp. 3d 8 (D.D.C. 2016) ................................................................................................5

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
   381 F.3d 1178 (Fed. Cir. 2004) ..................................................................................................4

*Disney Enters., Inc. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017) ..................................................................................................7, 8

*Dunn v. Commodity Futures Trading Comm'n*,
   519 U.S. 465 (1997) ....................................................................................................................5

*Hattler v. Ashton*,
   No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ...............................................7

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir. 2004) ......................................................................................................3

*Nat'l Assn. of Home Builders v. Defs. of Wildlife*,
   551 U.S. 644 (2007) .................................................................................................................3, 6

*RealNetworks, Inc. v. Streambox, Inc.*,
   No. 2:99-cv-02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ..........................................8

*UMG Recordings, Inc. v. Kurbanov*,
   No. 1:18-cv-957, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021) .................................................6

## STATUTES

17 U.S.C.
   § 1201 ............................................................................................................................1, 4, 8, 9
   § 1201(a)(1)(A) .......................................................................................................................4, 8
   § 1201(a)(3)(A) ...........................................................................................................................3
   § 1201(a)(3)(B) ...................................................................................................................3, 7, 8
   § 1201(b) .............................................................................................................................1, 4, 6

## OTHER AUTHORITIES

Exemption to Prohibition on Circumvention of Copyright Protection Systems for
   Access Control Technologies, 65 Fed. Reg. 64556-01, 2000 WL 1624383
   (Oct. 27, 2000) ...................................................................................................................7, 8, 9

S. Rep. No. 105-190 at 12 (1998) .................................................................................................3, 4

U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of
  Copyrights* at 6 (June 2017) ................................................................................................4, 8

**I.     INTRODUCTION**

In its Opposition to Plaintiffs' motion for leave to amend, Suno argued that Plaintiffs' new claim under section 1201(a) of the Digital Millennium Copyright Act is legally unsound because the "technological measure" that they allege Suno circumvented—YouTube's "rolling cipher"—is a copy control, not an access control. *See* Dkt. No. 131 ("Opp."); *see also* Dkt. No. 126 ("Mot."). That follows directly from Plaintiffs' own allegations, which repeatedly concede that the singular function of the rolling cipher is to "protect against unauthorized ***downloading and copying***." *See, e.g.*, Dkt. No. 134-3 ("Proposed Am. Compl.") ¶ 53 (emphasis added). And because section 1201 does not prohibit the circumvention of copy controls, *see* 17 U.S.C. § 1201(b), Plaintiffs' new claim cannot proceed as a matter of law and their proposed amendment is futile.

Plaintiffs' Reply defends their section 1201(a) claim on purely legal grounds. *See* Dkt. No. 147 ("Reply"). They advance a definition of access controls that would encompass "technological measure[s]" that leave the <u>content</u> of a work freely accessible to anyone, but merely control "*how* users may interact with" the work—including a technological measure that prevents users from "downloading," i.e., copying a work. Reply at 4. But that definition of access controls is broad enough to also cover all copy controls, which can just as easily be characterized as measures that control "*how* users may interact" with a work by (e.g.) allowing someone to view a work but prohibiting them from copying it. That, in turn, would collapse the distinction between these two distinct categories of controls and unwind Congress's careful decision to prohibit circumvention of access controls while permitting circumvention of copy controls.

Plaintiffs, in other words, make the same mistake that the district court made in the *Yout* case: they ignore the statutory context and advance a blinkered interpretation of the phrase "controls access" that would eviscerate the statutory framework that Congress enacted. Suno

raised exactly this point in its recently filed amicus brief in *Yout*.[1] And despite having almost two weeks to review that argument, Plaintiffs' Reply ignores it and walks straight into the same problem.   `

Worse still, Plaintiffs continue to cite the *Yout* district court opinion as persuasive authority. *See* Reply at 5-6. But they fail to mention that the Second Circuit panel that has been reviewing that opinion for the past two years[2] recently granted Suno leave to file its amicus brief out of time and invited the parties to the *Yout* appeal to submit 20-page briefs in response to Suno's brief. *See* Mot. Order in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 124 (2d Cir., Oct. 10, 2025). At minimum, that is a clear signal that the Second Circuit panel believes that Suno's argument—along with the district court's treatment of the statute's access-control provisions—warrants close analysis. This Court should consider that argument in earnest, rather than endorsing the *Yout* district court opinion as authoritative.

## II.    ARGUMENT

### A.    Plaintiffs Ignore the Statutory Context

Plaintiffs do not dispute the key fact that should resolve this motion: as their proposed pleading concedes, the sound recordings they uploaded to YouTube are freely accessible to any member of the public on the YouTube platform without the need for logins, passwords, decryption, or the like. Opp. at 1-2. Nor do Plaintiffs dispute that the video files that Suno allegedly downloaded are the very same video files that YouTube makes available for free public viewing on its player pages. *Id.* at 15-16 (citing Proposed Am. Compl. ¶ 53).

