# EXHIBIT 1

2026 WL 184598
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Christopher J. CORDOVA, Plaintiff,
v.
Jonathan HUNEAULT, et al., Defendants.

Case No. 25-cv-04685-VKD
|
Signed January 23, 2026

**Synopsis**
**Background:** Operator of channel on video-sharing website brought action against owners of another channel, alleging copyright infringement of two copyrighted videos, misrepresentation in Digital Millennium Copyright Act (DMCA) counternotices, that owners' use of particular video did not qualify as fair use, and unlawful circumvention of technological measures and seeking damages, injunctive relief, declaratory relief, and attorneys' fees and costs. Owners moved to dismiss second, third, and fourth claims for failure to state claim.

**Holdings:** The District Court, Virginia K. DeMarchi, United States Magistrate Judge, held that:

incorporation by reference doctrine did not permit District Court to consider declaration and exhibits;

operator's allegations were sufficient to state claim for misrepresentation;

operator could not assert claim for copyright infringement against owners as to video at issue;

operator had statutory standing to bring claim alleging violation of statute that prohibited circumvention of any technological measure that effectively controlled access to protected work;

operator adequately pleaded that website applied technological measures to videos published on its platform that effectively controlled access to its videos; and

operator plausibly alleged that owners circumvented website's technological measures in order to download operator's videos.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim.

**Attorneys and Law Firms**

Randall Scott Newman, Randall S. Newman, Esq., New York, NY, for Plaintiff.

Steven C. Vondran, The Law Offices of Steven C. Vondran, PC, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HUNEAULT'S AND 14693663 CANADA INC.'S MOTION TO DISMISS CLAIMS 2, 3, AND 4**

Re: Dkt. No. 43

Virginia K. DeMarchi, United States Magistrate Judge

\*1 Plaintiff Christopher J. Cordova brings this action, asserting four claims against defendants Jonathan Huneault, Nneka Ohiri, and 14693663 Canada Inc. ("Canada Inc."). Dkt. No. 39. Defendants Mr. Huneault and Canada Inc. move to dismiss claims 2, 3, and 4 of the operative complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 43. Mr. Cordova opposes the motion. Dkt. No. 46. The motion is deemed suitable for determination without oral argument.[1] Civil L.R. 7-1(b).

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 34, 56.

Upon consideration of the moving and responding papers, the Court grants in part and denies in part the motion to dismiss.

**I. BACKGROUND**

  **A. Procedural History**
Mr. Cordova initiated this action against Mr. Huneault on June 3, 2025. Dkt. No. 1. On August 30, 2025, Mr. Cordova filed an amended complaint, adding Ms. Ohiri as a defendant.

Dkt. No. 20. On November 3, 2025, Mr. Cordova filed the operative complaint, titled "first amended complaint," adding Canada Inc. as a defendant.[2] Dkt. No. 39.

[2]  Technically, the operative complaint is Mr. Cordova's "second" amended complaint. *See* Dkt. No. 39 at 2 n.1. However, to avoid confusion, the Court refers to it as the "first amended complaint," consistent with its title and the parties' briefing.

On November 24, 2025, Mr. Huneault and Canada Inc. moved to dismiss claims 2, 3, and 4 of the first amended complaint (FAC).[3] Dkt. No. 43-1. Ms. Ohiri did not join the motion or otherwise respond to the FAC. On December 15, 2025, Mr. Cordova filed a motion for entry of default by the Clerk against Ms. Ohiri. Dkt. No. 47. On December 22, 2025, the parties jointly submitted a stipulation seeking to "set aside entry of default" and agreeing that Ms. Ohiri would file an answer to the FAC. Dkt. No. 52. As the Clerk had not entered default against Ms. Ohiri, the Court "construe[d] the parties' stipulated request as an indication that they agree plaintiff's motion for entry of default should be withdrawn," and deemed the motion for entry of default withdrawn. Dkt. No. 53. Pursuant to the parties' stipulation, the Court directed Ms. Ohiri to file an answer to the FAC by January 6, 2026. *Id.*

[3]  Defendants Mr. Huneault and Canada Inc. purport to "incorporate[ ] ... by reference" Mr. Huneault's October 13, 2025 motion to dismiss (Dkt. No. 29), which has since been withdrawn. Dkt. No. 36 at 2. This is improper. *See* Civil L.R. 7-2(b) ("In one filed document not exceeding 25 pages in length, a motion must contain ... the points and authorities in support of the motion ...."). The Court does not consider the withdrawn motion.

