# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>    Defendant. | Civil Action No. 1:24-cv-11611-FDS |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTION TO THE MAGISTRATE JUDGE'S APRIL 6, 2026 DISCOVERY RULING**

## I.    INTRODUCTION

Plaintiffs ask this Court to overrule Magistrate Judge Levenson's considered discovery ruling denying their demand that Suno produce its confidential settlement agreement with Warner Music Group ("Warner")—a former co-plaintiff in this very litigation—to the remaining Plaintiffs, Universal Music Group ("UMG"), and Sony Music Entertainment ("Sony"), who continue to press the same claims Warner chose to settle.  The standard Plaintiffs must meet to obtain that relief—clear error—is exacting.  Plaintiffs do not come close.  Plaintiffs do not and cannot identify any clear error in Judge Levenson's reasoning.  Plaintiffs' objections are, at core, an attempt to relitigate a dispute they lost before Judge Levenson, raising largely the same arguments they made before and asking this Court to reach a different conclusion.  This runs counter to the highly deferential standard of review of Rule 72(a) objections, particularly objections arising out of fact-intensive discovery issues.  Plaintiffs' demand that this Court second-guess Judge Levenson's judgment and substitute their preferred outcome for his reasoned analysis should be rejected.

Judge Levenson's ruling reflects a careful application of Rule 26(b).  He evaluated the relevance and proportionality of Plaintiffs' demand and concluded that Plaintiffs had "not made out a significant showing of significance in proportionality," given that "settlements of litigation have little persuasive bearing on identifying and characterizing markets for intellectual property" and in light of the litigation sensitivities of producing a settlement agreement between a former plaintiff and current defendant.  See Mar. 12, 2026 Tr. at 60:14-23, Dkt. 201.  That conclusion is not controversial—it is supported by a broad consensus of courts around the country that have concluded that licenses entered into against the backdrop of litigation carry limited probative value because their terms are shaped by litigation risk, not by the competitive forces that define a functioning market.  And the sensitivity of disclosure here is self-evident:  UMG, Sony, and

1

Warner jointly brought this action asserting the same cause of action based on the same course of conduct.  Requiring Suno to hand the remaining Plaintiffs a blueprint of the terms on which it resolved claims identical to theirs would compromise settlement dynamics and threaten to chill future settlements by similarly situated parties—results Judge Levenson rightly sought to avoid.

Plaintiffs' objections rest on two mischaracterizations of the record. First, they claim Judge Levenson ignored the licensing component of the Warner settlement.  He did not—his Order expressly references it, and his analysis addressed the arguments Plaintiffs raised about it.  Second, they claim Judge Levenson treated Rule 408 as an absolute bar to discovery.  He did the opposite, stating plainly that Rule 408 "is not an absolute bar" before weighing it as one factor among several in his proportionality analysis.  Neither argument withstands scrutiny, and neither establishes clear error.  Stripped of these mischaracterizations, Plaintiffs are left with the argument that the Warner settlement is simply too relevant to withhold—but their relevance theories, most of which Judge Levenson already considered, do not point to clear error.  Many of the arguments Plaintiffs say they need discovery into Suno's settlement in order to make (assuming Rule 408 would permit them) require nothing more than the publicly known fact that Warner and Suno entered a licensing arrangement as part of Warner's settlement of its claims in this litigation.

The Court should overrule Plaintiffs' objections.

## II.    BACKGROUND

### A.  Judge Levenson's Management of the Parties' Discovery Efforts

Plaintiffs UMG and Sony, along with former co-plaintiff Warner, filed their Complaint nearly two years ago, alleging that Suno infringed their copyrights by using their sound recordings to train Suno's music-generative AI model.  *See* Dkt. 1.  Discovery in this case has been extensive, reflecting the nature of Plaintiffs' claims and Suno's defenses.  Plaintiffs' allegations go to how

Suno has developed and trained its AI model, and Plaintiffs have sought broad-ranging discovery on Suno's AI model, outputs, and business dealings. On the other side, Plaintiffs' fair use and damages theories implicate the licensing market for Plaintiffs' sound recordings, and Suno has accordingly requested discovery into various aspects of that market, which is a core component of Plaintiffs' businesses.

During the fact discovery period, the parties have, on many occasions, disagreed on the appropriate scope of discovery. When the parties were unable to resolve their disputes, they sought guidance from Judge Levenson, to whom this Court referred all discovery disputes. *See* Dkts. 43, 58, 175. The parties have appeared before Judge Levenson eight times and briefed dozens of discovery issues covering a broad range of topics, including the temporal scope of discovery into Suno's model development, discovery related to chain of title and ownership of the asserted works, Plaintiffs' license agreements with AI companies or concerning AI, outputs created through Suno, and the appropriate search terms and custodians. *See, e.g.*, Dkt. 209-1, 212, 213; *see also, e.g.*, Dkts. 49, 60, 68, 70, 71, 91, 117, 143, 197, 224.

