Docusign Envelope ID: 0570EE49-94D0-818E-8146-CD8784D60CF6

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>      Plaintiffs,<br><br>vs.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>      Defendant. | Civil Action No. 1:24-cv-11611 (FDS) |

## DECLARATION OF DAVID CASTAGNA IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

7107753
7137662

I, David Castagna, declare as follows:

1.      I am Senior Director, Litigation Support & Copyright Administration at Sony Music Entertainment ("Sony").  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      I submit this declaration in support of Plaintiffs' Motion for Leave to Amend the Complaint in the above-captioned matter. This declaration describes the process that I and other members of Sony's Business and Legal Affairs team, including attorneys, paralegals, and other support staff, undertook to identify additional copyrighted sound recordings registered with the U.S. Copyright Office by or for the benefit of Sony, or its predecessors, subsidiaries or affiliates, that were present in Defendant Suno, Inc. ("Suno") training dataset.

3.      I understand that as part of the litigation, Sony analyzed Suno's training data set using Audible Magic's content identification technology.  I further understand that this Audible Magic analysis returned hundreds of thousands of results corresponding to sound recordings potentially owned or controlled by Sony, or one of its subsidiaries or affiliates. Given the sheer volume of these results, it would not have been possible for me or members of the Business and Legal Affairs team at Sony to review them all within a reasonable timeframe.

4.      Recognizing this constraint, I was tasked with reviewing only a subset of the Audible Magic match results to confirm that Sony, or a subsidiary or affiliate of Sony, has a good-faith basis to claim U.S. ownership or control over the identified sound recordings.

5.      The Audible Magic match results I reviewed contained International Standard Recording Code ("ISRC") numbers for each identified sound recording. Based on my understanding, an ISRC is a standardized identification code assigned to a particular sound recording. The Audible Magic results did not, however, contain copyright registration information for any of the identified recordings.

6.      Sony does not maintain a single, centralized database that connects ISRC numbers to particular copyright registrations. As a result, assessing Sony's ownership or control of any

- 2 -

given recording identified in the Audible Magic results and verifying the associated copyright registration was a multi-step, manual process.

7.    The process differed depending on whether the identified sound recording was a pre-1972 work not subject to the registration requirements of the Copyright Act of 1976.  For pre-1972 sound recordings identified in the Audible Magic results, to determine whether Sony, or a Sony subsidiary or affiliate owns or controls each sound recording, I used the corresponding ISRC number from the Audible Magic match results to consult certain of Sony's internal records that are derived from or otherwise reflect information contained in an internal Sony system detailing, among other things, the particular ISRC codes associated with assets and sound recordings owned or controlled by Sony or a Sony subsidiary or affiliate (the "Asset Database"). By comparing ISRC codes and asset details across these internal records and the Audible Magic match results, I confirmed that each applicable sound recording identified in the Audible Magic match results was accurately identified and corresponded to an asset of Sony or a Sony subsidiary or affiliate. Each of these steps required individual, manual effort, and no single step could be skipped or automated across the full body of results.

8.    I undertook a different procedure for post-1972 works that were registered with the Copyright Office.  Upon identifying a work or set of works in the Audible Magic match results that I believed had been registered with the Copyright Office, I typically compiled all the copyright registration certificates available in Sony's internal records for the artist or artists associated with those identified works.  I obtained these certificates from the internal Sony database storing registration information, which is separate from the Asset Database.  After compiling all the registration certificates for the artist or artists concerned, I manually looked up the asset listed in each copyright registration in the Asset Database to verify the particular sound recordings associated with each registration certificate and to identify the corresponding ISRC numbers.  I then manually compared these ISRC numbers from the Asset Database to those contained in the Audible Magic match results to confirm that each sound recording identified in those match results was accurately identified and corresponded to the asset in the Asset Database that related to the

- 3 -

applicable copyright registration.  As with the pre-1972 works, each of these steps required individual, manual effort, and no single step could be skipped or automated across the full body of results.

9.      In addition to the steps outlined above, I directed an additional review to ensure that Sony has a good faith basis to claim a U.S. ownership interest or exclusive rights in the identified works and instructed the removal of any works for which Sony's U.S. rights had clearly expired or otherwise ceased.

10.     In light of the complexity and labor-intensive nature of this process, I trained several other members of the Business and Litigation Affairs team on the multi-step workflow I have described above so that the review could be conducted on a broader scale. After training these team members, I continued to participate in the review process alongside them.

11.     Over the course of approximately two months, I and other members of the Business and Litigation Affairs team manually reviewed tens of thousands of Audible Magic match results using this process. Each individual result required the same multi-step, cross-referencing workflow across multiple internal databases.  The cumulative effort required to develop this list of works was substantial and reflected a significant investment of time and resources.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of May, 2026, in New York, New York.

Signed by:

_David Castagna_
F47C64EC59D44DB...

David Castagna

- 4 -

7137662