**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>             Plaintiffs,<br><br>       v.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>             Defendant. | Civil Action No. 1:24-cv-11611-FDS |

**DECLARATION OF BRITTANY N. LOVEJOY**
**IN SUPPORT OF SUNO'S OPPOSITION TO**
**PLAINTIFFS' SECOND MOTION FOR LEAVE TO AMEND COMPLAINT**

I, Brittany N. Lovejoy, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Latham & Watkins LLP and counsel of record for Suno, Inc. ("Suno") in this case.

2.      I have personal knowledge of the matters stated in this declaration, and, if called as a witness, I could and would competently testify to them.

*Prelitigation Communications*

3.      On April 25, 2024, the Recording Industry of America ("RIAA") sent Suno a letter accusing Suno of infringing an unspecified number of sound recordings "create[d], manufacture[d], and/or distribute[d]" by UMG Recordings, Inc., Sony Music Entertainment, and Warner Music Group Corporation.

4.      The April 25 letter demanded that Suno cease and desist from copying, works owned by the RIAA's members; provide "a complete, detailed list of the materials that Suno used

to develop any version of its AI models, including without limitation the track name and artist for each work used, as well as the source(s) from which Suno obtained copies of such works"; "provide a complete list of the copyright owners whose permission [Suno] obtained to use [its] copyrighted works; and provide an accounting of all revenue derived from Suno's AI models."

5.      The RIAA's letter made no representation that it would keep Suno's training data confidential.  To the contrary, in a later letter sent on May 10 the RIAA dismissed Suno's confidentiality concerns as "absurd."

6.      Suno responded to the RIAA on April 29, 2024.  Suno explained, "The overt threat of legal action makes it impractical to depart from the standard practice of declining to share confidential business information of the type [the RIAA] seek[s]."

***Discovery in This Litigation***

7.      Plaintiffs initiated this litigation on June 24, 2024.  During discovery, Suno requested documents related to Plaintiffs' ownership of the asserted works, including chain-of-title information and deposit copies.  After submitting two separate dispute statements on these issues to Judge Levenson, Plaintiffs agreed to produce, inter alia, chain-of-title information and work-for-hire agreements for the asserted works.  Plaintiffs specifically reserved the right to object to their "production obligations" or "utilize a sampling approach" "after the list of asserted works grows."  Plaintiffs have refused to produce the deposit copies they submitted with the Copyright Office.

8.      Plaintiffs have also agreed to produce royalty and consumption data for each of the asserted works for eleven popular streaming services and social media platforms.

9.      Plaintiffs deposed one Suno employee on January 14, 2026.  Plaintiffs have identified eight additional Suno employees whose depositions they intend to take during the fact

discovery period; Suno has identified twelve employees of Plaintiffs with relevant information whom Suno intends to depose.

10.    On May 27, 2026, after Suno sent proposed dates for depositions to be completed by the June 26 close of fact discovery, Plaintiffs requested an extension of the fact discovery schedule to "accommodate the completion of depositions," to August 15, 2026. Suno was prepared to complete fact discovery by June 26 but agreed to an extension to August 14, 2026 in the interest of witness convenience. Suno requested that Plaintiffs send a stipulation to that effect, which it has not yet received from Plaintiffs.

### *Plaintiffs' Training Data Inspections*

11.    On January 19, 2025, Suno sent Plaintiffs a draft "Training Data Inspection Protocol" that would govern how Plaintiffs would be permitted to access Suno's training data consistent with its highly sensitive nature. The parties exchanged edits on January 29 and February 12. In Plaintiffs' edits sent on January 29, they inserted a provision that would allow them to use Audible Magic to analyze Suno's training data to identify "works that may belong to Plaintiffs."

12.    Suno sent responsive revisions on February 12, including informing Plaintiffs that the parties would need to negotiate how to maintain confidentiality of information disclosed to Audible Magic. Plaintiffs did not respond with their suggested changes until March 10. Plaintiffs' March 10 edits included provisions concerning the confidentiality designation of the training data and Audible Magic's compliance with the Protective Order. The parties filed the proposed Training Data Inspection Protocol on March 28, 2025. See Dkt. No. 75. Plaintiffs' first training data inspection took place on April 15.

3

13.     Plaintiffs first emailed Suno with a proposal for how they would use Audible Magic to analyze Suno's training data on May 16, 2025.  Plaintiffs' proposal omitted key information Suno needed to assess it.

