**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC and SONY MUSIC ENTERTAINMENT,<br><br>     Plaintiffs,<br><br>  v.<br><br>SUNO, INC., and JOHN DOES 1-10,<br><br>   Defendant. | Civil Action No. 1:24-cv-11611 (FDS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR IMPOUNDMENT**

Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant's Motion for Impoundment ("Motion").

## I.     INTRODUCTION

Suno's Motion purports to seek concealment of a single number—the "Model Training Figure"— in Plaintiffs' motion to amend and supporting papers, (Dkt. 231). (Mot. at 1.) According to Suno, that "Model Training Figure" represents the total number of audio files Suno allegedly used to train its generative AI model. (*Id.*) But the redactions Suno actually requests involve not only the Model Training Figure, but also the total number of sound recordings that Plaintiffs identified in Suno's training data as ones *they* provided to Audible Magic, an industry standard audio content recognition tool (the "Audible Magic Number"). This second number is a smaller subset of the larger "Model Training Figure." Plaintiffs address each requested redaction in turn.

*First*, to the extent Suno is asking the Court to conceal the Audible Magic Number, that request has been waived. Suno repeatedly emphasizes that it only "seeks to impound a *single* figure"—the Model Training Figure. (Mot. at 1 (emphasis added).) Indeed, discussion of the Audible Magic Number appears nowhere in Suno's Motion. The sole exceptions are stray references to a single paragraph in the declaration and a single page in the memorandum of law accompanying Plaintiffs' motion to amend. Because Suno's Motion makes no argument as to why the Audible Magic Number should be impounded, that request has been waived. *Bank of New York Mellon v. Lezdey*, 2014 WL 4656585, at *4 (D. Mass. Sept. 10, 2014) ("Contentions that are not developed or supported in a party's submissions are deemed waived.").

Setting waiver aside, there is no reason the Audible Magic Number should be redacted. That number appears in filings related to Plaintiffs' proposed amended complaint, where "the

presumption of public access is at its strongest." *Revvity, Inc. v. Hauser*, 2025 WL 3295931, at *2 (D. Mass. Nov. 26, 2025) (Levenson, M.J.). Importantly, the Audible Magic Number provides necessary context for understanding the scale of Suno's infringement of Plaintiffs' works, and why Plaintiffs have asserted claims for only a fraction of the Audible Magic Number. There is no legitimate basis (and Suno has not articulated one) that would justify concealing it from public access. Finally, the primary argument in Suno's Motion—that it would be competitively harmed by disclosure of the full number of works it used to train its model, (Mot. at 3)—does not apply to the Audible Magic Number, which simply represents a subset of the Model Training Figure.

*Second*, the Model Training Figure should also not be redacted. Like the Audible Magic Number, the Model Training Figure is part of Plaintiffs' proposed amended complaint, where "the presumption of public access is at its strongest." *Revvity*, 2025 WL 3295931, at *2. Moreover, that figure is necessary to understand the full extent of Suno's copying—which bears on Suno's fair use defense.

To rebut the presumption of public access, Suno offers only conclusory assertions that disclosure of the Model Training Figure "*could* cause Suno serious commercial harm." (Mot. at 4 (emphasis added).) Such speculation is insufficient as a matter of law to justify impoundment. *See, e.g.*, *Roy v. FedEx Ground Package Sys., Inc.*, 2023 WL 4186291, at *3 (D. Mass. June 26, 2023) (rejecting "'unsubstantiated allegations of nonspecific harm'" for purposes of sealing). Indeed, Suno's argument rings especially hollow because, as Suno concedes, the Model Training Figure is a lone aggregate number that says nothing about how Suno built its models or what it did with any sound recording. (*See* Mot. at 6.) It simply represents the scale of Suno's conduct, which the public is entitled to see.

Suno cannot overcome the strong presumption of public access to Plaintiffs' proposed

amended pleading and accompanying filings. Nor has Suno articulated any particularized harm that would result from disclosure of either number. The Court should deny Suno's Motion in full.

## II.    BACKGROUND

This sealing dispute arises in the context of Plaintiffs' copyright infringement claims against Suno, which involve infringement allegations of an extraordinary scale. Plaintiffs are among the world's leading record companies, and they allege that Suno copied their copyrighted sound recordings without authorization to build the dataset used to train its generative AI music service. (Compl. ¶¶ 6-9.) Suno has admitted that building its service "required showing the program tens of millions of instances of different kinds of recordings," and that those recordings "presumably included recordings whose rights are owned by the Plaintiffs." (Answer at 8, 15, 21.) Through discovery, Plaintiffs identified two numbers central to their claims: the total number of audio files Suno used to train its AI model (the Model Training Figure), and the total number of sound recordings that Plaintiffs identified in Suno's training data as ones *they* provided to Audible Magic (the Audible Magic Number).

