**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC and SONY MUSIC ENTERTAINMENT,<br><br>          Plaintiffs,<br>vs.<br><br>SUNO, INC. and JOHN DOES 1-10,<br><br>          Defendant. | Civil Action No. 1:24-cv-11611 (FDS) |

## PLAINTIFF UNIVERSAL'S STATEMENT IN SUPPORT OF SUNO, INC.'S MOTION FOR IMPOUNDMENT

Pursuant to Local Rule 7.2 and Paragraphs 22 and 23 of the Amended Confidentiality Stipulation and Protective Order entered in this case, Dkt. No. 179 ("Protective Order"), Plaintiffs UMG Recordings, Inc. and Capitol Records, LLC (together, "Universal"), by and through their undersigned counsel, hereby respectfully submit this statement in support of Suno, Inc.'s ("Suno") Motion for Impoundment, requesting to seal certain portions of Suno's Opposition to Plaintiffs' Motion to Amend Complaint. Dkt. Nos. 237, 239.

On June 4, 2026, Suno submitted its Opposition to Plaintiffs' Motion to Amend Complaint ("Opposition") and an Unopposed Motion for Leave to File Materials Under Seal related to portions of its Opposition. Dkt. Nos. 237, 239. Suno's Opposition attaches and references a highly confidential and sensitive agreement between Universal and a non-party record label that contains sensitive material and confidential business information of both Universal, the non-party label, and a non-party artist. *See* Declaration of Mariah Rivera ("Rivera Decl.") ¶ 7. Specifically, Universal seeks to seal Exhibit A to the Declaration of Brittany N. Lovejoy, and references thereto

in Suno's Opposition (the "Confidential Information"). The Confidential Information reveals the highly confidential terms of Universal's agreement with a non-party label concerning the recordings performed by a non-party artist, such that, if it were disclosed to the public, Universal, the non-party label, and the non-party artist would be put at substantial competitive disadvantages by giving others insight into their business and negotiation strategy. The non-party label's and non-party artist's privacy would also be compromised by the public disclosure of terms that were negotiated and agreed upon in confidence. The harm Universal and the non-parties would suffer if the Confidential Information were made public outweighs the public's interest in accessing this information.

### A.    Universal's Request to Seal the Confidential Information Is Supported By Good Cause.

Pursuant to Federal Rule of Civil Procedure 26(c), a party may file a document under seal when "good cause" exists to keep the information confidential. Fed. R. Civ. P. 26(c). Good cause exists where the moving party shows "the harm that would be sustained if the court did not allow the filing under seal." *Dunkin Donuts Franchised Restaurants, LLC v. Agawam Donuts, Inc.*, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008) (internal quotations omitted). Here, the Confidential Information—a highly sensitive and confidential agreement between Universal and a non-party recording label—contains precisely the type of commercially sensitive material that courts routinely seal.

The Confidential Information includes highly sensitive business decisions and negotiations with a non-party. Specifically, the agreement reflects the contractual terms focused on master recordings featuring the non-party artist, such as itemized royalty rates, payment terms, and the scope of rights. Rivera Decl. ¶ 7. Public disclosure of these terms would cause concrete, immediate

- 2 -

7436770

competitive harm to Universal and the non-party artist. Public disclosure would arm competitors, potential licensors, and counterparties with significant insight into Universal's bargaining priorities, risk tolerance, and valuation, enabling them to undercut Universal on price, replicate preferred term packages, and systematically demand concessions Universal has offered in other contexts. *Id*. The resulting information asymmetry would impair Universal's ability to procure favorable agreements, erode margins, and destabilize existing commercial relationships. *Id*. The same commercial harm exists for the non-party label, non-party artist, and other third parties with whom Universal has negotiated or contracted. *Id*.

Courts routinely grant requests to seal information involving confidential matters relating to business operations, particularly where public revelation of these matters would interfere with a company's ability to effectively compete in the marketplace. *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 523 F. Supp. 3d 181, 195 (D. Mass. 2018) (granting motion to seal "confidential pricing information"); *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 748 F. Supp. 3d 257, 261 (S.D.N.Y. 2024) (granting motion to seal "to prevent dissemination of confidential business information"); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("courts have refused to permit their files to serve [] as sources of business information that might harm a litigant's competitive standing" (internal citations omitted)). Similar agreements are regularly sealed from the public record because public access would harm a litigant's or a third party's competitive standing. *See, e.g., In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (holding district court erred as a matter of law by denying a motion to seal an agreement that included "pricing terms, royalty rates, and guaranteed minimum payment terms"); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013) (finding district court abused its discretion in unsealing a licensing agreement); *In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir.

7436770

1994) (affirming sealing of film distribution agreement).

Public disclosure of the agreement's terms would not only compromise the competitive position of Universal and the non-parties but would also violate the reasonable privacy expectations of the non-party label and non-party artist, who entered into the agreement with an expectation of confidentiality. Courts have recognized that the privacy interests of third parties weigh heavily against public access, particularly where the third party's financial records or business information are at issue. *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) ("the privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." (cleaned up)); *Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, 2020 WL 3264264, at \*3 (S.D.N.Y. June 17, 2020) ("Similarly, protecting the privacy interests of non-parties, including their business and financial records, represents a legitimate basis for sealing judicial documents.").

In addition, Suno attached the confidential agreement to its Opposition solely to cite a provision addressing ownership of rights in certain recordings already asserted in Plaintiffs' original Complaint. But the issue that is currently before the Court is whether Plaintiffs may file a Second Amended Complaint to add additional infringed works. Ownership of the works already asserted in the operative Complaint has no bearing on that issue. The agreement is therefore irrelevant to the motion, which provides additional support for Universal's request. *See Graczyk v. Verizon Communications, Inc.*, 2020 WL 1435031, at \*9 (S.D.N.Y. Mar. 24, 2020) ("the presumption in favor of public access" was "low" where the contracts at issue had no bearing on the court's treatment of the pending motions); *Arkansas Teacher Retirement Sys. v. State Street Bank and Trust Co.*, 523 F.Supp.3d 181, 190 (D. Mass. 2018) ("The presumption of public access to irrelevant information in a judicial record may deserve less weight than relevant information."); *KeyBank Nat'l Ass'n v. Element Transp. LLC*, 2017 WL 384875, at \*3 (S.D.N.Y. Jan. 26, 2017)

7436770

- 5 -

(concluding that a document's "irrelevance to the issues before the Court . . . places the presumption of public access at the nadir of the continuum of the weight to be given to the presumption").

Given the commercial sensitivity of the Confidential Information, the significant harm that Universal and the non-parties may suffer if this information is made public, the privacy interests of the non-party label whose confidential agreement terms would be exposed, and the irrelevance of the agreement to the parties' dispute, the Court should grant Suno's motion and order the materials described herein be sealed until further order of the Court.

Dated:  June 11, 2026

/s/  *Mariah Rivera*
Mariah Rivera
HUESTON HENNIGAN LLP
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mrivera@hueston.com

*Attorney for Plaintiffs*

7436770

- 6 -

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I, Mariah N. Rivera, hereby certify that counsel for Plaintiffs conferred with counsel for the defendant regarding the Unopposed Motion.  Suno has indicated it takes no position on Universal's request.

/s/  *Mariah Rivera*
Mariah Rivera

*Attorney for Plaintiffs*

7436770

- 7 -

**CERTIFICATE OF SERVICE**

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on June 11, 2026.

/s/ *Mariah Rivera*
Mariah Rivera

*Attorney for Plaintiffs*

7436770