# EXHIBIT C

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| UMG Recordings, Inc. et al.<br>*Plaintiff*<br>v.<br>Suno, Inc. and John Does 1-10<br>*Defendant* | ) | Civil Action No. 1:24-cv-11611 (FDS) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Menlo Ventures Management, L.P. c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: SEE ATTACHMENT "A"

| Place: TrustArray San Francisco, 44 Montgomery St., Suite LL 1001, San Francisco, CA 94104 or remotely | Date and Time: 09/17/2026 9:00 am |
|---|---|

The deposition will be recorded by this method: Stenographic, audio and video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: SEE ATTACHMENT "B"

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/20/2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Sony Music Entertainment, Inc. et al. , who issues or requests this subpoena, are:

Joseph Aronsohn, Hueston Hennigan, 523 West 6th Street, Suite 400, Los Angeles, CA 90014; jaronsohn@hueston.com (213) 788-4375

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:24-cv-11611 (FDS)

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ______________________
______________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment A**

**DEFINITIONS AND INSTRUCTIONS**

The following definitions and instructions apply to the topics listed below and to the document requests set forth in Attachment B:

1. "ACTION" or "LITIGATION" shall refer to the above-captioned action, filed in the U.S. District Court for the District of Massachusetts, entitled *UMG Recordings, Inc. et al. v. Suno, Inc. et al.*, No. 1:24-cv-11611, unless otherwise specified.

2. "AI SERVICE" or "AI SERVICES" shall refer to any artificial intelligence-powered service, including the service offered by SUNO.

3. The words "AND" and "OR" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

4. The term "ANY" shall include "ALL" and "ALL" shall include "ANY."

5. "COMMUNICATION" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including electronic communications and electronic mail ("e-mail"), telephone conversations, written correspondence, transmissions via messaging applications (including, but not limited to, WhatsApp, Signal, Facebook Messenger, Instagram, Google Chat, Slack, and Discord), text messages, facsimile transmissions, meetings, video conferences, or document transmittals.

6. "COMPLAINT" refers to the operative Complaint in the ACTION as of the date this Subpoena is served.

7. "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

8. "COPYRIGHTED WORK(S)" shall refer to any works entitled to copyright protection pursuant to the Copyright Act, *see* 17 U.S.C. §§ 101-105.

9. "DATA ROOM" means any electronic data room or similar repository of diligence or investment materials RELATING TO SUNO or any SUNO financing, including (i) any such repository that SUNO or its representatives created or made available to YOU or to other actual or prospective investors, including the data room referenced in the DOCUMENT produced by YOU with the Bates-stamp MV_00169; and (ii) any such repository that YOU created, maintained, or made available to any PERSON, including the data room referenced in the DOCUMENT produced by YOU with the Bates-stamp MV_00527.

10. "DOCUMENT" has the broadest possible meaning permissible under the Federal Rules of Civil Procedure, including all materials that constitute "writings," "recordings," or "photographs" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 34 of the Federal Rules of Civil Procedure. DOCUMENTS include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, COMMUNICATIONS, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writing or upon any mechanical or electrical recording device, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, source code,

data, digital audio files, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail, text messages (*i.e.*, SMS messages), iMessages, other electronic messages including messages sent or received via Slack, WhatsApp, Signal, Google Hangouts, Facebook Messenger, and the like. The terms "DOCUMENTS" and "COMMUNICATIONS" include all DOCUMENTS and COMMUNICATIONS in YOUR possession, custody, or control, including all information in the possession, custody or control of YOUR attorneys, agents, representatives, and any additional PERSONS under YOUR control.

11. "OUTPUT" and "OUTPUTS" shall refer to the digital music files generated by an AI SERVICE.

12. "PERSON" is used broadly and includes any of the following without limitation: natural persons, corporations, limited or general partnerships, joint ventures, firms, limited liability companies, associations, proprietorships, agencies, boards, authorities, governmental entities, the federal government, any state government, any city government or agency, or any county government or agency, or any other entity.

13. "PLAINTIFFS" means UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Atlantic Recording Corporation, Atlantic Records Group LLC, Rhino Entertainment LLC, The All Blacks U.S.A., Inc., Warner Music International Services Limited, and Warner Records Inc.

14. "RELATED TO" and "RELATING TO," shall be interpreted in their customary

broad sense and shall include, without limitation, having any connection, relation, or reference to, as well as identifying, concerning, containing, pertaining to, referring to, reflecting, mentioning, discussing, representing, embodying, illustrating, substantiating, evidencing, describing, constituting, or otherwise being logically or factually connected with the matter discussed.

15. “SOUND RECORDINGS” shall have the same meaning as that term is defined in the Copyright Act, see 17 U.S. § 101.

16. “SUNO,” shall refer to Defendant Suno, Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, any partnership or joint venture to which it may be a party, and its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time during the relevant time period.