---

[1] *See* Brief for Amici Curiae in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 127 at § B (2d Cir., Oct. 7, 2025).

[2] The Second Circuit heard argument in the *Yout* appeal on February 5, 2024. *See Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 112 (2d Cir., Feb. 5, 2024).

That alone establishes that those files are not protected by an access control. Access controls require some kind of technological barrier that prevents the public from "gain[ing] access to <u>the work</u>" itself without the "authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). A "work," in the context of the Copyright Act, means the expressive content that a copyright protects—such as the text of a book or the sounds captured by a sound recording. *See* Opp. at 16 n.10. A technological measure that leaves the text of a book or the sounds in a sound recording freely accessible to the public (such as the rolling cipher) is not an access control. 17 U.S.C. § 1201(a)(3)(B); *see also* S. Rep. No. 105-190, at 12 (1998) (hereinafter "Senate Judiciary Committee Report") (access controls "limit[] access to the plain text of a work"); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 545 (6th Cir. 2004) (systems that "permit[] users to view or watch a copyrighted work but prevent[] them from downloading a permanent copy of the work" are copy controls, not access controls).

Instead of contesting that key factual premise, Plaintiffs raise a purely legal argument. All parties agree that the statute's definition of access controls includes "technological measure[s]" that prevent the public from viewing, reading, or using a work's content, e.g., by "encrypt[ing]" the content of a book so that it cannot be read, or "scramb[ling]" an audio file so that it cannot be played. 17 U.S.C. § 1201(a)(3)(A). But Plaintiffs contend that the statutory definition of access controls also encompasses technological measures that allow free public access to the content of a work *but* restrict what users can do with that work. *See, e.g.*, Reply at 4–5 (arguing that rolling cipher is an access control because it "controls *how* users may interact with (or access) copyrighted works" (emphasis added)).

That legal argument violates basic rules of statutory interpretation. It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a

3

view to their place in the overall statutory scheme." *Nat'l Assn. of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (citation omitted). The contours of the relevant "statutory scheme" are not in dispute. Plaintiffs, for example, do not dispute two critical points:

1. That section 1201 defines two distinct categories of technological measures, *i.e.*, access controls, *see* 17 U.S.C. § 1201(a), and copy controls, *see id.* § 1201(b); *see also* Senate Judiciary Committee Report at 12 (two provisions "designed to protect two distinct rights and target two distinct classes of devices").

2. That the statute treats these different categories of technological measures differently, *i.e.*, by prohibiting the circumvention of access controls, *see* 17 U.S.C. § 1201(a)(1)(A), while expressly declining to prohibit the circumvention of copy controls, *see id.* § 1201(b). *See also Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1195 (Fed. Cir. 2004) ("Though § 1201(b) parallels the anti-trafficking ban of § 1201(a)(2), there is no narrowly tailored ban on direct circumvention to parallel § 1201(a)(1). This omission was intentional.").

The clear implication of that statutory scheme is that there must be some category of copy controls that can be freely circumvented because they are <u>not</u> also access controls. Plaintiffs' interpretation leaves no room for that category. To the contrary, their interpretation would render every copy control also an access control. Take, for example, a mechanism designed to "prevent[] the copying of an e-book after it has been downloaded to a user's device"—which the Copyright Office described as a paradigmatic copy control.[3] Under Plaintiffs' formulation, that mechanism would also qualify as an access control because it "controls *how* users may interact with" the book

---

[3] U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights* at 6 (June 2017), https://www.copyright.gov/policy/1201/section-1201-full-report.pdf (hereinafter "USCO Report").

4

by (e.g.,) allowing a user to read the book while preventing the user from copying it. Reply at 4–5 (emphasis in original). Or take, for example, a mechanism that permits a user to listen to an audio tape but prevents a user from making a bootleg copy of the tape—another paradigmatic copy control.[4] Under Plaintiffs' formulation, that mechanism would also qualify as an access control because while it does not "bar[] access" to the tape, it nonetheless "regulates the *manner* . . . under which access occurs" by preventing the kind of access that could enable a user to make a copy. Reply at 3.