On January 6, 2026, while this motion was under submission, all defendants, including Mr. Huneault and Canada Inc., filed an answer to the FAC. Dkt. No. 57. Defendants subsequently advised that they do not withdraw Mr. Huneault's and Canada Inc.'s motion to dismiss. *See* Dkt. Nos. 59, 60.

### B. Mr. Cordova's Claims

According to the FAC, Mr. Cordova owns, operates, and creates content for a YouTube channel called "Denver Metro Audits." Dkt. No. 39 ¶ 17. Mr. Huneault and Ms. Ohiri own and operate the YouTube channel "Frauditor Troll Channel." *Id.* ¶¶ 19, 20. Canada Inc. is a Canadian corporation owned and controlled by Mr. Huneault and Ms. Ohiri that acts as a co-owner or operating entity of the Frauditor Troll Channel. *Id.* ¶ 21.

**\*2** According to the FAC, Mr. Cordova is the owner of copyrights in three videos at issue in this action. On March 16, 2022, Mr. Cordova published a video titled *Another Chad Exposed!!! Worthless Denver Cops ... Assaulted!!!* ("*Another Chad*") on his YouTube channel. *Id.* ¶ 41. He obtained a copyright registration for *Another Chad* on February 6, 2024. *Id.* ¶ 42. On October 1, 2023, Mr. Cordova published another video titled *Angry Mob at Belmar Library!!! "Call 911!" Cops don't show up* ("*Belmar Library*") on his YouTube channel. *Id.* ¶ 43. He obtained a copyright registration for *Belmar Library* on June 3, 2025. *Id.* ¶ 44. On February 3, 2022, Mr. Cordova published another video titled "*Federal Courthouse Fail!!! Threatened with arrest for recording and not one officer identifies!* ("*Courthouse Fail*"). *Id.* ¶ 45. He has not obtained a copyright registration for *Courthouse Fail*. *Id.* ¶ 45 n.6.

The FAC alleges that between February 2022 and October 2023, defendants published on YouTube several videos containing content originally published by Mr. Cordova, including three videos incorporating significant portions of *Another Chad*, *Belmar Library*, and *Courthouse Fail*, without Mr. Cordova's authorization. *Id.* ¶¶ 46-54. In addition, Mr. Cordova alleges, on information and belief, that defendants used various techniques to circumvent YouTube's technological measures, which are designed to prevent unauthorized copying or downloading of videos, to obtain copies of Mr. Cordova's videos from his YouTube channel. *See id.* ¶¶ 35-40.

In June 2023 and October 2023, Mr. Cordova submitted twelve Digital Millennium Copyright Act (DMCA) takedown notices to YouTube requesting removal of defendants' videos. *Id.* ¶ 58. YouTube removed eleven of the challenged videos. *Id.* ¶ 60. Thereafter, defendants submitted DMCA counter-notices to YouTube, pursuant to [17 U.S.C. § 512(g)(3)](#), seeking reinstatement of nine of the eleven videos. *Id.* Mr. Cordova alleges that the counter-notices contained "substantially identical boilerplate language and multiple false statements," including that Mr. Huneault was the "original creator" of the videos, that the videos were protected by the fair use doctrine and "were taken down by mistake because they fall under the Fair use act," and that Mr. Huneault had already retained counsel "to defend my fair use videos in court." *Id.* ¶¶ 59, 61. In addition, all of defendants' counter-notices contained the same fictitious service address in New York, New York. *Id.* ¶ 62. According to the FAC,

YouTube reinstated all nine videos, "relying on Huneault's misrepresentations regarding fair use." *Id.* ¶ 64.