Across these disputes, Judge Levenson has wisely and within his discretion put emphasis on "practical solutions," balancing the need to "keep [particular topics] from being a sideshow that swallows up the entire litigation" with the importance of allowing the parties to develop a complete record for summary judgment and potentially trial. *See* July 31, 2025 Tr. at 10:8–19, Dkt. 119; *see also* Feb. 14, 2025 Tr. at 25:21–25, Dkt. 64 ("How do we draw a line . . . What's the limiting principle here?"). Consistent with his balanced adjudication of the issues, both parties have won, lost, been sent back to the negotiating table, and accepted compromises on multiple issues. *See, e.g.*, Dkt. 154 (order on Suno's motion to compel); Feb. 14, 2026 Tr. at 51:25-52:4 (ordering further negotiations); July 31, 2025 Tr. at 71:11-72:25 (same); Dkt. 91 (reporting parties close to

compromise).   While Suno has accepted Judge Levenson's adverse rulings and given due deference to his discretion in managing discovery in a highly complex case, faced with a decision they do not agree with, Plaintiffs now seek to relitigate an issue already appropriately resolved by Judge Levenson.

### B.  Plaintiffs' Demand and Judge Levenson's April 6, 2026 Order

This case was originally brought as a single action by the three major record labels—UMG, Warner, and Sony—and their subsidiaries.   Each Plaintiff jointly asserted the same cause of action—copyright infringement of their sound recordings—based on the same course of conduct— use of those sound recordings as training data.  *See generally* Dkt. 1.  A year and a half into the litigation, on November 25, 2025, Warner and Suno reached an agreement to settle Warner and its subsidiaries' claims in this action.  *See* Dkts. 218-2, 218-3.  Warner filed a stipulation of voluntary dismissal shortly thereafter.  *See* Dkt. 174.  The remaining Plaintiffs, UMG and Sony, maintain their claims against Suno.

Following Suno's settlement with Warner, UMG and Sony sought in discovery "[a]ll documents and communications relating to" the Warner settlement.  *See* Dkt. 218-7.[1]  Suno objected to the request on the basis that Plaintiffs' demand for Suno's confidential settlement is of limited relevance, particularly given that it is likely inadmissible under Rule 408, and thus its production would be disproportionate to the needs of this case.  *See* Dkt. 209-1 at 16-20.  Suno

---

[1] More specifically, before Judge Levenson, Plaintiffs requested all documents concerning "Suno's plans to alter its business and/or AI music generation service following its licensing agreement with Warner" and all post-February 2025 "materials regarding its efforts to license training data" inclusive of the Warner settlement.  Dkt. 209-1 at 6, 9.  Plaintiffs now ask this Court to "order Suno to produce the agreement" itself, but have apparently dropped their demand for other documents and communications related to the Warner settlement or Suno's business practices related thereto.  *See* Dkt. 218 at 18.  Plaintiffs cannot petition this Court to overturn Judge Levenson for "clear error" while also presenting the Court with an entirely different request than the one Judge Levenson heard.

argued that a settlement forged in the crucible of litigation bears no resemblance to an arm's-length license and cannot reliably establish the market for or value of training-data rights—yet that is precisely what Plaintiffs conceded they intend to use the agreement for. *See id.* at 22-23; *see also id.* at 8 (Plaintiffs arguing that the Warner agreement is relevant because "[a]ny licensing fee reflected in this agreement necessarily bears on the value for licensing sound recordings as training data"). Suno further argued that, while Rule 408 is not a bar to discovery, against the backdrop of the limited relevance of the agreement, the Court should consider as part of its proportionality analysis both the low likelihood that it will admissible in the litigation and the impact of handing the remaining Plaintiffs a strategic blueprint for Suno's settlement posture. *See id.* at 16. Plaintiffs set forth their responsive position over four single-spaced pages, making many of the same arguments they now rely on in their objections to Judge Levenson's order. *See* Dkt. 209-1 at 8-9, 21-23.

Notably, Plaintiffs brought the dispute to Judge Levenson, as part of a larger submission raising multiple discovery disputes. *See* Dkt. 209-1. Judge Levenson held a discovery conference to address *twelve* separate discovery disputes raised by both parties, including Plaintiffs' demand for the Warner agreement. *See* Dkt. 206; *see also* Dkts. 207-1, 207-2, 209-1. These disputes reflected the core outstanding disagreements between the parties on the scope of document discovery. After hearing from both sides, Judge Levenson ruled on each of the issues raised, first orally at the conference and then in a written order memorializing his findings, which he issued on April 6, 2026 ("April 6 Order"). *See* Mar. 12, 2026 Tr.; Dkt. 206.