14.     From May 16 to June 26, the parties negotiated how Plaintiffs would carry out their Audible Magic inspection.  Over the course of those negotiations, Suno requested information about the specific permissions Plaintiffs would require and approaches they intended to take so that Suno could assess the security risks and prevent interference with Suno's business operations. In addition to the security risks and potential interference with Suno's business, Suno also identified concerns with Plaintiffs transmitting its closely guarded training data out of its controlled environment and to a third party, without Suno even being able to view the directory.

15.     In an email on June 26, Plaintiffs claimed that Suno's security concerns were "specious," announced their intention to proceed with Phase 1 of their Audible Magic analysis (creating "fingerprints" for the works in Suno's training data), even as the parties negotiated Phase 2 (transmission of those fingerprints to Audible Magic), and informed Suno that they would raise the dispute to Judge Levenson.

16.     After exchanging and submitting a joint dispute statement, the parties appeared before Judge Levenson on July 31, 2025.  To address Suno's confidentiality concerns, Judge Levenson suggested that the parties agree to a proposal by which Plaintiffs would send a sample of Suno's training data to Audible Magic.

17.     Suno sent Plaintiffs a sampling proposal on August 8.  Plaintiffs responded that the only sampling proposal they would accept was one in which Suno stipulated "to Plaintiffs' ownership of valid, enforceable copyrights that are eligible for statutory damages" for an unidentified number of additional works.  In its response, Suno attempted to disaggregate two

distinct concepts: (a) identifying the proportion of works in the training set that Plaintiffs contend they may own; and (b) sorting out whether Plaintiffs in fact own the requisite rights to prosecute this suit with respect to relevant works.  Suno indicated it was amenable to a stipulation aimed at the former, but not likely the latter.  Although Suno entertained Plaintiffs' proposal for a sampling methodology related to ownership in good faith, it had concerns about agreeing to that process given that ownership over a particular work is a legal question not suitable for extrapolation. Plaintiffs continued to insist on a stipulation.

18.    On September 5, as the parties continued to negotiate the sampling proposal, Suno raised a separate concern: it appeared that Plaintiffs would use Audible Magic to match training data to works associated with rightsholders other than Plaintiffs and their affiliates.  Suno offered a potential counterproposal that would allow Audible Magic to provide Plaintiffs with information about works that may belong to them without providing identifying information for works associated with other rightsholders.  Plaintiffs did not respond until over three weeks later—on September 30—and stated that they would request another conference before Judge Levenson.

19.    On October 6, in the interest of reaching compromise and to move the dispute forward, Suno offered to "forgo a sampling approach and allow Plaintiffs to conduct their exercise on the full scope of Suno's training data if Plaintiffs agree to limit the Audible Magic results to only sound recordings each Plaintiff purports to own."

20.    On October 10, Plaintiffs rejected that offer and sent a draft of their position statement to submit to Judge Levenson.  Suno responded with its portion of the statement on October 15.  Plaintiffs sent a revised version of their position statement on October 21.  In it, Plaintiffs proposed a new compromise that would address Suno's concerns about the identification of works associated with other rightsholders.  Suno accepted that compromise the next day.

21.    Plaintiffs' experts began their Audible Magic inspection on November 3.  Plaintiffs completed Phase 1 of the inspection on November 14.

***The Second Motion to Amend***

22.    Plaintiffs represent that they received the results of the Audible Magic inspection on January 15, 2026.  See Dkt. 231-2 ¶ 10.

23.    Plaintiffs first informed Suno that they intended to file a motion for leave to amend the Complaint to assert additional works on May 11, 2026.  Plaintiffs did not identify the additional works in that communication.

24.    Plaintiffs sent Suno Exhibit A of the proposed amended Complaint, identifying the additional works, on May 13, 2026.

* * *

25.    Attached as Exhibit A is a true and correct copy of Plaintiffs' produced document bearing Bates range UMG_SUNO_00014278 to UMG_SUNO_14283.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2026 in Lafayette, California.


*/s/ Brittany N. Lovejoy*
Brittany N. Lovejoy

6

## CERTIFICATE OF SERVICE

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent June 4, 2026 to those identified as non-registered participants. I further certify that a true, unredacted version of the accompanying Exhibit A was served by electronic mail on all counsel of record on June 4, 2026.

*/s/ Brittany N. Lovejoy*
Brittany N. Lovejoy