In their motion to amend and supporting papers, and in an abundance of caution, Plaintiffs redacted references to both numbers.[1] The Model Training Figure appears in four sets of filings: paragraphs 12 and 81 of Plaintiffs' Proposed Second Amended Complaint, (Dkt. 231-3); paragraphs 12 and 81 of the redline of the Proposed Second Amended Complaint, (Dkt. 231-4); page 7 of Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend Complaint ("Plaintiffs' Memorandum"), (Dkt. 232); and paragraph 4 of the Declaration of Daniel Delorey in Support of Plaintiffs' Motion for Leave to Amend Complaint ("Delorey Declaration"), (Dkt. 231-

---

[1] As Suno acknowledges, "Plaintiffs reserved the right to contest the propriety of sealing this material at a later date." (Mot. at 2 (citing Dkt. 231).)

7). The Audible Magic Number, by contrast, appears only in paragraph 6 of the Delorey Declaration and in a passing reference on page 13 of Plaintiffs' Memorandum.

Suno's Motion focuses solely on the Model Training Figure. Suno repeatedly emphasizes that it only seeks to redact this "*single* figure." (Mot. at 1 (emphasis added).) But when identifying the materials to be redacted, Suno designated all these filings—including both paragraphs 4 and 6 of the Delorey Declaration and pages 7 and 13 of Plaintiffs' Memorandum. So, despite making no argument regarding the Audible Magic Number in its Motion, Suno requested that number, along with the Model Training Figure, be redacted.

## III.    ARGUMENT

### A.    The Court Should Reject Suno's Request to Impound the Audible Magic Number

#### 1.    *Suno Has Waived Any Request to Redact the Audible Magic Number*

As a threshold matter, any request by Suno to conceal the Audible Magic Number has been waived. It is well established by courts in this circuit that "[c]ontentions that are not developed or supported in a party's submissions are deemed waived." *Bank of New York*, 2014 WL 4656585, at *4 (deeming a reference to a "passing" argument as waived); *Ferry v. Prudential Ins. Co. of Am.*, 2011 WL 4828816, at *4 (D. Me. Oct. 10, 2011) (finding that an argument "presented in a three-sentence footnote" was "deemed waived"), *aff'd*, 2011 WL 5574815 (D. Me. Nov. 16, 2011).

Here, Suno repeatedly emphasizes throughout its Motion that it "seeks to impound a *single* figure"—the Model Training Figure. (Mot. at 1 (emphasis added); *id.* at 6 (noting that Suno only "seeks to impound[] a small number of references to a *single*, competitively sensitive figure" (emphasis added).) The Audible Magic Number appears nowhere in the body of Suno's Motion— its only mention is a single unexplained request, buried in the opening section, to impound paragraph 6 of the Delorey Declaration and page 13 of Plaintiffs' Memorandum. Because Suno

offers no argument in support of impounding the Audible Magic Number, that request has been waived and should be denied.

>    2.    *There Is a Presumptive Right to Public Access to the Amending Complaint and Accompanying Documents in Full*

Even if waiver were not an issue (and it is), Suno would have no colorable basis to request that the Audible Magic Number be redacted. "There is a well-established common-law presumption of public access to judicial documents." *Dahl v. Bain Cap. Partners, LLC*, 891 F. Supp. 2d 221, 224 (D. Mass. 2012) (citation omitted). That presumption extends to pleadings (including civil complaints) because those documents go directly to a court's "core function of adjudicating the parties' claims[.]" *Velcro Grp. Corp. v. Zijlstra*, 180 F. Supp. 3d 106, 107 (D. Mass. 2016). "Particularly for *pleadings* . . . the presumption of public access is at its strongest," and the burden to overcome that presumption is at its peak. *Revvity*, 2025 WL 3295931, at *2 (emphasis in original); *id.* at *1 ("[T]he stronger the presumption of public access and the higher the burden to overcome it." (citation omitted)). Only if a party makes a "particular factual demonstration of potential harm" can that presumption be overcome. *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 2021 WL 6773087, at *4 (D. Mass. June 28, 2021) (citation omitted).

Here, the Audible Magic Number appears in supporting papers to a proposed pleading, and provides important context for understanding the scope of Suno's infringement of Plaintiffs' works. These are precisely the kinds of material which go to a court's "core function of adjudicating the parties' claims." *Velcro Group*, 180 F. Supp. 3d at 107 (denying motion to seal complaint because it is "essential" to the court's "core function of adjudicating the parties' claims"); *see also Dahl*, 891 F. Supp. 2d at 224 (explaining that "the presumption" of public access "is applicable to civil complaints"). For that reason, the public's presumptive right to full access

- 6 -

to Plaintiffs' amended complaint and accompanying documents—including its reference to the Audible Magic Number—is at its apex.