17. “TRAINING DATA” means any information, data, or datasets used to train or establish the parameters of SUNO’S AI SERVICE.

18. “USERS” means PERSONS who use SUNO’s AI SERVICE to create OUTPUTS.

19. “YOU” and “YOUR” shall refer to Menlo Ventures Management, L.P., its subsidiaries, divisions, predecessor and successor companies, affiliates, any partnership or joint venture to which it may be a party, and its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time during the relevant time period.

## **TOPICS OF TESTIMONY**

1. The origin, history, and status of YOUR relationship with SUNO, including, without limitation, YOUR relationship with Michael (“Mikey”) Shulman.

2. YOUR evaluation of and due diligence RELATING TO SUNO, including, without

limitation: (i) inquiries, investigations, or assessments RELATING TO SUNO's TRAINING DATA, copyright risk, or actual or potential copyright liability; (ii) the "expert reference calls" memorialized in the DOCUMENT produced by YOU with the Bates-stamp MV_00440; and (iii) YOUR access to, YOUR use of, and the contents of ANY DATA ROOM that SUNO made available to YOU.

3. YOUR investments in SUNO, including, without limitation: (i) the negotiation, contents, and execution of ANY term sheet RELATING TO SUNO, including, without limitation, the "Menlo Termsheet" in the DOCUMENT produced by YOU with the Bates-stamp MV_00525; (ii) the closing of SUNO's Series C financing round in November 2025 and of SUNO's Series D financing round in June 2026; and (iii) the timing of each closing, including the reasons for that timing and ANY relationship between that timing and SUNO's negotiations with record labels or other rightsholders, including as discussed in the DOCUMENT produced by YOU with the Bates-stamp MV_00568.

4. YOUR knowledge and analyses of SUNO's value, including, without limitation: (i) the analyses reflected in YOUR investment memoranda (including the DOCUMENTS produced by YOU with the Bates-stamps MV_00104 and MV_00611); (ii) ANY valuation of SUNO in connection with the Series C and Series D financing rounds; and (iii) ANY analyses of actual or potential exit scenarios for YOUR investments in SUNO.

5. YOUR knowledge and analyses of SUNO's actual or potential legal exposure, including, without limitation, knowledge and analyses of: (i) copyright risk or liability RELATING TO SUNO's TRAINING DATA or OUTPUTS; (ii) the "Risks," including "legal challenges," referenced in the DOCUMENT produced by YOU with the Bates-stamp MV_00104; and (iii) the "Risks," including "Legal / label litigation," referenced in the DOCUMENT produced

by YOU with the Bates-stamp MV_00611.

6. YOUR knowledge of SUNO's actual or potential settlements, licenses, or partnerships with PLAINTIFFS, Warner Music Group, or ANY other record label, music publishing company, or other rightsholder, including the status, terms, or anticipated terms of ANY such settlement, license, or partnership, including the "partnership discussions" referenced in the DOCUMENT produced by YOU with the Bates-stamp MV_00611.

7. Statements made to YOU by SUNO or its officers, directors, employees, or representatives (including Mikey Shulman) RELATING TO: (i) SUNO's TRAINING DATA; (ii) SUNO's actual or potential legal exposure, including this litigation and copyright risk; (iii) ANY actual or potential settlement, license, or partnership between SUNO and a rightsholder; (iv) SUNO's financial condition or prospects; or (v) SUNO's business strategy.

8. YOUR knowledge of SUNO's TRAINING DATA, including its contents, acquisition, and development, and SUNO's efforts or failures to license TRAINING DATA.

9. YOUR knowledge and analyses of SUNO's financial condition and performance, including: (i) SUNO's revenues, gross margins, and royalty expenses; (ii) the financial effect of ANY license or settlement agreement with a rightsholder; and (iii) board reporting packets, budgets, forecasts, and key performance indicators, including as reflected in the DOCUMENTS produced by YOU with the Bates-stamps MV_00132, MV_00169, MV_00172, MV_00173, MV_00395, and MV_00412.

10. YOUR knowledge and analyses of SUNO's business strategy and growth, including: (i) SUNO's strategy RELATING TO music consumption and listening, including ambient or functional listening; (ii) ANY consideration by SUNO of launching or operating a record label, including as discussed in the DOCUMENT produced by YOU with the Bates-stamp

MV_00417; and (iii) SUNO's growth over time with respect to usership, revenue, number of employees, or ANY other metric that YOU considered in evaluating SUNO.

11. YOUR knowledge and analyses of the markets for SUNO's AI SERVICE and OUTPUTS, including the development and expansion of those markets over time.