Put another way: under Plaintiffs' theory, "control[] access to a work" means "control[] the kind of access one might need to make a copy of the work." Reply at 4-5 (claiming that the rolling cipher restricts "offline playback, mobile playback," "ad-free viewing," and "direct downloads," all of which involve downloading, i.e., copying, the work). That rhetorical sleight of hand would collapse the statutory structure by rendering copy controls a mere subset of access controls. *See Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("[L]egislative enactments should not be construed to render their provisions mere surplusage."). And if all copy controls were also access controls, section 1201(a) would necessarily prohibit their circumvention. That would effectively negate Congress's decision to carve out copy controls from the statute's act-of-circumvention prohibition. Plaintiffs, in other words, invite this Court to do through interpretive gamesmanship what they failed to convince Congress to do in the legislative sphere during the 1990s: sanction an effective prohibition on the circumvention of copy controls. *See* Opp. at 6–7 (explaining that the record industry unsuccessfully lobbied for such a prohibition in the lead-up to the DMCA's passage).

---

[4] *See All. of Artists and Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 10–11 (D.D.C. 2016) (describing such a system).

That is not a tenable interpretation of the statute, as Suno already argued over two weeks ago in its recently submitted amicus brief in the *Yout, LLC v. Recording Industry Association of America, Inc.* appeal. *See* Brief for Amici Curiae in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 127 at 14–15 (2d Cir., Oct. 7, 2025) (arguing that under the *Yout* district court's analysis, "any copy control could be interpreted as an access control in some form or another"). Rather than addressing that problem, Plaintiffs ignore it and make the same error that the district court made in *Yout*: they focus exclusively on dictionary definitions of individual words rather than advancing an interpretation that reads those "words . . . in their context and with a view to their place in the overall statutory scheme." *Nat'l Assn. of Home Builders*, 551 U.S. at 666; *compare Yout*, 633 F. Supp. 3d at 664 (focusing on dictionary definitions of "control" and "access" but failing to analyze the statutory scheme as a whole), *with* Reply at 3 (same). In fact, at no point in their Reply do Plaintiffs attempt to harmonize their interpretation with the overall statutory framework.

The other case that Plaintiffs cite concerning YouTube—a magistrate judge's report and recommendation in *UMG Recordings, Inc. v. Kurbanov*, No. 1:18-cv-957, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021)—directly contradicts their position. In that case, the plaintiffs, a number of record labels including Plaintiffs here, accused the defendant of operating a service designed to circumvent YouTube's "[r]olling cipher" to allow users to download "copyrighted audio recordings" from YouTube. *Id.* at *1, *4–5. Notably, however, the *Kurbanov* plaintiffs and the Court proceeded primarily on the theory that the rolling cipher was a copy control, and that the defendant's service violated section 1201(b)'s anti-trafficking provision. *Id.* at *7. At no point did the Court's reasoning suggest that the rolling cipher also qualifies as an access control. In other words, contrary to Plaintiffs' suggestion, *see* Reply at 2, 6, the *Kurbanov* case directly

6

supports Suno's argument: "[t]he 'rolling cipher' . . . is a copy control, not an access control," Opp. at 11–12.[5]

### B. YouTube Is Not a DVD Player

Plaintiffs cite several cases concerning DVDs, including the Ninth Circuit's decision in *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), in support of their contention that the rolling cipher is both an access control and a copy control. *See, e.g.*, Reply at 8. But those cases concern a different suite of "technological measure[s]" that functions differently.

As the Ninth Circuit made clear in *VidAngel*, the encryption typically applied to DVDs—referred to as the "Content Scrambling System" or "CSS"—accomplishes two distinct functions. First, the technological measure "control[s] access to [the] copyrighted content on DVDs" by blocking anyone who does not have a "[DVD] player[] from [a] licensed manufacturer[]" from watching it. *Id.* at 853.[6] This is an access control: it makes it impossible for a user who does not have a DVD player to watch a DVD by (e.g.,) inserting it into her personal computer. *See* 17 U.S.C. § 1201(a)(3)(B) (access controls prohibit "access to the work" unless the user applies a "process or treatment"). Second, CSS protects against unauthorized reproduction of the film on the DVD by limiting the use of the DVD to "playback, not for copying." *VidAngel*, 869 F.3d at 853.[7] This is a copy control: it "protect[s] against unauthorized uses [i.e., copying] of a

---

[5] In this regard, the *Kurbanov* case is consistent with the court's decision in *Hattler v. Ashton*, No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), where the Court held that a technological measure that permitted free public streaming of videos but prohibited downloads was a copy control, not an access control. *See id.* at *5–8; *see also* Opp. at 15 (discussing *Hattler*). Plaintiffs brush off *Hattler*, claiming that it "involved only conclusory allegations," *see* Reply at 9 n.6, but do not point to any substantive differences between their factual allegations and those at issue in *Hattler*.

[6] *See* Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 65 Fed. Reg. 64556-01, 64568, 2000 WL 1624383 (Oct. 27, 2000) (hereinafter "USCO 2000 Rulemaking") ("DVDs with CSS may be viewed only on equipment licensed by [DVD CCA].").