Mr. Cordova asserts four claims against all three defendants: (1) copyright infringement of two copyrighted videos, *Another Chad* and *Belmar Library*, in violation of 17 U.S.C. § 501; (2) misrepresentation in DMCA counter-notices, in violation of 17 U.S.C. § 512(f); (3) a declaration that defendants' use of the *Courthouse Fail* video does not qualify as fair use under 17 U.S.C. § 107; and (4) unlawful circumvention of technological measures, in violation of 17 U.S.C. § 1201(a). *Id.* ¶¶ 85-123. Mr. Cordova seeks damages, injunctive relief, declaratory relief, and attorneys' fees and costs. *Id.* at 24-25.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

 **\*3** However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). Moreover, the Court is not required to " 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' " *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at \*3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678, 129 S.Ct. 1937. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

### B. Judicial Notice / Incorporation by Reference

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" without converting the motion to a motion for summary judgment. *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at \*3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

## III. DISCUSSION

Defendants[4] move pursuant to Rule 12(b)(6) to dismiss claims 2, 3, and 4 of the FAC for failure to state a claim. Dkt. No. 43-1. They ask the Court to consider a declaration and other materials filed with their motion. *Id.* at 2-3; Dkt. No. 43-2.

[4] For simplicity, the Court refers to the moving defendants, Mr. Huneault and Canada Inc., as "defendants," but in so doing does not include Ms. Ohiri, who has not joined the motion.

### A. Request for Consideration of Matters Outside the Pleading

Defendants ask the Court to consider a declaration by Mr. Huneault and four exhibits in support of their motion to dismiss. Dkt. No. 43-1 at 2-3; Dkt. No. 43-2. The exhibits

purport to be: (1) a partial transcript of a YouTube video titled "*DMA and AFA do Prank Calls like Children*," uploaded to the Frauditor Troll Channel on July 24, 2022; (2) a list of fifteen channels that the audience of the Frauditor Troll Channel watches the most; (3) a document with various individuals' information, including police badge numbers, phone numbers, and email addresses; and (4) an October 1, 2022 email exchange between defendants and a YouTube viewer. Dkt. Nos. 43-3, 43-4, 43-5, 43-6. Mr. Cordova argues that Mr. Huneault's declaration and the accompanying exhibits may not be considered on a Rule 12(b)(6) motion because those documents "are not attached to the FAC, not incorporated by reference, and not proper subjects of judicial notice." Dkt. No. 46 at 7. Defendants respond that they do not ask the Court to take judicial notice of these documents; rather, they argue that the Court may properly consider these documents under the incorporation by reference doctrine. *See* Dkt. No. 54 at 3-4.

**\*4** A document may be deemed incorporated by reference, and therefore part of the complaint, "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). However, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Ritchie*, 342 F.3d at 908-09).

Defendants argue that the Court may consider the declaration and four exhibits because Mr. Cordova "incorporated [the DMCA] counternotices by their continual reference into the complaint." Dkt. No. 54 at 3. Defendants' argument misapprehends the incorporation by reference doctrine. Although that doctrine might warrant consideration of *the DMCA counter-notices* referenced in the FAC, defendants do not ask the Court to consider those counter-notices. None of the exhibits defendants ask the Court to consider form the basis of *Mr. Cordova's claims* or are referenced extensively in the FAC. The Court therefore declines to consider these materials. *See Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.").

### B. Claim 2: Misrepresentation in DMCA Counter-Notices

Mr. Cordova asserts a claim for misrepresentation in the DMCA counter-notices defendants filed, in violation of 17 U.S.C. § 512(f)(2). Dkt. No. 39 ¶¶ 94-106. Section 512(f) contemplates liability for abuse of the notice and takedown procedures in the DMCA. 17 U.S.C. § 512(f); *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016). Section 512(f)(2) applies when an accused infringer knowingly misrepresents in a counter-notice that the accused material was removed or disabled by mistake or misidentification. *See Lenz*, 815 F.3d at 1151.