Importantly, Judge Levenson did not view relevance and proportionality in isolation for each of the twelve issues, but instead considered the requests against both the discovery to date and the reasonable needs of the case. *See* Mar. 12, 2026 Tr. at 11:5-7 (noting "the need to keep

5

some kind of containment barrier around the oil spill that is discovery in this case"); *id.* at 29:11-25, 41:5-22 (seeking a limiting principle for the scope of discovery into the effect of AI-generated outputs on the market for Plaintiffs' works).  Judge Levenson also considered the importance of limiting discovery into competitively-sensitive commercial arrangements, denying several requests Suno made on that basis.  *See* Dkt. 206 at 4, 9, 10.  Judge Levenson's analysis was even-handed: he denied eight of Suno's requests and three of Plaintiffs'.  The April 6 Order thus reflected a balanced application of the principles of relevance and proportionality, as well as an intentional effort to cabin discovery across the board as the June 26 close of fact discovery draws near.

Consistent with that reasoned approach, Judge Levenson denied Plaintiffs' request for the Warner settlement agreement, finding:

> The Warner []settlement, I don't buy that . . .  the protections of Federal Rule of Evidence 408 are necessarily absolute . . . .  Disclosure of it, on the other hand, I don't see that plaintiffs have made out a significant showing of significance in proportionality, and it may complicate things or not, but it strikes me as of less relevance given that the limited value of settlements in figuring out market and licensing fees[;] the Courts have often said they are less representative of what parties might reach in a free market or what a market looks like.
>
> So I am not prepared on the showing I've seen to order []Suno to disclose the terms of its Warner []settlement.

Mar. 12, 2026 Tr. at 60:14-61:1.[2] The Court's April 6 Order further explained:

> Plaintiff[s'] request for documents regarding the Warner Music Group settlement and associated licensing is denied.  F.R.E. 408 is not an absolute bar, but the relevance of this information is marginal and the potential for chilling settlements—in this and other cases—is high.  As Suno argues, settlements of litigation have little persuasive bearing on identifying and characterizing markets for intellectual property.

---

[2] The April 6 Order "clarif[ies]" and "provide[s] a record of" Judge Levenson's rulings during the March 12 conference.  Dkt. 206 at 1; see also id. at 12 (noting that, "[a]t the discovery conference, [Judge Levenson] ruled on . . . evidence regarding Suno's settlement and licensing agreements with Warner Music Group").

Dkt. 206 at 12.

## III.    LEGAL STANDARD

Magistrate judges play a "pivotal role . . . in overseeing the conduct of . . . complex pretrial discovery." *See Huffman v. City of Bos.*, 2024 WL 733282, at *1 (D. Mass. Feb. 22, 2024) (quoting *Ferring Pharms. Inc. v. Braintree Lab'ys, Inc.*, 168 F. Supp. 3d 355, 358 (D. Mass. 2016)); *see also, e.g.*, *C.G. v. Winslow Twp. Bd. of Educ.*, 2015 WL 3794578, at *2 (D.N.J. June 17, 2015) (explaining that magistrates' rulings are entitled to substantial deference "since the magistrate judge is fully involved with the facts and record of the case"). When assessing discovery disputes under the framework set forth in Federal Rule of Civil Procedure 26(b) in particular, magistrate judges must weigh multiple factors specific to the claims and parties involved, including the relevance and proportionality of the requested discovery and its importance to material issues. *See United States v. Regeneron Pharms., Inc.*, 2023 WL 3061505, at *3 (D. Mass. Apr. 21, 2023) (explaining that "Rule 26 does not permit unlimited discovery on any topic, regardless of its importance" and emphasizing case-specific factors to be considered). Magistrate judges are afforded wide discretion in their analysis, so that they may reach practical and efficient solutions to complex discovery questions that might otherwise bog down a litigation. *See Silva v. Faria*, 2024 WL 3011221, at *2 (D. Mass. June 14, 2024) (affirming magistrate's "practical and careful resolution of the issues" on appeal).