Suno has not made a showing of "particular factual demonstration of potential harm." *Jean-Pierre*, 2021 WL 6773087, at \*4. Nor could it. As noted above, Suno has made no showing of ***any*** harm if the Audible Magic Number were disclosed. And the argument that Suno *has* made—that it could be harmed by disclosure of how many works it used to train its model (Mot. at 4)—does not apply to the Audible Magic Number. Because the Audible Magic Number is only a subset of the Model Training Figure, disclosure of it would not give Suno's competitors any meaningful insight into the Model Training Figure.

If anything, impoundment would harm the public. Specifically, the public would be stripped of the context necessary to understand the scope of Suno's alleged infringement and the claims at issue in this litigation. Because Suno makes no argument to the contrary, the inquiry ends there.

**B.      The Model Training Model Figure Should Not Be Redacted**

*1.      The Public Has a Presumptive Right to Access the Model Training Figure*

Suno's request to impound the Model Training Figure should also be denied. Like the Audible Magic Number, the Model Training Figure appears in a proposed pleading and related filings, where the public has a presumptive right to access these documents in full. *See Revvity*, 2025 WL 3295931, at \*2 (explaining that the "presumption of public access is at its strongest" for pleadings). The Model Training Figure is a key fact in this litigation, relevant to the fair use analysis. It speaks directly to the nature and extent of Suno's copying, and provides context for Plaintiffs' allegations here by demonstrating that Suno's sweeping disregard for copyright ownership likely extends well beyond Plaintiffs' own sound recordings. The public is entitled to understand the scope of that conduct in full.

2.      *Suno's Statement of Potential Competitive Harm Is Conclusory and Speculative*

Suno has also failed to overcome the strong presumption in favor of public access with respect to the Model Training Figure. To justify withholding this single number, Suno broadly asserts that competitors "***could***" use the Model Training Figure to "replicate and benchmark" their own systems against Suno's model," that they could "***infer***" aspects of Suno's training, and that they could "***potentially*** optimize their models to unfairly compete with Suno[.]" (Mot. at 3 (emphasis added).)

None of these justifications withstand scrutiny. Suno does not explain how any competitor could "replicate," "benchmark," or "optimize" their own models based on a single number that simply identifies the total count of audio files, devoid of any further context about Suno's training dataset. Nor does Suno explain what aspects of Suno's training and development could possibly be gleaned from revealing the Model Training Figure. Indeed, Suno admits that the Model Training Figure "does not reveal any particular works," does not "address what music Suno used to train its AI system," and does not identify "how any recordings were used." (Mot. at 6 (citing Dkt. 233 at 3 (cleaned up)).)

The declaration Suno submitted in connection with its Motion does not close that gap. The George Kucsko Declaration ("Kucsko Decl.") asserts only that Suno treats its training data as confidential as a general matter. (Kucsko Decl. ¶¶ 6-8). But a general policy of treating information as confidential is not the "particular factual demonstration of potential harm," required to overcome the strong presumption of public access. *Jean-Pierre*, 2021 WL 6773087, at *4. Conceding that the Model Training Figure "is simply a reference to the *total* number of audio files

- 8 -

Plaintiffs claim are in Suno's training dataset," Suno does not have a colorable basis to claim that disclosure of that number will cause competitive harm. (Mot. at 6 (emphasis in original).)

Moreover, any harm Suno could suffer from disclosure of the Model Training Figure is, at most, marginal. Indeed, the scale of Suno's copying is already a matter of public record. In its Answer, Suno admitted that building its service "required showing the program tens of millions of instances of different kinds of recordings." (Answer at 8, 15.) Suno also did not object to Plaintiffs' inclusion of the approximate magnitude of the figure in Plaintiffs' amended complaint—which refers "to 'millions' of sound recordings allegedly [used] in Suno's training data." (Mot. at 6 (citing Dkt. 231-3, ¶ 48).) Having publicly acknowledged copying of that magnitude, Suno cannot credibly claim that disclosing a slightly more precise count of the audio files that its AI model trained on would reveal anything competitively sensitive.

In sum, Suno's claims of the harm that it "could" suffer are precisely the kind of "broad and generic claims" that are "insufficient" to establish impoundment. *Roy*, 2023 WL 4186291, at *4 (denying sealing request because the defendant did "not describe specific harm that will befall it if the exhibits remain on the public docket").