12. YOUR knowledge and analyses of SUNO's actual or potential impact or effect on the music industry, including (i) the market for SOUND RECORDINGS, (ii) as discussed in the study and newsletter produced by YOU with the Bates-stamps MV_00611 and MV_00198, and (iii) as discussed in the post published on YOUR website on June 3, 2026, titled "Doubling Down on Suno, the Platform for Creative Entertainment."[1]

13. YOUR knowledge and analyses of the ability of streaming platforms or other PERSONS to detect or identify OUTPUTS, including OUTPUTS generated using SUNO's AI SERVICE.

14. COMMUNICATIONS with actual or prospective investors in SUNO RELATING TO: (i) SUNO's TRAINING DATA; (ii) SUNO's actual or potential legal exposure, including this litigation and copyright risk; (iii) ANY actual or potential settlement, license, or partnership between SUNO and a rightsholder; (iv) SUNO's financial condition or prospects; or (v) SUNO's business strategy, including the COMMUNICATIONS reflected in the DOCUMENTS produced by YOU with the Bates-stamps MV_00527, MV_00533, MV_00551, and MV_00564; and the DOCUMENTS and DATA ROOM access YOU provided to actual or prospective investors in SUNO.

15. The social-media post by C.C. Gong RELATING TO her shift in music listening

---

[1] Accessible at https://menlovc.com/perspective/doubling-down-on-suno-the-platform-for-creative-entertainment/.

from Spotify to SUNO,[2] including: (i) her reasons for making the post; (ii) her reasons for deleting the post; (iii) her use of SUNO's AI SERVICE for music listening; and (iv) her use of Spotify or other music-streaming services before and after YOUR investment in SUNO.

16. The sources searched (including email, text-message, and messaging-platform sources such as Slack, Microsoft Teams, and Google Chat), custodians collected, search terms applied, and completeness of YOUR production of DOCUMENTS in response to the subpoena served on YOU on October 27, 2025, and in response to the document requests set forth in Attachment B to this subpoena.

---

[2] *See* https://futurism.com/future-society/lead-investor-music-generation-suno-tweet-court.

## Attachment B

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1. "AI SERVICE" or "SERVICE" shall refer to any artificial intelligence-powered service, including the service offered by SUNO.

2. The words "AND" and "OR" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3. The term "ANY" shall include "ALL" and "ALL" shall include "ANY."

4. "COMMUNICATION(S)" means without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including electronic communications and electronic mail ("e-mail"), telephone conversations, written correspondence, transmissions via messaging applications (including, but not limited to, WhatsApp, Signal, Facebook Messenger, Instagram, Google Chat, Slack, and Discord), text messages, facsimile transmissions, meetings, video conferences, or document transmittals.

5. "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

6. "OUTPUT" and "OUTPUTS" shall refer to the digital music files generated by an AI SERVICE.

7. "RELATED TO" and "RELATING TO," shall be interpreted in their customary broad sense and shall include, without limitation, having any connection, relation, or reference to, as well as identifying, concerning, containing, pertaining to, referring to, reflecting, mentioning,

discussing, representing, embodying, illustrating, substantiating, evidencing, describing, constituting, or otherwise being logically or factually connected with the matter discussed.

8. "SOUND RECORDINGS" shall have the same meaning as that term is defined in the Copyright Act, see 17 U.S. § 101.

9. "SUNO," shall refer to Defendant Suno, Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, any partnership or joint venture to which it may be a party, and its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time during the relevant time period.

10. "TRAINING DATA" means any information, data, or datasets used to train or establish the parameters of SUNO'S AI SERVICE.

11. The DOCUMENTS requested below must be produced to Plaintiffs' counsel no later than seven (7) days before the date on which the deposition proceeds. If YOU withhold ANY DOCUMENT, or portion thereof, on the basis of a claim of privilege, YOU must provide at the same time as YOUR document production a log identifying each withheld DOCUMENT and stating the basis for each claim.

12. Unless otherwise specified, the relevant time period for these requests shall be November 1, 2024 through the present day.

## **DOCUMENTS REQUESTED**

1. ALL DOCUMENTS and COMMUNICATIONS RELATED TO Plaintiffs' SOUND RECORDINGS.

2. ALL DOCUMENTS and COMMUNICATIONS RELATED TO SUNO's TRAINING DATA, including SUNO's efforts or failure to license SUNO's TRAINING DATA.

3. ALL DOCUMENTS and COMMUNICATIONS RELATED TO copyright law in relation to SUNO.

4. ALL DOCUMENTS and COMMUNICATIONS RELATED TO business risks associated with: SUNO's TRAINING DATA; SUNO's relationship to the music industry; negative publicity; and SUNO's ability to raise capital for a music-generative AI product.

5. ALL DOCUMENTS and COMMUNICATIONS RELATED TO the market for SUNO's AI SERVICE and OUTPUTS.

6. ALL DOCUMENTS and COMMUNICATIONS RELATED TO SUNO's actual or potential impact on the music industry.