[7] *See* USCO 2000 Rulemaking at 64568 ("The terms of the DVD CCA license permits licensed devices to decrypt and play—but not to copy—the films.").

7

copyrighted work once access has been lawfully obtained." USCO Report at 2. The distinction between these two functions is critical. As the Copyright Office explained shortly after the DMCA's passage, a person who circumvents the "copy control aspects of CSS . . . without circumventing its access controls" is not liable under section 1201 because that provision of law does not prohibit circumvention of copy controls. *See* USCO 2000 Rulemaking at 64568.

That is why the *VidAngel* Court held that CSS is "both an access control and a use control"—because it both blocks those without licensed DVD players from viewing the content of the works on the DVDs, and prevents the unauthorized copying of those works. *VidAngel*, 869 F.3d at 864; *see also RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-cv-02070, 2000 WL 127311, at *7 (W.D. Wash. Jan. 18, 2000) (discussing a similar mechanism that both protects "access to a work" by requiring a "Secret Handshake" to view it, and separately protects against "unauthorized copying of [a] work" by using a "Copy Switch" to prevent a user from "record[ing] a copy as the file is streamed"). It is also why the Court held that VidAngel had violated section 1201(a)(1)(A): because VidAngel had used a software program—rather than a licensed DVD player—to access the content of the films on DVDs. *VidAngel*, 869 F.3d at 853, 864-65.

Critically, *VidAngel*'s reasoning relied on the fact that the technology applied to DVDs actually prohibits access: the content of a film stored on a DVD is "encrypt[ed]" so that one cannot "gain access to" it without a licensed DVD player that can decrypt the file. *Id.* at 853; 17 U.S.C. § 1201(a)(3)(B). By contrast, Plaintiffs' proposed pleading concedes that the content of the videos Plaintiffs uploaded to YouTube can be accessed by anyone. Proposed Am. Compl. ¶ 52. They are not encrypted, nor does a user need to log in or use a password to view them. To the contrary, the only "technological measure" at issue here is the "rolling cipher," which Plaintiffs' pleading repeatedly concedes exists for a different function: to protect against "unauthorized downloading

and copying" of the videos. *Id.* ¶ 53; *see also id.* ¶ 57. That is analogous to the "copy control aspects of CSS," which the public can freely circumvent without section 1201 liability. *See* USCO 2000 Rulemaking at 64568.

### C. Plaintiffs Attack a Strawman

Plaintiffs also mischaracterize Suno's argument. Suno's argument is not, as they claim, based on the contention that Suno's "*purpose* . . . was to download (and thus copy) Plaintiffs' copyrighted sound recordings for use in training AI." Reply at 7 (emphasis in original); *see also id.* at 8 ("Suno cites no case holding that a TPM controlling access loses that status when circumvention facilitates coping."). To the contrary, Suno's argument is that the "technological measure" that Plaintiffs describe in their Proposed Amended Complaint is plainly a copy control, not an access control. Opp. at 12–13. In the words of that proposed pleading, the "rolling cipher" exists to prevent users from "downloading" or "making permanent, unrestricted copies" of YouTube videos. Proposed Am. Compl. ¶¶ 52–54, 57. That is the textbook definition of a ***copy*** control. And because Plaintiffs' amended pleading also concedes that the sound recordings they uploaded to YouTube are freely accessible to any member of the public, *see id.* ¶ 52, they have conceded that the "rolling cipher" is not an access control.

### III. CONCLUSION

For the reasons identified above, Count Three of Plaintiffs' Proposed Amended Complaint fails to state a cognizable cause of action. This Court should therefore deny their motion for leave to amend as futile.

| | |
|---|---|
| Dated: October 24, 2025 | Respectfully submitted,<br><br>*/s/ Andrew M.Gass*<br>Andrew M. Gass (*pro hac vice*)<br>Brittany N. Lovejoy (*pro hac vice*)<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111-6538<br>Telephone: (415) 391-0600<br>Facsimile: (415) 395-8095<br>andrew.gass@lw.com<br>brittany.lovejoy@lw.com<br><br>Sarang V. Damle (*pro hac vice*)<br>LATHAM & WATKINS LLP<br>555 Eleventh Street NW<br>Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br>Facsimile: (202) 637-2201<br>sy.damle@lw.com<br><br>Shlomo Fellig (BBO# 699643)<br>LATHAM & WATKINS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>Telephone: (617) 948-6000<br>Facsimile: (617) 948-6001<br>shlomo.fellig@lw.com<br><br>*Counsel for Defendant Suno, Inc.* |

10

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent October 24, 2025, to those identified as non-registered participants.

*/s/ Andrew M. Gass*
Andrew M. Gass