Mr. Cordova asserts a claim against defendants for violation of § 512(f)(2), alleging that defendants' counter-notices falsely asserted that the videos were removed by mistake because they are protected by the fair use doctrine and therefore non-infringing. Dkt. No. 39 ¶¶ 56-63, 96-104; *see also* Dkt. No. 46 at 10. To state a claim for misrepresentation under 17 U.S.C. § 512(f)(2), a plaintiff must allege facts plausibly showing (1) that the defendant knowingly and materially misrepresented that its accused material was removed or disabled by mistake or misidentification; (2) the internet service provider relied on the misrepresentation in replacing the removed material or ceasing to disable access to it; and (3) the plaintiff was injured as a result. *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015). Whether a misrepresentation was made "knowingly" is assessed against a subjective standard; it requires a showing that the defendant had "some actual knowledge" of the misrepresentation and did not possess a good faith belief that the material was removed by mistake or misidentification. *See Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017) (same subjective standard that applies to takedown notices also applies to counter-notices).

**\*5** Defendants move to dismiss claim 2 on the ground that the FAC contains "no allegations showing that Defendant[sic] subjectively believed his use [of Mr. Cordova's videos] was unlawful or that he knowingly issued a false counter-notification."[5] Dkt. No. 43-1 at 6. Defendants do not challenge Mr. Cordova's pleading as to the other elements of his § 512(f)(2) claim.

---

[5] The Court does not consider defendants' belated challenges to other misrepresentations in the FAC (*i.e.*, that defendants had hired legal counsel and included a false address in the counter-notices) because defendants' arguments in support of dismissal as to these alleged

misrepresentations were made for the first time in their reply brief. *See* Dkt. No. 54 at 4-6; *see, e.g., Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). In any event, Mr. Cordova explains in his opposition that these other alleged misrepresentations "are not themselves the misrepresentation that triggers § 512(f) liability, but they are relevant to whether Defendants approached the Counter-Notice process with any regard for truth or accuracy." Dkt. No. 46 at 11.

To the extent defendants ask the Court to find as a matter of law that defendants' use of content from Mr. Cordova's videos in their own videos posted on the Frauditor Troll Channel constitutes "fair use" of that content, *see* Dkt. No. 43-1 at 2-3, the Court denies the motion on this point, as such a determination would require the Court to resolve disputed questions of fact. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (fair use is "a mixed question of law and fact" that "requires a case-by-case determination whether a particular use is fair"); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (fair use is "a mixed question of law and fact"); *Stebbins v. Polano*, No. 21-cv-04184-JSC, 2021 WL 2682339, at *3 (N.D. Cal. June 30, 2021) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008)) (fair use is "[t]ypically considered at the summary judgment stage" and may only be considered on a motion to dismiss "where no material facts are in dispute"). The Court will address only whether Mr. Cordova has pled factual allegations that plausibly support his claim that defendants "knowingly" misrepresented that their videos were removed by mistake because they are protected by the fair use doctrine.

Defendants argue that Mr. Cordova must plead facts showing that defendants "actually knew" their use of content from Mr. Cordova's videos was unlawful. Dkt. No. 43-1 at 7. In response, Mr. Cordova points to allegations in the FAC that he contends show that defendants knew their videos were not protected by the fair use doctrine and that their contrary representations to YouTube in their counter-notices were not made in good faith. Dkt. No. 46 at 10-11. The Court has carefully examined the allegations in the FAC and agrees that Mr. Cordova has adequately alleged facts from which a reasonable inference may be drawn that defendants' "fair use" representations were false and made in bad faith.

According to the FAC, in May 2022, defendants published a video on the Frauditor Troll Channel titled "*How to do Fair Use Properly and Avoid Copyright Strikes.*" Dkt. No. 39 ¶ 55. Mr. Cordova alleges that in that video, Mr. Huneault instructs viewers on how to make commentary videos that are "100% safe fair use." *Id.* ¶ 56. The instructions include inserting commentary "about 40 seconds to every minute [of the original video]," using lengthy introductions and conclusions, interspersing other clips to "increase the proportion of time that is something else than one specific video," and using "less than fifty percent of a specific video." *Id.* Mr. Huneault further advises his viewers that one is "unlikely to get a copyright strike," if he or she "only us[es] 30% of someone's video." *Id.* Mr. Cordova alleges that, in contrast to this advice, defendants' videos reproduced approximately 54% of *Another Chad*; 62% of *Courthouse Fail*; and 81% of *Belmar Library*. *Id.* ¶¶ 48, 50, 54. Thus, regardless of whether Mr. Huneault's advice to others reflects an accurate understanding of the fair use doctrine, Mr. Cordova contends that these allegations indicate defendants lacked a good faith belief that their videos (all of which use more than 50% of each original video) are entitled to protection and were removed by mistake. *See id.* ¶¶ 57, 97 n.13; *see also* Dkt. No. 46 at 10-11.