A district judge reviewing a magistrate judge's non-dispositive ruling may set it aside "only if it 'is clearly erroneous or is contrary to law.'" *Regeneron*, 2023 WL 3061505 at *2 (quoting Fed. R. Civ. P. 72(a)). Only "[p]ure questions of law" are reviewed *de novo*. *Id.*; *see also Dupree v. Younger*, 598 U.S. 729, 737 (2023) (describing "a purely legal question" as one "whose answer is independent of disputed facts"). Where a magistrate judge's ruling turns on a factual

assessments, and not a "pure question[] of law," the district court should accept the judge's

findings "and the conclusions drawn therefrom unless, after scrutinizing the entire record, the court

forms a strong, unyielding belief that a mistake has been made." *Green v. Cosby*, 160 F. Supp. 3d

431, 433 (D. Mass. 2016) (cleaned up). Courts review a magistrate judge's assessment of the

relevance and relative burden of discovery under the "clearly erroneous" standard. *See, e.g.*,

*Agyeah v. City of Worcester*, 2023 WL 6961885, at *3 (D. Mass. Oct. 20, 2023); *Ferring Pharms.*,

168 F. Supp. 3d at 362.

## IV.   ARGUMENT

### A.  Plaintiffs Misrepresent the Record and Can Identify No Clear Error in Judge Levenson's Order

In an attempt to manufacture clear error in Judge Levenson's April 6 Order where there is

none, Plaintiffs make two primary claims: (1) that Judge Levenson "disregard[ed] the go-forward

component of Suno's agreement with Warner," Dkt. 218 at 8; and (2) that Judge Levenson found

that "Federal Rule of Evidence 408 . . . bar[s] discovery of settlement agreements," Dkt. 218 at 12.

Neither is accurate, and both ignore the careful balancing Judge Levenson performed in denying

Plaintiffs' discovery request.

#### 1.  Judge Levenson Appropriately Considered The Entire Settlement Transaction

As an initial matter, Plaintiffs' attempt to segregate the license component of the Warner

settlement from the transaction as a whole is fundamentally misguided. Plaintiffs make much of

the fact that Suno and Warner have referred to the agreement as a "new partnership," but the

partnership arose from and thus is inextricably intertwined with Warner's settlement of its claims

against Suno in this case. This context is clear from the joint press release issued by both Warner

and Suno, where the two companies explained that the deal "settles previous litigation between

8

the companies." Dkt. 218-3.  Though Plaintiffs cite this press release, they conspicuously omit this sentence and falsely suggest that Suno did not mention the settlement when announcing the parties' partnership.[3]  Within two weeks of the press release the parties entered a stipulation of voluntary dismissal of Warner's claims in this case, *see* Dkt. 174.

Regardless, Plaintiffs are incorrect that Judge Levenson "fail[ed] to account" for the licensing component of the settlement transaction.  Dkt. 218 at 9.  Judge Levenson *explicitly mentioned* the settlement's "associated licensing" component in his April 6 Order.  *See* Dkt. 206 at 12.  Moreover, both Judge Levenson's comments from the bench and the April 6 Order make clear that Judge Levenson did more than merely "account" for the licensing element of the settlement; he meaningfully *analyzed* it.  Both parties briefed this issue extensively.  *See* Dkt. 209-1 at 8-9, 16-19, 21-23.  For its part, Suno argued that the fact of Suno's agreement with one plaintiff, reached after more than a year of expensive litigation, is not probative of market licensing conditions or appropriate licensing fees in an arm's-length transaction, citing multiple cases coming to the same conclusion.  *Id.* at 17-18.  After considering both parties' arguments and cited authorities, Judge Levenson concluded that the "the relevance of [the agreement] is marginal," since "settlements of litigation have little persuasive bearing on identifying and characterizing markets for intellectual property."  Dkt. 206 at 12.  Thus, Judge Levenson acknowledged the licensing component of the Warner agreement but found that, in light of the global settlement through which the license was reached, it was "of less relevance" for the purposes for which Plaintiffs sought to use it.

Far from being clear error, Judge Levenson's conclusion is well-supported.  As Suno

---

[3] The Suno "press release" Plaintiffs cite is an announcement directed to Suno users; it is therefore unsurprising that it focuses on the future-looking implications for Suno's services of the Warner agreement.  *See* Dkt. 218-2.

9

argued before Judge Levenson, a strong consensus of courts have concluded that "license fees negotiated in the shadow of a litigation threat" are not reliable to determine reasonable royalties and have excluded their use. *See* Dkt. 209-1 at 18 (quoting *University v. Hewlett-Packard Co.*, 2008 WL 11274580, at *2-4 (N.D.N.Y. May 14, 2008) (collecting cases and excluding the use of licenses arrived at through litigation as evidence of a reasonable license fee/the value of the patent)); *see also id.* (citing *Yue v. Chordiant Software, Inc.*, 2010 WL 11575579, at *3 (N.D. Cal. Apr. 22, 2010) ("Settlements offered, negotiated, or made under threat of litigation are generally not considered probative of a reasonable royalty because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147, 159 (D.R.I. 2009) ("[S]ettlements offered, negotiated or made under threat of litigation are generally not considered probative of a reasonable royalty because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction."); *see also Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 181 (S.D.N.Y. 1999), *aff'd.*, 230 F.3d 1379 (Fed. Cir. 2000) ("[A] license entered into in settlement of litigation may not accurately reflect the royalty that the parties would have negotiated prior to commencement of litigation.")).[4]