### 3. *None of the Authorities Suno Relies on Supports Its Position*

Finally, the authorities Suno relies on undermine, rather than support, its request to impound the Model Training Figure. For example, *In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*, 2012 WL 5239726 (D. Mass. Oct. 24, 2012) concerned whether certain deposition designations were entitled to a protective order under Federal Rule of Civil Procedure 26. But Suno offers no explanation for why the protective order standard should govern a motion to seal. Nor could it. Courts have made clear that the standard justifying a protective order "is not sufficient to meet the heightened standard to seal filings."

*Skyhook Wireless, Inc. v. Google, Inc.*, 2015 WL 13675231, at \*2 (D. Mass. Feb. 18, 2015) (recognizing that reference to a protective order "that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable[]"). The operative Amended Protective Order (Dkt. 179) in this case makes the same point. The Protective Order permits parties to designate materials as confidential, but makes clear that the parties must still assess whether the subject materials implicate "privacy considerations sufficiently weighty to justify seeking leave to file that material under seal." (Dkt. 179 at ¶ 22.) Suno cannot meet this standard.

The next case on which Suno relies, *Bradford & Bigelow, Inc. v. Richardson*, actually rejected a party's sealing request because it did "not explain why any specific documents should be sealed." 109 F. Supp. 3d 445, 449 (D. Mass. Jun. 19, 2015). Suno's Motion suffers from the same defect by broadly asserting competitive harm without identifying any specific injury tied to disclosure of the Model Training Figure.

Suno's last round of citations also fail to support its request. Each concerned the sealing of detailed descriptions of training processes and methodologies—not a single number. *See, e.g., UMG Recordings, Inc. v. Uncharted Labs, Inc.*, Dkt. 77, at 2 (S.D.N.Y. Feb. 25, 2025) (explaining that the material sought to be sealed "describes in detail how [] Udio creates and processes its training datasets"); *New York Times v. Microsoft Corp.*, Dkt. 349 ¶ 6 (S.D.N.Y. Nov. 25, 2024) (seeking to seal "the specific processes, methods, and technical details thereof that OpenAI employs to train and test its large language models"); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, at 2 (N.D. Cal. Oct. 31, 2024) (seeking to seal "detailed technical discussion concerning Meta's AI development"); *Concord Music Group, et al., v. Anthropic PBC*, Dkt. 261, at 6–7 (N.D. Cal. Nov. 11, 2024) (seeking to seal information about Anthropic's "training methods" and

"information regarding the creation and technical implication of Anthropic's guardrails against copyright infringement").[2] The Model Training Figure, by contrast, is a single aggregate number that reveals nothing about Suno's training processes, systems, or methodologies; it speaks only to the scale of Suno's copying. The situations are completely distinct and offer no support for Suno's request to impound the Model Training Figure.

## IV.    CONCLUSION

Suno's Motion seeks to conceal both: (1) the full extent of its copying to create its training database; and (2) the total number of sound recordings that Plaintiffs identified in Suno's training data as ones *they* provided to Audible Magic. But Suno's Motion supports neither request. Stripped of its conclusory assertions of competitive harm, there is no cognizable reason to shield from public view how many sound recordings—including Plaintiffs' recordings—Suno copied to build its service. The strong presumption of public access to the pleadings cannot yield to unsubstantiated speculation. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Impound.

---

[2] This distinction also differentiates Suno's previous motions to impound, which sought to conceal details about Suno's training processes, not just a single number that does not otherwise describe Suno's training methodologies. (*See* Mot. at 4 (citing Dkt. 129 at 4 (seeking impoundment of "'details about Suno's model training process and information Suno used (or did not use) in connection with building its training dataset'"); Dkt. 349 ¶ 6 (noting that information sought to be maintained under seal included details of training processes for generative AI model).)

Dated:   June 5, 2026
         New York, New York

By:_____

Moez M. Kaba (*pro hac vice)*
Mariah N. Rivera (*pro hac vice*)
Alexander R. Perry (*pro hac vice*)
Samuel Givertz (*pro hac vice*)
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

Robert N. Klieger (*pro hac vice*)
Rajan S. Trehan (*pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

Daniel J. Cloherty
Alexandra Arnold
**CLOHERTY & STEINBERG LLP**
One Financial Center, Suite 1120
Boston, Massachusetts 02110
Telephone: (617) 481-0160
Facsimile: (888) 775-0898
dcloherty@clohertysteinberg.com
aarnold@clohertysteinberg.com

*Counsel for Plaintiffs*

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on June 5, 2026.

Mariah N. Rivera
*Counsel for Plaintiffs*