**\*6** In addition, the FAC alleges that on July 5, 2023, the same day defendants submitted eight of the nine counter-notices at issue, Mr. Huneault emailed Mr. Cordova, claiming he had "talked to a lawyer" and demanding payment of $9,000. Dkt. No. 39 ¶ 67. Mr. Huneault also stated: "You already know the videos will be reinstated in 3 weeks through the counter notifications system." *Id.* In a separate email on the same date, Mr. Huneault allegedly warned Mr. Cordova that "[i]f I counter every strike and they all get reinstated eventually it could penalize your channel." *Id.* ¶ 66. The FAC also alleges that on July 6, 2023, Mr. Huneault posted a video discussing Mr. Cordova's takedown notices and defendants' counter-notices, in which he stated: "I already filed the counter notifications ... [Plaintiff] has 10 days to reply ... then it gets reinstated ... I beat 35 copyright strikes." *Id.* ¶ 69. Mr. Cordova argues and alleges that these statements, coupled with defendants' misrepresentations about their service address and retention of counsel, show that defendants viewed the DMCA counter-notice procedure as a mere tactic to obtain automatic reinstatement of the accused videos, knowing that false assertions of "fair use" would likely go unchallenged, due to the burden and expense of litigation. *Id.* ¶¶ 68, 71, 97, 104; Dkt. No. 46 at 11-12.

Drawing all reasonable inferences in Mr. Cordova's favor, the Court concludes that the allegations in the FAC are sufficient to state a claim of misrepresentation in violation of 17 U.S.C. § 512(f)(2) with respect to defendants' nine DMCA counter-notices. *See Shropshire v. Canning*, 809 F. Supp. 2d 1139,

1148 (N.D. Cal. 2011) (denying motion to dismiss § 512(f)(2) claim where copyright owner made specific and plausible allegations that accused infringer did not have a good faith belief for statement in DMCA counter-notice, based in part on communications between copyright owner and accused infringer); *Shande v. Zoox, Inc.*, No. 22-cv-05821-BLF, 2024 WL 2306284, at *4 (N.D. Cal. May 21, 2024) (denying motion to dismiss § 512(f)(1) claim where accused infringer alleged, among other things, contemporaneous comments of high-ranking company officials suggesting company did not believe accused material was infringing).

The authority on which defendants rely does not support a contrary conclusion. As Mr. Cordova observes, all of defendants' cases addressed questions of fair use and/or knowing misrepresentation on *summary judgment*, not at the pleading stage. See *Rossi*, 391 F.3d at 1002 ("We review a district court's grant of summary judgment *de novo*."); *Lenz*, 815 F.3d at 1150 (same); *Hosseinzadeh*, 276 F. Supp. 3d at 39 ("Before the Court are dueling motions for summary judgment.").[6] Indeed, in *Lenz*, the Ninth Circuit held that, in that case, "a *jury* must determine whether [defendant's] actions were sufficient to form a subjective good faith belief about the video's fair use or lack thereof." *Lenz*, 815 F.3d at 1154 (emphasis added); *see also id.* n.3 ("[T]he question is whether the analysis [defendant] did conduct of the video was sufficient ... to form a subjective good faith belief that the video was infringing ... *that question is for the jury, not this court to decide.*") (emphasis added).[7]