A licensing agreement entered in the wake of litigation is fundamentally distinct from a license agreement negotiated on a blank slate—the terms and scope of any such agreement are shaped by litigation pressures and risk allocation. Here, any licensing terms present in the Warner settlement—which are the product of a year and a half of hard-fought litigation—are unlikely to

---

[4] Plaintiffs cite *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) for the proposition that "a license negotiated in the context of litigation may be 'the most reliable' evidence of market value." Dkt. 218 at 14 (quoting *ResQ*, 594 F.3d at 872). In reality, the *ResQ* court held that the "most reliable license in [that] record arose out of litigation," while also recognizing that "litigation itself can skew the results of [a] hypothetical negotiation." *ResQ*, 594 F.3d at 872.

be reflective of the market for or value of any license to use sound recordings to train generative AI, which is the admitted purpose for which they would be offered.  *See* Dkt. 209-1 at 17-18. Plaintiffs argue for the first time (citing case law they did not present to Judge Levenson), that a settlement that contains a forward-looking licensing component is more persuasive evidence of a licensing market than a settlement for past uses.  *See* Dkt. 218 at 9-10.  However, that is not a distinction that courts draw when assessing relevance of settlement agreements in intellectual property cases, and for good reason.  In the context of a settlement of an intellectual property infringement suit where the plaintiff has alleged that the defendant's use required a license, any continued usage by the defendant will necessarily involve a go-forward component likely to be addressed in the settlement agreement.[5]  That fact does not transform a litigation-driven compromise into a market transaction; the agreement remains a product of risk allocation in the face of a lawsuit, not the outcome of arm's-length bargaining in a competitive market.

There can be no question that Judge Levenson "account[ed]" for and analyzed the licensing component of the Warner transaction.  Plaintiffs have not shown that Judge Levenson's

---

[5] Despite this reality, Plaintiffs were able to summon only two cases in support of their argument. Neither was cited in their briefing before Judge Levenson.  They do not move the needle.  While *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), makes the basic observation that settlements and licenses "function differently," the court was considering the completely separate issue of the validity of a "retroactive license" for a jointly owned work.  *Id.* at 101-102.  *Davis* cannot be read to support Plaintiffs' view that a license arrived at as part of a global settlement is a reliable indicator of the licensing market such that it should be produced, particularly in the face of Rule 408 principles.  In *Eagle View Technologies, Inc. v. Nearmap US, Inc.*, 2022 WL 2656752 (D. Utah July 8, 2022), meanwhile, the plaintiff had already produced a settlement agreement with a third party, which it apparently intended to rely on for reasonable royalty damages, and the court found that the related "integration agreement" was necessary to confirm whether the settlement "accurately reflect[ed] a reasonable royalty or whether it was influenced by other considerations and exchanges of value."  *Id.* at *2.  Here, Suno does not intend to rely on the Warner settlement (which, in any event, is part of the same transaction as any license)—and the court's reasoning in fact confirms that Plaintiffs' attempt to divorce the licensing component from the settlement and rely on only the former is a fiction.

well-considered Order  was "clearly erroneous or contrary to law," *Regeneron*, 2023 WL 3061505,

at *2 (quoting Fed. R. Civ. P. 72(a)), as is required to overturn the April 6 Order.

### 2. Judge Levenson Appropriately Considered Whether the Settlement Would Be Introduced in the Litigation

Plaintiffs similarly mischaracterize Judge Levenson's discussion of Rule 408.  Judge

Levenson did not hold that Rule 408 "bar[s] discovery of settlement agreements" or that it per se

"impos[es] a heightened relevance standard for the discoverability of settlement agreements." Dkt.

218 at 3, 12.  In fact, the opposite is true.  Judge Levenson was express, both during the discovery

conference and in the April 6 Order, that Rule 408 "is *not* an absolute bar" to discovery of a

settlement agreement and that he was not applying it as such.  Dkt. 206 at 12 (emphasis added);

*see also* Mar. 12, 2026 Tr. at 60:14-16 ("I don't buy that . . .  the protections of Federal Rule of

Evidence 408 are necessarily absolute.").  An honest read of the April 6 Order, particularly taken

together with the parties' briefing, makes clear that Judge Levenson simply concluded that

Plaintiffs had not made an appropriate showing of relevance and proportionality, particularly given

that the terms of the settlement agreement itself likely could not be relied on by Plaintiffs at

summary judgment or trial to establish the appropriate value of a license.  *See* Dkt. 206 at 12; *see*