---

[6] Defendants misrepresent *Hosseinzadeh* as a decision on a motion to dismiss at the pleading stage. *See* Dkt. No. 43-1 at 6-7. It is not. Nor was the district court's decision affirmed on appeal, as defendants contend. *See id.* In their reply, defendants continue to refer to a "Second Circuit" decision cited and described as "*Hosseinzadeh v. Klein*, 900 F.3d 39, 50-51 [sic] (finding fair use as a matter of law)." Dkt. No. 54 at 9. The Court can locate no such decision. Defendants say that the mischaracterization of *Hosseinzadeh* and its appellate history in their opening motion was a "simple mistake," *id.* at 9, but they do not explain why they *repeat the same mistake in their reply.*

[7] To the extent defendants suggest that Mr. Cordova may not assert a claim for violation of § 512(f)(2) because he had not obtained copyright registrations for any of the videos corresponding to the counter-notices at the time the counter-notices were submitted to YouTube, *see* Dkt. No. 43-1 at 7, defendants cite no authority for this

proposition, and it is inconsistent with the plain language of the statute.

*7 Accordingly, the Court denies defendants' motion to dismiss claim 2.

### C. Claim 3: Declaratory Relief

The FAC asserts a claim for "declaratory relief" with respect to Mr. Cordova's unregistered video *Courthouse Fail*. Dkt. No. 39 ¶¶ 107-112. "Plaintiff seeks a judicial declaration that [d]efendants' use of *Courthouse Fail* does not qualify as fair use under 17 U.S.C. § 107 and an injunction requiring YouTube to remove the video from its platform and prevent its re-upload." *Id.* ¶ 112. Defendants move to dismiss this claim on the ground that Mr. Cordova seeks declaratory judgment "for the sole purposes of seeking attorney fees, where it cannot [do] so due to its untimely copyright registration mandating dismissal with prejudice." Dkt. No. 43-1 at 8. Mr. Cordova responds that there is a "concrete, ongoing controversy" that can be addressed, under the authority of the Declaratory Judgment Act, 28 U.S.C. § 2201, because defendants' allegedly infringing video remains on the Frauditor Troll Channel. Dkt. No. 46 at 14.

"The Declaratory Judgment Act does not provide a cause of action when a party ... lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).[8] " '[D]eclaratory relief is not an independent cause of action'—only a remedy." *See, e.g., Fish v. Aviation*, No. 18-cv-06671-VKD, 2019 WL 690286, at *6 (N.D. Cal. Feb. 19, 2019) (quoting *VIA Techs., Inc. v. SONICBlue Claims LLC*, No. 09-cv-02109-PJH, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010)); *see also Spangler v. Selene Fin. LP*, No. 16-cv-05103-WHO, 2016 WL 5681311, at *7 (N.D. Cal. Oct. 3, 2016) (dismissing claim for declaratory judgment because declaratory relief is not an independent cause of action and plaintiff's complaint otherwise failed to state a claim under which any relief could be granted).

---

[8] As the *City of Reno* court observed, "[a] plaintiff's inability to rely on the Declaratory Judgment Act to obtain affirmative relief where no cause of action otherwise exists contrasts with the well-established availability of the Act for defensive use against anticipated claims." *City of Reno*, 52 F.4th at 879. Here, claim 3 seeks affirmative relief against defendants.

Mr. Cordova concedes he does not hold a registered copyright for *Courthouse Fail, see* Dkt. No. 39 ¶ 45 n.6; Dkt. No.

46 at 5 n.1, and therefore he cannot assert a claim for copyright infringement against defendants as to that work. *See* 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301, 139 S.Ct. 881, 203 L.Ed.2d 147 (2019).[9] It appears that Mr. Cordova attempts to avoid the registration requirement by framing his claim with respect to *Courthouse Fail* as a claim for declaratory relief, rather than a claim for copyright infringement. *Compare* Dkt. No. 39 ¶¶ 85-93 (claim for copyright infringement of *Another Chad* and *Belmar Library*) *with id.* ¶¶ 107-112 (claim for declaratory relief in connection with *Courthouse Fail*). He cites no authority that would support such a claim in the circumstances alleged in the FAC. As Mr. Cordova elsewhere observes, fair use is an affirmative defense to a claim of copyright infringement. *See* Dkt. No. 46 at 9. The Declaratory Judgment Act generally may not be invoked to anticipate an affirmative defense. *See, e.g., Divino Grp. LLC v. Google LLC*, No. 19-cv-04749-VKD, 2021 WL 51715, at *11 (N.D. Cal. Jan. 6, 2021) ("Dismissal of a declaratory relief claim intended to anticipate an affirmative defense is appropriate, particularly where, as here, the Court need not consider the affirmative defense in order to resolve defendants' motion to dismiss plaintiffs' other claims.").