*also* Dkt. 209-1 at 19.  Plaintiffs' primary objection thus appears to be that Judge Levenson should

not have even mentioned Rule 408 at all.  But to the extent Judge Levenson considered, among

other factors in his analysis, whether the Warner agreement would in fact be admissible in the

litigation, doing so was not clear error.[6]

---

[6] To be clear, the standard of review is clear error.  Plaintiffs attempt to manufacture a "[p]ure question[] of law" by arguing that Judge Levenson "rel[ied]" on Rule 408 in his order.  *See* Dkt. 218 at 8, 12. Even assuming he did rely in part on Rule 408, Judge Levenson's consideration of Rule 408 alongside the other factors he discussed, including the settlement's "marginal relevance," is not a "purely legal question . . . whose answer is independent of disputed facts." *Dupree*, 598 U.S. at 737.  To the contrary, Judge Levenon's approach was "immerse[d] . . . in case-specific

In their discovery briefing, Plaintiffs conceded that they sought the Warner agreement to establish "the value for licensing sound recordings as training data." Dkt. 209-1 at 8. But the licensing component of the Warner agreement is part of and inextricable from a global *settlement* of Warner's claims against Suno; relying on this agreement to "prove or disprove the validity or amount of a disputed claim" would therefore be prohibited by Rule 408. As Suno argued in response, because the agreement would be inadmissible for this purpose, allowing its discovery would be disproportionate and unduly burdensome under Rule 26(b) absent a showing that the agreement would lead to the discovery of other admissible evidence or could be used for a non-objectionable purpose. *See* Dkt. 209-1 at 16, 18. Plaintiffs offered no compelling alternative use for the settlement materials. *See D*kt. 209-1 at 18-19.

While Rule 26(b)(1) provides that discovery "need not be admissible in evidence to be discoverable," Plaintiffs apparently take this to mean that courts *cannot* consider whether discovery is ever likely to be relied on in their assessment of whether that discovery is "proportional to the needs of the case" or "importan[t] . . . in resolving the issues." Fed. R. Civ. P. 26(b)(1). This is not the law, including in the cases Plaintiffs cite. *See Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 3578251, at *5 (S.D.N.Y. July 1, 2020) (applying "the familiar standard of" Rule 26(b) and granting discovery of a settlement that the defendants would use to impeach a witness—in part *because this is a purpose which settlement agreements are admissible*); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (allowing discovery of settlement after weighing Rule 26(b) factors and where the settlement "could reasonably be expected to lead to the discovery of other admissible evidence"); *Intell. Ventures I, LLC v. Lenovo*

factual issues" and should be reviewed "with deference." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

*Grp. Ltd.*, 2019 WL 9096048, at *2 (D. Mass. Dec. 6, 2019) (granting discovery of license agreements over the defendant's sole "object[ion] on the ground of relevance"); *Fernandes v. Bouley*, 2022 WL 2915702, at *10 (D. Mass. July 25, 2022) (ordering production of grievance documents over sole objection that the request was ambiguous and overbroad); *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 465 (S.D.N.Y. 2019) (ordering production of settlement agreement under "good cause" standard of Rule 26(c), over the defendant's confidentiality objection).

Judge Levenson also appropriately considered the unique burden and litigation sensitivities of producing the Warner settlement. As he noted, its "potential for chilling settlements—in this and other cases—is high." Dkt. 206 at 12. Unlike in the cases cited by Plaintiffs, the agreement at issue here is between a former plaintiff and a current defendant in the current litigation, covering the *same claims* the remaining Plaintiffs are still pursuing. Producing this agreement would require Suno to disclose to Plaintiffs the settlement terms it was willing to agree to (to say nothing of the terms of its commercial arrangement with a direct competitor to Plaintiffs).[7] This would give Plaintiffs' designated in-house counsel and joint outside litigation counsel (who may not be privy to specific settlement terms) insight into what financial and other terms Suno might be willing to settle for—insight to which Plaintiffs are surely not entitled for purposes of this litigation and which could negatively affect potential settlement dynamics.

---

[7] Though Plaintiffs appear to dismiss commercial sensitivity as a form of burden, it is one that they have often raised and that Judge Levenson has relied on in denying discovery into *Plaintiffs'* sensitive materials—including in the order Plaintiffs now appeal. *See, e.g.*, Dkt. 206 at 3, 4, 9, 10. Plaintiffs cannot dismiss these concerns now that they are not the ones raising them. *Cf. Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) (explaining that "nonmonetary costs (such as the invasion of privacy rights, risks to business and legal confidences, and risks to privileges) should be considered [in evaluating burden under Rule 26(b)]" (cleaned up)). Judge Levenson's decision here once again reflects his even-handed approach to discovery in this case.