[9] The statute includes some limited exceptions to the registration requirement for live broadcasts and works preregistered with the Copyright Office before distribution. *See Fourth Est.*, 586 U.S. at 301, 139 S.Ct. 881; 17 U.S.C. §§ 408(f), 411(c). However, there is no indication that these exceptions apply here.

**\*8** The Court finds that Mr. Cordova has not stated any claim for which he might be entitled to the declaratory relief sought in claim 3 with respect to the *Courthouse Fail* video. Accordingly, the Court grants defendants' motion to dismiss claim 3.

### D. Claim 4: Circumvention of Technological Measures

Mr. Cordova asserts a claim for unlawful circumvention of technological measures, in violation of 17 U.S.C. § 1201(a)(1). Dkt. No. 39 ¶¶ 113-123. Defendants argue that the claim should be dismissed on two grounds: (1) lack of standing and (2) failure to adequately allege that defendants circumvented any technological measure. Dkt. No. 43-1 at 8-10.

Section 1201(a)(1) prohibits the circumvention of any technological measure that "effectively controls access to" a protected work. 17 U.S.C. § 1201(a)(1)(A); *see MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 943-44 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). To state a claim for violation of § 1201(a), a plaintiff must plausibly allege that "(i) the work at issue was protected under the Copyright Act, (ii) the copyrighted work was protected by a 'technological measure,' and (iii) the technological measure was 'circumvented' in order to obtain access to the copyrighted work." *CDK Glob., LLC v. Tekion Corp.*, No. 25-cv-01394-JSC, 2025 WL 1939951, at *8 (N.D. Cal. July 15, 2025) (quoting *iSpot.tv, Inc. v. Teyfukova*, No. 21-cv-06815-MEMF(MARX), 2023 WL 3602806, at *4 (C.D. Cal. May 22, 2023)).

The Court first considers defendants' argument that Mr. Cordova lacks statutory standing to bring a § 1201(a) claim.[10] This argument lacks merit, as the DMCA permits "[a]ny person injured by a violation of section 1201 ... [to] bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a); *see also Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1031 (N.D. Cal. 2025) (noting that district courts "within the Ninth Circuit have concluded that 'any person injured by a violation of section 1201 ...' may bring an action for such violation, even where that person was not the copyright owner or holder."). Defendants cite no authority to the contrary. Because Mr. Cordova alleges injury based on defendants' alleged circumvention of technological measures protecting his copyrighted works, he has plausibly alleged statutory standing.

[10] The Court addresses a motion to dismiss for lack of statutory standing under Rule 12(b)(6). *See ChowNow, Inc. v. Owner.com*, No. 25-cv-07315-VKD, 2026 WL 125612, at *5 (N.D. Cal. Jan. 16, 2026).

The Court next considers whether Mr. Cordova has adequately pled a claim for violation of § 1201(a)(1). Defendants argue that the FAC does not plausibly allege that the videos at issue were protected by a "technological measure" when published on Mr. Cordova's YouTube channel, or that defendants "circumvented" any such measure in order to obtain access to the videos. Dkt. No. 43-1 at 9-10. Defendants' argument is not well-taken, as it ignores the allegations of the FAC.

#### 1. Technological measures

The DMCA defines a "technological measure that effectively controls access to a work" as a measure that, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). According to the FAC, YouTube "automatically applie[s]" technological measures to published videos "that control access to and prevent unauthorized copying or downloading" of Mr. Cordova's videos. Dkt. No. 39 ¶ 116. The FAC alleges that YouTube's technological measures include "rolling-cipher technology," which is "software designed to prevent unauthorized downloading" of videos. *Id.* ¶ 4. This technology "encrypts and dynamically alters the video stream's URL signatures to prevent unauthorized downloads." *Id.* ¶ 35.