14

However, Judge Levenson was clear that none of the above concerns alone motivated his decision to deny discovery into Suno's settlement with Warner; he considered the "chilling" impact of production together with the fact that "the relevance of [the requested] information is marginal" given that "settlements of litigation have little persuasive bearing on identifying and characterizing markets for intellectual property." Dkt. 206 at 12; *see also* Mar. 12, 2026 Tr. at 60:14-23 (holding that Plaintiffs had not "made out a significant showing of significance in proportionality" and noting the the agreement "strikes [the Court] as of less relevance given that the limited value of settlements in figuring out market and licensing fees[;] the Courts have often said they are less representative of what parties might reach in a free market or what a market looks like."). Judge Levenson thus appropriately considered the Rule 26(b) factors and ultimately concluded that the limited relevance and use of the agreement did not justify the burden and litigation impact of producing it.

### B. Plaintiffs' Strained Relevance Arguments Do Not Establish Clear Error

Unable to identify any clear error in the April 6 Order, Plaintiffs resort to the argument that "[t]he Order's conclusion that the Warner agreement has only 'marginal' relevance is simply wrong." Dkt. 218 at 13. Plaintiffs' disagreement with Judge Levenson's analysis does not meet the high bar of showing clear error. Nor do Plaintiffs have any basis to claim that Judge Levenson "fail[ed] to even consider [their] bases or relevance." *Id.* at 14. To the contrary, during the discovery conference Judge Levenson referred to Plaintiffs' dispute statement, finding that they "ha[d] not made out a significant showing of significance in proportionality," particularly where the agreement is "of less relevance . . . in figuring out market and licensing fees"—the very arguments Plaintiffs had relied on. *See* Mar. 12, 2026 Tr. at 60:17-21; *see also* Dkt. 209-1 at 8-9, 17-18; *see also, e.g.*, *Miller v. Metro Life Ins. Co.*, 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov.

15

15, 2018) ("[T]here is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." (cleaned up)).  In any event, Plaintiffs significantly overstate the relevance of the agreement to any issue material to the litigation—largely repeating arguments from their prior submission that Judge Levenson already considered and rejected.  *See* Dkt. 209-1 at 8-9, 17-18 (arguing that the agreement is relevant to factor four, damages, and copyright misuse).

First, Plaintiffs are incorrect that the settlement is probative of whether there is a viable actual or potential market to license Plaintiffs' sound recordings for use as training data for purposes of factor four of the fair use test.  That Suno entered a global settlement with one rightsholder after many months of hard-fought litigation, does not show whether a licensing *market* exists or whether Suno could license a sufficient training corpus to build the state-of-the-art generative AI model it offers.  As discussed above, Suno provided and Judge Levenson considered case law finding that licenses arrived at as part of a settlement are informed by and inseparable from the litigation context in which they arise.  *See supra* at 9-11.  For these reasons, Plaintiffs' cited cases, both of which concern discovery into licenses negotiated on the open market, as opposed to global settlements, are not applicable here.  *See Onan v. Databricks, Inc.*, 2026 WL 125149, at *2; *In re Mosaic LLM Litig.*, 2025 WL 2294910, at *4 (N.D. Cal. Aug. 8, 2025).

Regardless, as Plaintiffs have emphasized, it is public information that Warner and Suno entered a global agreement that includes a licensing component.  If Plaintiffs' wish to point to Suno's settlement with Warner as evidence that a market for licensing sound recordings as training data exists—whether in response to Suno's fair use defense *or* its copyright misuse defense—the publicly reported fact of Suno and Warner's license supplies them with what they need to do so.[8]

---

[8] To the extent Plaintiffs seek to introduce the fact of the Warner settlement, Suno reserves all

16

The only justification Plaintiffs provide for their demand for the *specific* terms of the Suno-Warner settlement agreement is that those terms may "reflect how Suno will utilize Warner's copyrighted works to cater to user preferences." Dkt. 218 at 15. It is unclear what Plaintiffs mean by this. Insofar as Plaintiffs are demanding discovery into any recent or future changes to Suno's model (due to Suno's settlement with Warner or otherwise), that topic is the subject of ongoing negotiations between the parties, under Judge Levenson's supervision. *See* Dkt. 206 at 12-13 (categorizing discovery into Suno's recently-released models as a topic "Open for Ongoing Discussion by the Parties" and noting that "the parties are free to revisit the issue with the Court if further guidance, or a determinative ruling, is needed."). The Court need not wade into those efforts at this juncture.