**\*9** Citing *MDY Industries*, defendants argue that Mr. Cordova's claim fails and YouTube's technological measures do not "effectively control access" because Mr. Cordova's videos are "publicly available" on YouTube. Dkt. No. 43-1 at 9-10. Defendants misread *MDY Industries*. As the Ninth Circuit explained in that decision:

> The statutory definition of the phrase "effectively control access to a work" does not require that an access control measure be strong or circumvention-proof. Rather, it requires an access control measure to provide some degree of control over access to a copyrighted work. As one district court has observed, if the word "effectively" were read to mean that the statute protects "only successful or efficacious technological means of controlling access," it would "gut" DMCA § 1201(a)(2), because it would "limit the application of the statute to access control measures that thwart circumvention, but withhold protection for those measures that can be circumvented."

*MDY Indus.*, 629 F.3d at 954 n.17 (quoting *Universal City Studios v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000)).

Mr. Cordova has adequately pled that YouTube applies technological measures, including "rolling-cipher technology" designed to prevent unauthorized downloading, to videos published on its platform that effectively control access to his videos for purposes of § 1201(a). Whether the videos may be viewed by the public is immaterial; the FAC refers to technological measures intended to prevent unauthorized downloading. As other courts have concluded, allegations similar to those in the FAC, identifying measures that restrict access to downloadable files, are sufficient for purposes of the second element of a § 1201(a)(1) claim. *See Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 665, 670 (D. Conn. 2022) (finding allegations that YouTube's technological protection measures "control access to downloadable files" sufficient at pleading stage); *Edland v. Basin Elec. Power Coop.*, No. 21-cv-04008-KES, 2021 WL 3080225, at \*6 (D.S.D. July 21, 2021) (denying dismissal of § 1201(a)(1)(A) claim where plaintiff plausibly alleged that "YouTube has 'many [technological protection measures] to prevent unauthorized copying, recording, and distribution of video content' "); *UMG Recordings, Inc. v. Kurbanov*, No. 18-cv-957-CMH TCB, 2021 WL 6492907, at \*4, 7 (E.D. Va. Dec. 16, 2021) (finding plaintiff sufficiently alleged § 1201(b) claim where plaintiff alleged YouTube's technological protection measures included "rolling cipher" protections), *report and recommendation adopted*, No. 18-cv-957, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022).

### 2. Circumvention

The DMCA provides that "to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). According to the FAC, defendants circumvented YouTube's technological measures by using "software applications, ripping utilities, or browser extensions specifically designed to bypass" YouTube's technological measures. Dkt. No. 39 ¶¶ 36, 117. Mr. Cordova alleges that defendants' tools "retrieve and decrypt the obfuscated streaming URLs, enabling [d]efendants to make local copies of [p]laintiff's videos." *Id.* ¶ 36.

**\*10** Defendants argue that the FAC relies on conclusory allegations and describes nothing more than defendants' "downloading" or "screen-recording" a publicly available video. Dkt. No. 43-1 at 10; Dkt. No. 54 at 7. Defendants also fault Mr. Cordova for failing to allege "what tools were used, [and] when such [tools were] used." Dkt. No. 54 at 7.

Defendants mischaracterize the allegations in the FAC. Moreover, defendants cite no support for their apparent contention that a plaintiff must identify in his complaint the specific tools used to circumvent the technological measures, or a date on which those tools were used, in order to survive a motion to dismiss. As noted above, the Court does not consider and weigh defendants' opposing evidence when addressing a Rule 12(b)(6) motion to dismiss.

Drawing all reasonable inferences in Mr. Cordova's favor, the Court concludes that the FAC plausibly alleges that defendants circumvented YouTube's technological measures using the described techniques in order to download his videos, and therefore adequately pleads the third element of the § 1201(a)(1) claim.

Accordingly, defendants' motion to dismiss claim 4 is denied.

### IV. CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part defendants' motion to dismiss the FAC as follows:

(1) the motion to dismiss claims 2 and 4 is denied;

(2) the motion to dismiss claim 3 is granted.

As defendants have already answered the FAC (Dkt. No. 57), no further response to that pleading is required.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2026 WL 184598

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.