Plaintiffs' next argument—that the "licensing fee" in the settlement "is indicative of the value Suno places on using" sound recordings as training data—confirms that Plaintiffs seek the agreement for a purpose for which they will not be permitted to use it. Dkt. 218 at 16; *see also* Fed. R. Evid. 408 (prohibiting use of settlement to "either prove or disprove the validity or amount of a disputed claim"). Even assuming the agreement has any relevance to damages, *but see supra* at 9-11, Rule 408 prohibits Plaintiffs from using the agreement for that purpose, rendering Plaintiffs' relevance argument merely academic. Plaintiffs' additional claim that the agreement is relevant to damages because it may reveal "specific functions for Suno's future models" or "outlin[e]" Suno's purported future removal of their recordings from its training data rests on pure speculation. Dkt. 218 at 16. To the extent Suno's model changes at some point in the future as a result of the Warner agreement and assuming *arguendo* those changes have some bearing on

---

rights to move to exclude that information pursuant to Rule 408. For present purposes, the Court need not decide whether the existence of the settlement is inadmissible under Rule 408 or whether, as Plaintiffs argue, excluding it would create a "sword and shield" issue. *See* Dkt. 218 at 15.

17

Plaintiffs' damages theories, it is the changes themselves, not the settlement agreement that hypothetically precipitated them that would be relevant.   Moreover, as noted above, discovery into any recent or future changes to Suno's model is still being negotiated between the parties. *See* Dkt. 206 at 11-13; Mar. 12 Tr. at 30:19-32:1, 44:16-47:11. Plaintiffs' final argument, that a settlement entered in November 2025 "reflect[s]" Suno's "understanding of the risks it took by" not obtaining licenses for its training data "in the first instance," is nonsensical.  Dkt. 218 at 17. Suno's decision to agree to a settlement with Warner is not an admission of liability, much less an admission of knowing infringement—and Rule 408 would prevent Plaintiffs from arguing otherwise.  *See* Fed. R. Evid. 408 (prohibiting use of settlement to "either prove or disprove the validity or amount of a disputed claim").   As the policies underlying Rule 408 recognize, "settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions."  McInnis v. A.M.F., Inc., 765 F.2d 240, 247 (1st Cir. 1985).  And the settlement agreement certainly has no relevance to Suno's state of mind approximately two years earlier, when any alleged infringement would have occurred.  *See, e.g.*, *Egenera, Inc. v. Cisco Sys., Inc.*, 547 F. Supp. 3d 112, 129 (D. Mass. 2021) ("[C]ulpability for willful infringement is generally measured against the knowledge of the actor at the time of the challenged conduct." (cleaned up)).

* * *

At bottom, Plaintiffs' objection to Judge Levenson's April 6 Order is that he did not adopt their arguments.  The record shows that he considered those arguments but came out another way, weighing the burden of producing a sensitive agreement involving the current defendant and a former co-plaintiff; the marginal relevance of that agreement, which involved a global settlement of that plaintiff's claims; and the proportionality of requiring Suno to produce a settlement

18

agreement that is unlikely to ultimately be admissible for the reasons Plaintiffs seek to proffer it. Judge Levenson's denial of Plaintiffs' request was not error—and was certainly not clear error. There is no basis to overturn Judge Levenson's April 6 Order.

Nor have Plaintiffs established that they are entitled to the alternative relief of an order "preclud[ing] [Suno] from arguing at summary judgment or trial that no viable market exists for licensing sound recordings as training data for generative AI models"—a request Plaintiffs never even made to Judge Levenson. *See* Dkt. 218 at 4. Plaintiffs' position is that, because Suno will not agree to produce a single agreement to counterparties who are Warner's competitors and who are in active litigation with Suno, Suno should effectively be prevented from presenting its anticipated arguments under factor four of the fair use test—which Plaintiffs have characterized as "the single most important element of fair use." *See* Dkt. 218 at 14. In addition to being entirely disproportionate to the point of punitive, this relief is untethered to any claimed evidentiary gaps resulting from Judge Levenson's discovery decision. As noted above, Plaintiffs can rely on public sources to argue that the Warner settlement illustrates the existence of a licensing market for sound recordings as training data. Plaintiffs' attempt to use a simple discovery dispute to dictate the arguments Suno can present at summary judgment or to a jury should be rejected.

## V.    CONCLUSION

For the foregoing reasons, the Court should overrule Plaintiffs' objections and should deny their request to either set aside the April 6 Order or preclude Suno's arguments at summary judgment.

Dated: May 4, 2026

Respectfully submitted,

*/s/ Brittany N. Lovejoy*
Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Grace McLaughlin (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
grace.mclaughlin@lw.com

Shlomo Fellig (BBO# 699643)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
shlomo.fellig@lw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent May 4, 2026, to those identified as non-registered participants.

*/s/ Brittany N. Lovejoy*
Brittany N. Lovejoy